**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **MARK ROBERTSON**, *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **Civil Action No. 9:23-CV-0023** |
| | § | |
| **BRYAN COLLIER**, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

| | |
|---|---|
| **KEN PAXTON**<br>**Attorney General of Texas** | SHANNA E. MOLINARE, Chief,<br>**Law Enforcement Defense Division** |
| **BRENT WEBSTER**<br>**First Assistant Attorney General** | MICHAEL J. CALB*<br>**Assistant Attorney General**<br>**Texas State Bar No. 24077883**<br>Michael.Calb@oag.texas.gov |
| **GRANT DORFMAN**<br>**Deputy First Assistant Attorney General** | |
| **SHAWN E. COWLES**<br>**Deputy Attorney General for Civil**<br>**Litigation** | OFFICE OF THE ATTORNEY GENERAL<br>**Law Enforcement Defense Division**<br>**P.O. Box 12548 (MC 012)**<br>**Austin, Texas 78711-2548**<br>**(512) 463-2080/Fax: (512) 370-9814** |

**ATTORNEYS FOR DEFENDANTS**

_____

**\* Counsel of Record**

# TABLE OF CONTENTS

I.   STATEMENT OF THE CASE ............................................................................ 1

II.  FACTUAL ALLEGATIONS ............................................................................. 2

III. ISSUES TO BE DECIDED BY THE COURT ................................................. 3

IV.  STANDARD OF REVIEW ............................................................................... 4

V.   ARGUMENT ..................................................................................................... 4

    A.   Plaintiffs lack standing to challenge access to medical care or
        access to counsel on Polunsky Death Row. ............................................ 4

        1.   Plaintiffs fail to allege concrete and particularized injuries that have actually
            resulted, or will imminently result, from inadequate access to medical care. ........ 6

        2.   Plaintiffs fail to allege any actual prejudice to contemplated or
            existing litigation resulting from inadequate access to counsel. ............................ 7

    B.   Plaintiffs' official-capacity claims under the Texas Constitution
        are barred by Defendants' Eleventh Amendment sovereign immunity. ...................... 8

    C.   The Court lacks jurisdiction to provide relief under 18 U.S.C. § 3599. ......................... 9

    D.   Plaintiffs fail to state any constitutional claim. ............................................ 10

        1.   Plaintiffs fail to state an Eighth Amendment
            conditions-of-confinement claim. ................................................ 10

        2.   Plaintiffs' generalized allegations of limited access to medical care
            do not rise to the level of an Eighth Amendment violation. .................................. 17

        3.   Plaintiffs fail to state a Fourteenth Amendment due process claim. .................... 18

        4.   Plaintiffs fail to state a Sixth Amendment claim. .......................................... 24

    E.   Plaintiffs' requested injunction is not permitted by Federal Rule 65 or the PLRA ..... 26

    F.   Plaintiffs' claims for compensatory damages arising from access to medical care
        and counsel are barred by the PLRA's physical injury requirement. ......................... 27

    G.   Plaintiffs' individual-capacity claims are barred by qualified immunity. ................. 28

VI.  CONCLUSION .............................................................................................. 30

CERTIFICATE OF SERVICE ............................................................................. 31

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Duke*,
   73 F. App'x 766 (5th Cir. 2003) ....................................................................................18
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................................4
*Ball v. LeBlanc*,
   792 F.3d 584 (5th Cir. 2015) ........................................................................................27
*Barbee v. Collier*,
   No. 22-70011, 2022 WL 16860944 (5th Cir. Nov. 11, 2022) .....................................27
*Baze v. Parker*,
   632 F.3d 338 (6th Cir. 2011) ........................................................................................10
*Beatty v. Collier*,
   No. 4:22-cv-3658, 2022 WL 16722364 (S.D. Tex. Nov. 4, 2022) ..............................30
*Beatty v. Lumpkin*,
   No. 4:09-cv-225, 2022 WL 5417480 (E.D. Tex. Sept. 16, 2022).............................. 9, 10
*Beatty v. Lumpkin*,
   52 F.4th 632 (5th Cir. 2022) .........................................................................................10
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................................4
*Bell v. Avila*,
   No. 4:11-CV-4238, 2013 WL 11730661 (S.D. Tex. June 25, 2013) ........................ 25, 30
*Blank v. Eavenson*,
   530 F. App'x 364 (5th Cir. 2013) .................................................................................16
*Bradt v. Smith*,
   634 F.2d 796 (5th Cir. 1981) ........................................................................................30
*Brown v. Callahan*,
   623 F.3d 249 (5th Cir. 2010) ........................................................................................29
*Buffington v. Valdez*,
   No. 3:07-cv-260, 2007 WL 2719885 (N.D. Tex. Sept. 28, 2007) ...............................30
*Carswell v. Camp*,
   54 F.4th 307 (5th Cir. 2022).........................................................................................28
*Christensen v. Scott*,
   95 F.2d 46, 1996 WL 405492, at *1 (5th Cir. 1996) ...................................................26
*CleanCOALition v. TXU Power*,
   536 F.3d 469 (5th Cir. 2008) ..........................................................................................4
*Cleveland v. Bell*,
   938 F.3d 672 (5th Cir. 2019) ........................................................................................11
*Conn. Dep't of Pub. Safety v. Doe*,
   438 U.S. 1 (2003) ..........................................................................................................21
*Craft v. Collier*,
   No. 9:18-cv-151, 2020 WL 4950900 (E.D. Tex. July 7, 2020)......................................6
*Croft v. Gov. of Tex.*,
   562 F.3d 735 (5th Cir 2009) ...........................................................................................5

*Cummings v. State,*
   No. AP-76923, 2014 WL 12713256 (Tex. Crim. App. 2014) .................................................25

*Curry v. State,*
   No. AP-77033, 2017 WL 781740 (Tex. Crim. App. Mar. 1, 2017) ......................................25

*Daigre v. Maggio,*
   719 F.2d 1310 (5th Cir. 1983) .............................................................................................12

*Davis v. Scott,*
   157 F.3d 1003 (5th Cir. 1998) .............................................................................................10

*DeMarco v. Davis,*
   914 F.3d 383 (5th Cir. 2019) ...............................................................................................26

*Dillard v. Davis,*
   No. 19-CV-81, 2022 WL 3045747 (N.D. Tex. June 17, 2022) .....................................12, 29

*Does 1-7 v. Abbott,*
   945 F.3d 307 (5th Cir. 2019) ..........................................................................................21, 23

*Domino v. TDCJ,*
   239 F.3d 752 (5th Cir. 2001) ...............................................................................................11

*Ex parte Young,*
   209 U.S. 123 (1908) ...............................................................................................................8

*Farmer v. Brennan,*
   511 U.S. 825 (1994) .................................................................................................11, 14, 16

*Fields v. Davis,*
   No. 818746, 2022 WL 818746 (E.D. Tex. Feb. 24, 2022) ..................................................13

*Finley v. United States,*
   490 U.S. 545 (1989) ...............................................................................................................9

*Pa. v. Finley,*
   481 U.S. 551 (1987) .............................................................................................................25

*Ford v. State,*
   919 S.W.2d 107 (Tex. Crim. App. 1996) ...........................................................................25

*Foulds v. Corley,*
   833 F.2d 52 (5th Cir. 1987) ................................................................................................12

*Frank v. Gaos,*
   139 S. Ct. 1041 (2019) ..........................................................................................................5

*Franklin v. Lynaugh,*
   487 U.S. 164 (1988) .............................................................................................................23

*Gagne v. City of Galveston,*
   671 F. Supp. 1130 (S.D. Tex. 1987) ...................................................................................18

*Geiger v. Jowers,*
   404 F.3d 371 (5th Cir. 2005) ..............................................................................................28

*Grant v. Collins,*
   No. 93-7316, 3 F.3d 439, 1993 WL 347234 (5th Cir. 1993) ..............................................17

*Green v. Ferrell,*
   801 F.2d 765 (5th Cir. 1986) ........................................................................................13, 14

*Green v. Harris Cnty., Tex,*
   No. H-16-893, 2019 WL 338243 (S.D. Tex. Jan. 28, 2019) ..............................................16

*Hamilton v. Lyons,*
   74 F.3d 99 (5th Cir. 1996) ..................................................................................................12

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) .............................................................................................................28

*Harper v. Showers,*
  174 F.3d 716 (5th Cir. 1999) ............................................................................11

*Harris v. Hegmann,*
  198 F.3d 153 (5th Cir. 1999) ............................................................................17

*Hawkins v. Trent Flying Serv.,*
  45 F. App'x 325, 2002 WL 1899587 (5th Cir. July 9, 2002) ...........................28

*Helling v. McKinney,*
  509 U.S. 25 (1993) ............................................................................................11

*Hennington v. Gorsuch,*
  No. 6:20-cv-302, 2022 WL 18276844 (E.D. Tex. Nov. 28, 2022) ...............7, 26

*Hernandez ex rel. Hernandez v. Texas Dep't of Prot. & Reg. Serv.,*
  380 F.3d 872 (5th Cir. 2004) ......................................................................11, 28

*Hernandez v. Velasquez,*
  522 F.3d 556 (5th Cir. 2008) ......................................................................10, 14

*Hill v. Estelle,*
  537 F.2d 214 (5th Cir. 1976) ............................................................................15

*Hogan v. Cunningham,*
  722 F.3d 725 (5th Cir. 2013) ............................................................................29

*Hope v. Harris,*
  861 F. App'x 571 (5th Cir. 2021) .............................................11, 12, 13, 29

*Howery v. Allstate Ins. Co.,*
  243 F.3d 912 (5th Cir. 2001) ..............................................................................4

*Hudson v. McMillian,*
  503 U.S. 1 (1992) ..............................................................................................11

*Hutchins v. McDaniels,*
  512 F.3d 193 (5th Cir. 2007) ............................................................................28

*Hutto v. Finney,*
  437 U.S. 678 (1978) ..........................................................................................11

*In re Sepulvado,*
  707 F.3d 550 (5th Cir. 2013) ............................................................................25

*Jackson v. Boland,*
  No. 2:12-CV-0212, 2014 WL 947567 (N.D. Tex. Mar. 11, 2014) ..................17

*Jaros v. Ill. Dep't of Corr.,*
  684 F.3d 667 (7th Cir. 2012) ............................................................................13

*Johnson v. Dallas Indep. Sch. Dist.,*
  38 F.3d 198 (5th Cir. 1994) ..............................................................................10

*Johnson v. Texas,*
  509 U.S. 350 (1993) ..........................................................................................23

*Jurek v. Texas,*
  428 U.S. 262 (1976) ..........................................................................................23

*Lawson v. Dallas Cnty.,*
  286 F.3d 257 (5th Cir. 2002) ............................................................................17

*Lewis v. Casey,*
  518 U.S. 343 (1996) ..........................................................................5, 7, 8, 30

*Lewis v. Scott,*
  28 F.4th 659 (5th Cir. 2022) ..............................................................................8

*Little v. KPMG LLP,*
  575 F.3d 533 (5th Cir. 2009) ..............................................................................5

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................................5

*Manget Bros., Inc. v. Bank of Greenwood, Miss.*,
  381 F.2d 91 (5th Cir. 1967) .....................................................................................24

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .......................................................................................... 18, 23

*McKinley v. Abbott*,
  643 F.3d 403 (5th Cir. 2011) ....................................................................................9

*Meachum v. Fano*,
  427 U.S. 215 (1976) .......................................................................................... 18, 20

*Mendoza v. Lynaugh*,
  989 F.2d 191 (5th Cir. 1993) ..................................................................................17

*Meyer v. Brown & Root Const. Co.*,
  661 F.2d 369 (5th Cir. 1981) ..................................................................................26

*Meza v. Livingston*,
  607 F.3d 392 (5th Cir. 2010) ..................................................................................23

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) .................................................................................................28

*Moore v. Tarrant Cnty., Tex.*,
  No. 4:21-cv-1206, 2022 WL 1524131 (N.D. Tex. May 12, 2022) ..........................28

*Morrissey v. Brewer*,
  408 U.S. 471 (1972) .................................................................................................21

*Myers v. Klevenhagen*,
  97 F.3d 91 (5th Cir. 1996) .......................................................................................14

*Novak v. Beto*,
  453 F.2d 661 (5th Cir. 1971) ............................................................................ 12, 29

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ..................................................................................................5

*Payne v. Sutterfield*,
  No. 2:17-cv-211, 2020 WL 5237747 (N.D. Tex. Sep. 2, 2020) ........................ 15, 16

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ................................................................................................ 8, 9

*Peterson v. Peshoff*,
  No. 99-31120, 216 F.3d 1079, 2000 WL 729077 (5th Cir. May 9, 2000) ...............14

*Pharmacy Buying Ass'n v. Sebelius*,
  906 F. Supp. 604 (W.D. Tex. Oct. 29, 2012) ..................................................... 9, 10

*Pichardo v. Kinker*,
  73 F.3d 612 (5th Cir. 1996) .....................................................................................12

*Plotkin v. IP Axess.*,
  407 F.3d 690 (5th Cir. 2005) ....................................................................................4

*Prieto v. Clarke*,
  780 F.3d 245 (4th Cir. 2015) ................................................................ 19, 20, 21, 30

*Public Citizen, Inc. v. Bomer*,
  274 F.3d 212 (5th Cir. 2001) ................................................................................ 5, 6

*Raines v. Byrd*,
  521 U.S. 811 (1997) ..................................................................................................5

*Ramming v. U.S.*,
  281 F.3d 158 (5th Cir. 2001) ....................................................................................4

*Rhodes v. Chapman,*
    452 U.S. 337 (1981) ..................................................................................................... 10, 11

*Roberts v. Fuentes,*
    No. 21-40036, 2022 WL 1548667 (5th Cir. May 16, 2022) ..........................................26

*Roberts v. Lozada,*
    No. 5:21-cv-170, 2021 WL 5969301 (N.D. Tex. Nov. 23, 2021) ..................................27

*Robertson v. State,*
    871 S.W.2d 701 (Tex. Crim. App. 1993) ......................................................................25

*Ruiz v. Estelle,*
    679 F.2d 1115 (5th Cir. 1982) ......................................................................................13

*Sanchez v. U.S. Postal Serv.,*
    785 F.2d 1236 (5th Cir. 1986) ......................................................................................25

*Sandin v. Conner,*
    515 U.S. 472 (1995) ......................................................................................... 18, 19, 20

*Serrano v. Customs & Border Patrol,*
    975 F.3d 488 (5th Cir. 2020) ........................................................................................21

*Simmons v. Smith,*
    No. 6:17-cv-557, 2018 WL 4999963 (E.D. Tex. July 20, 2018) .....................................9

*Speer v. Lumpkin,*
    860 F. App'x 66 (5th Cir. 2021) ...................................................................................23

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ........................................................................................................5

*Stanley v. Foster,*
    464 F.3d 565 (5th Cir. 2006) ........................................................................................22

*Striz v. Collier,*
    No. 3:18-cv-202, 2020 WL 7868102 (S.D. Tex. Nov. 24, 2020) ...................................15

*Talib v. Gilley,*
    138 F.3d 211 (5th Cir. 1998) ........................................................................................13

*Taylor v. Sterrett,*
    532 F.2d 462 (5th Cir. 1976) ........................................................................................25

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ........................................................................................26

*Thornburgh v. Abbott,*
    490 U.S. 401 (1989) ......................................................................................................30

*Trulove v. Cerliano,*
    No. 6:20-cv-618, 2021 WL 5933123 (E.D. Tex. Nov. 15, 2021) ............................. 7, 26

*Umondak v. Ginsel,*
    426 F. App'x 267 (5th Cir. 2011) .................................................................................14

*United Steel. Paper & Forestry v. Anderson,*
    No. SA-17-CV-1242, 2018 WL 3017366 (W.D. Tex. June 15, 2018) .............................9

*Urias v. Hudson,*
    No. 5:09-cv-130, 2010 WL 3257967 (E.D. Tex. July 16, 2010) ...................................14

*Varnado v. Lynaugh,*
    920 F.2d 320 (5th Cir. 1991) ........................................................................................17

*Whitaker v. Collier,*
    862 F.3d 490 (5th Cir. 2017) .................................................................................... 7, 25

*Whitaker v. Livingston,*
    No. CV H-13-2901, 2016 WL 3199532 (S.D. Tex. June 6, 2016) ...................................7

*Wilkerson v. Goodwin*
    774 F.3d 845, 851-57 (5th Cir. 2014)..................................................................... 19, 20, 21, 29

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) ...............................................................................................passim

*Williams v. Banks,*
    956 F.3d 808 (5th Cir. 2020) ........................................................................................14

*Wilson v. Seiter,*
    501 U.S. 294 (1991) ...................................................................................................13

*Wolff v. McDonnell,*
    418 U.S. 539 (1974) ...................................................................................................18

Statutes

18 U.S.C. § 3599 ..............................................................................................2, 3, 9, 10
18 U.S.C. § 3626(a)(1)...........................................................................................27
42 U.S.C. § 1983...........................................................................................9, 10, 13
42 U.S.C. § 1997e(e) ...........................................................................................28
Art. I § 13 of the Texas Constitution ..................................................................2, 9
Tex. Code Crim. Proc. art. 37.071.............................................................22, 23, 24
Tex. Penal Code § 12.31(a) .................................................................................22

Rules

Federal Rule of Civil Procedure 12(b) .................................................................. 4, 10
Federal Rule of Civil Procedure 65 .............................................................2, 3, 26, 27

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| **MARK ROBERTSON,** *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 9:23-CV-0023** |
| | § | |
| **BRYAN COLLIER,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

Defendants Bryan Collier ("Collier"), Bobby Lumpkin ("Lumpkin"), and Daniel Dickerson ("Dickerson"), through the Office of the Attorney General of Texas, file this motion to dismiss Plaintiffs Mark Robertson ("Robertson"), George Curry ("Curry"), Tony Egbuna Ford ("Ford") and Rickey Cummings ("Cummings")' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support, Defendants offer the following:

**I.      STATEMENT OF THE CASE**

Plaintiffs are four Texas prisoners who were convicted of capital offenses. During the sentencing phase of each of their criminal trials, juries of their peers were asked to determine whether "there [was] a probability that [Plaintiffs] would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071. All four juries found beyond a reasonable doubt that there was such a probability and sentenced Plaintiffs to death. Until their execution dates, Plaintiffs remain confined to the custody of the Texas Department of Criminal Justice ("TDCJ") on death row at the Polunsky Unit in Livingston, Texas ("Polunsky Death Row").

Through this putative class action, Plaintiffs challenge various alleged conditions and restrictions on Polunsky Death Row. ECF No. 1 ("Compl."). Specifically, they complain that their

indefinite, automatic placement in restrictive housing with limited access to medical care and counsel violates their rights under the Sixth, Eighth, and Fourteenth Amendments, as well as under 18 U.S.C. § 3599 and Art. I § 13 of the Texas Constitution. *Id.* Plaintiffs sue TDCJ's Executive Director (Collier), TDCJ's Correctional Institutions Division Director (Lumpkin), and the current Polunsky Unit Warden (Dickerson), all in both their official and individual capacities. *Id.* at ¶¶ 35-37. Plaintiffs seek a declaration of wrongdoing, a generalized injunction barring future violations, as well as compensatory, nominal, and punitive damages. *Id.* at p. 33-44.

Defendants assert multiple, overlapping bases for dismissal of Plaintiffs' claims. First, Plaintiffs lack standing to challenge their access to medical care or counsel because they do not allege any injury in fact caused by that lack of access. Second, Plaintiffs' claims under the Texas Constitution, brought against Defendants in their official capacities only, are barred by Eleventh Amendment immunity. Third, because 18 U.S.C. § 3599 is merely a funding statute and does not create a private cause of action, the Court lacks jurisdiction to provide any relief under that section. Fourth, Plaintiffs' allegations do not state any viable constitutional claim. Fifth, the generalized injunctive relief Plaintiffs seek is not permitted by Federal Rule of Civil Procedure 65 or the Prison Litigation Reform Act ("PLRA"). Sixth, Plaintiffs' claims for compensatory damages arising from lack of access to medical care and counsel are barred by the PLRA's physical injury requirement. Finally, Defendants are entitled to qualified immunity with respect to Plaintiffs' individual-capacity claims because there has been no constitutional violation alleged and, even if there had been, Defendants acted reasonably in light of clearly established law. For these reasons, each of which is expanded upon below, Plaintiffs' claims must be dismissed with prejudice at the pleading stage.

## II.    FACTUAL ALLEGATIONS

Since 1999, TDCJ has maintained a blanket policy of housing all death row inmates on Polunsky Death Row until their execution dates. Compl. at ¶ 10. Like all inmates on Polunsky Death

Row, Plaintiffs are housed individually.  *Id.*  Their cells measure 8 by 12 feet in size, and each contains a sink, toilet, mattress, and window.  *Id.* at ¶¶ 2, 41.  While Plaintiffs are required to spend most of their time in their cells, they are permitted out-of-cell physical recreation as often as every day.  *Id.* at ¶¶ 42-43.  They are also permitted phone calls with the outside world, and to converse with other inmates with whom they share "close quarters."  *Id.* at ¶¶ 42, 45.  Plaintiffs do not contend that their cells are dirty, or that they are deprived of proper hygiene in any way.

Each Plaintiff alleges unique mental and physical injuries attributable to prolonged solitary confinement.  *Id.* at ¶¶ 16-18, 20-22, 27-27, 29-32.  Plaintiffs also allege that inmates on Polunsky Death Row have inadequate access to medical care (*id.* at ¶¶ 45-47), but they do not claim to have personally suffered any actual or imminent injuries from that inadequate access.  Plaintiffs' final claim is that inmates on Polunsky Death Row face restrictions on communicating with their counsel, including limits on the frequency and duration of attorney visits and phone calls.  *Id.* at ¶¶ 48-60.  However, Plaintiffs do not contend that these alleged restrictions have resulted in actual prejudice to ongoing or potential litigation.

## III.    ISSUES TO BE DECIDED BY THE COURT

**A.** Do Plaintiffs have standing to challenge access to medical care or access to counsel on Polunsky Death Row?

**B.** Are Plaintiffs' claims under the Texas Constitution barred by the Eleventh Amendment?

**C.** Does the Court have jurisdiction to provide relief under 18 U.S.C. § 3599?

**D.** Do Plaintiffs' allegations state any constitutional claim upon which relief may be granted?

**E.** Is the generalized injunctive relief that Plaintiffs seek permissible under Federal Rule of Civil Procedure 65 or the PLRA?

**F.** Are Plaintiffs' claims for compensatory damages arising from alleged lack of access to medical care and counsel barred by the PLRA's physical injury requirement?

**G.** Are Defendants entitled to qualified immunity with respect to Plaintiffs' individual-capacity claims?

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for lack of subject-matter jurisdiction.  In determining whether subject-matter jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (internal quotation omitted).  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal when an opposing party fails to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556).  Thus, while the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

## V.    ARGUMENT

### A.  Plaintiffs lack standing to challenge access to medical care or access to counsel on Polunsky Death Row.

The Constitution limits the jurisdiction of the federal courts to "cases" and "controversies."  U.S. Const. art. III, § 2.  "One element of the case-or-controversy requirement is that [plaintiffs],

based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Constitutional standing, like other jurisdictional requirements, is not subject to waiver and demands "strict compliance." *Id.* at 819; *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).  To have standing, a plaintiff must satisfy three elements: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Tex.*, 562 F.3d 735, 745 (5th Cir 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.  However, "the injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016)  (emphasis in original) (internal quotation omitted).  Thus, "allegations of injury that is merely conjectural or hypothetical do not suffice to confer standing." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).  Moreover, a "generalized grievance" is insufficient; plaintiffs must allege an injury that "affect[s] the plaintiff in a personal and individual way." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218-19 (5th Cir. 2001) (quoting *Lujan*, 504 U.S. at 560 & n. 1).

"That a suit may be a class action . . . adds nothing to the question of standing." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  In a putative class action, the "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.*  "[F]ederal courts lack jurisdiction if no named Plaintiff has standing." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named Plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

Here, Plaintiffs allege that inmates on Polunsky Death Row lack adequate access to medical care and legal counsel.  Compl. at   ¶¶ 45-47, 134-47, 160-65.  However, because Plaintiffs do not identify any injury in fact resulting from that allegedly inadequate access, their claims arising therefrom must be dismissed for lack of standing.

### 1. Plaintiffs fail to allege concrete and particularized injuries that have actually resulted, or will imminently result, from inadequate access to medical care.

Plaintiffs allege that inmates on Polunsky Death Row "often must wait hours—or days or weeks—to receive medical care" and that the cell-side visits they do receive are in public, "inhibiting the prisoners' ability to have private or sensitive conversations with medical staff."  Compl. at ¶¶ 45-46.  They further allege that TDCJ "does not offer adequate monitoring of mentally ill prisoners who are sentenced to death" and that "staffing shortages have made medication distribution and regular wellness checks exceedingly difficult and irregular."  *Id.* at ¶ 47.  These generalized allegations are insufficient to confer standing, however, absent further allegations that Plaintiffs personally suffered (or imminently will suffer) concrete injuries attributable to their delayed or restricted access to medical care.  *See Bomer*, 274 F.3d at 218-19; *Craft v. Collier*, No. 9:18-cv-151, 2020 WL 4950900, at *2 (E.D. Tex. July 7, 2020) (allegations that several inmates had been injured by prison conditions was insufficient to confer standing where plaintiff had "neither alleged nor demonstrated that *he* was injured as a result.") (emphasis added), *rec. adopted,* 2020 WL 4933670 (E.D. Tex. Aug. 24, 2020).

While Plaintiffs do claim to suffer from various medical and mental health conditions, they allege that those conditions were caused and/or exacerbated by prolonged housing in solitary confinement, *not* by any denial of medical care:

- Robertson alleges that, as the result of "extreme isolation and lack of stimulation," he has gained weight, suffered a decline in cardiac health, and developed tinnitus, PTSD, and anxiety. Compl. at ¶¶ 17-18.  He does not allege that he has been denied access to medical care, much less that he has suffered (or imminently will suffer) an injury as a result of that denial.

- Ford alleges that poor nutrition on Polunsky Death Row has caused decreased pigmentation in his skin, and that "the extreme isolation he experiences every day has drastically damaged his mental health." *Id.* at ¶¶ 25-27.  He does not allege that he has been denied access to medical care, much less that he has suffered (or imminently will suffer) an injury as a result.

- Curry alleges that his "prolonged detention in solitary confinement has caused, and exacerbated, his mental health issues." *Id.* at ¶ 22.  He also alleges that the number of healthcare visits he receives for his "chronic liver problems" has recently decreased to once per year (*id.* at ¶ 21), but he does not identify any concrete injury which has resulted (or imminently will result) from that alleged decrease.

- Cummings alleges that, "as the result of solitary confinement," he has gained weight and developed hypertension and anxiety.  *Id.* at ¶¶ 30-31.  He also alleges that he is unable to seek medical attention for his anxiety because of "lack of privacy" (*id.* at ¶ 30), but he does not assert that that impediment has resulted (or imminently will result) in any concrete injury.

Accordingly, Plaintiffs lack standing to challenge the constitutionality of their access to medical care on Polunsky Death Row.

### 2. Plaintiffs fail to allege any actual prejudice to contemplated or existing litigation resulting from inadequate access to counsel.

An inmate only has standing to challenge his access to courts if he has suffered an "actual injury" stemming from the purported restriction.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Specifically, he must plead "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  *Id.* at 354.  This requirement has been extended to cases where, as here, inmates' access to courts has allegedly been compromised through restrictions on interaction with counsel.  *See, e.g.*, *Hennington v. Gorsuch*, No. 6:20-cv-302, 2022 WL 18276844, at *6 (E.D. Tex. Nov. 28, 2022) (dismissing inmate's claim challenging restrictions on attorney communication because he had not alleged actual prejudice as a result of those restrictions), *rec. adopted*, 2023 WL 175171 (E.D. Tex. Jan 12, 2023); *Trulove v. Cerliano*, No. 6:20-cv-618, 2021 WL 5933123, at *3-4 (E.D. Tex. Nov. 15, 2021) (same), *rec. adopted*, 2021 WL 5930848 (E.D. Tex. Dec. 15, 2021); *Whitaker v. Livingston*, No. CV H-13-2901, 2016 WL 3199532, at *7 (S.D. Tex. June 6, 2016) (same), *aff'd sub nom. Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017).

Plaintiffs allege that inmates on Polunsky Death Row face various impediments to accessing their counsel, including limits on the length and frequency of attorney visits and phone calls and delays in receiving legal mail.  Compl. at ¶¶ 48-57.  They further allege that inmates on Polunsky Death Row are provided only indirect access to the law library, limiting their access to legal materials.  *Id.* at ¶ 59.  However, because Plaintiffs do not allege that these impediments have resulted in actual prejudice to contemplated or existing litigation, they lack standing to sue.  *See Lewis*, 518 U.S. at 351-52.

### B. Plaintiffs' official-capacity claims under the Texas Constitution are barred by Defendants' Eleventh Amendment sovereign immunity.

The Eleventh Amendment prohibits suits against a state—including suits against state actor in their official capacities—unless the state has waived its immunity or Congress has abrogated immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).  Where applicable, it provides a "jurisdictional bar [that] applies regardless of the nature of the relief sought."  *Id.* at 100.  In *Ex parte Young*, 209 U.S. 123, 159-60 (1908), the Supreme Court created a narrow exception to Eleventh Amendment immunity allowing plaintiffs "to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law."  *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022).  The *Ex parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'"  *Pennhurst*, 465 U.S. 89, 105 (1984) (quoting *Ex parte Young*, 209 U.S. at 160)).

In *Pennhurst*, the Supreme Court unequivocally held that *Young* does not apply to official-capacity claims for alleged violations of *state* law in federal court, even where only equitable relief is sought.  *Id.*  The Court reasoned that state law claims do not implicate the federal supremacy concerns supporting *Ex parte Young*, and that supplemental jurisdiction is insufficient to abrogate sovereign immunity.  *Id.* 106-112, 119–21.  Moreover, the Court explained, letting a federal court tell state officials how to follow state law would be an "intrusion on state sovereignty" and would "conflict directly with the principles of federalism that underlie the Eleventh Amendment.'"  *Id.* at 106.

Relying on *Pennhurst*, the Fifth Circuit has held that the Eleventh Amendment bars official-capacity claims for injunctive and declaratory relief to redress alleged violations of the Texas Constitution. *See McKinley v. Abbott*, 643 F.3d 403, 405–06 (5th Cir. 2011). Several district courts have followed suit, dismissing such claims at the Rule 12(b) stage. *See, e.g., Simmons v. Smith*, No. 6:17-cv-557, 2018 WL 4999963, at *5 (E.D. Tex. July 20, 2018) (relying on *Pennhurst* and *McKinley* to dismiss official-capacity claims for equitable relief under the Texas Constitution), *rec. adopted*, 2018 WL 4269551 (E.D. Tex. Sept. 8, 2018), *aff'd*, 744 F. App'x 228 (5th Cir. 2019); *United Steel, Paper & Forestry v. Anderson*, No. SA-17-CV-1242, 2018 WL 3017366, at *9 (W.D. Tex. June 15, 2018) (same); *Pharmacy Buying Ass'n v. Sebelius*, 906 F. Supp. 604, 619 (W.D. Tex. Oct. 29, 2012) (same).

This case calls for a similarly straightforward application of *Pennhurst* and *McKinley*. In addition to their various federal claims, Plaintiffs bring state law claims against Defendants—in their official capacities only—for alleged violations of Art. I § 13 of the Texas Constitution. Compl. at ¶¶ 119-123. To redress those alleged violations, Plaintiffs seek injunctive and declaratory relief. *Id.* The Court cannot provide such relief, however, without violating Defendants' Eleventh Amendment immunity. *See Pennhurst*, 465 U.S. at 105-06; *McKinley*, 643 F.3d at 405-06.

### C. The Court lacks jurisdiction to provide relief under 18 U.S.C. § 3599.

A federal court's subject-matter jurisdiction is limited and extends only as far as the authority granted to it by Congress. *Finley v. United States*, 490 U.S. 545, 550 (1989). Title 18 U.S.C. § 3599 "provides funding to indigent capital defendants for attorneys and related services but does not confer jurisdiction on the federal courts to compel state action." *Beatty v. Lumpkin*, No. 4:09-cv-225, 2022 WL 5417480, at *1 (E.D. Tex. Sept. 16, 2022), *aff'd*, 52 F.4th 632 (5th Cir. 2022) ("[Section 3599] is a funding law, not a law that grants federal courts authority to oversee the scope and nature of federally funded legal representation."). In this way, the Fifth Circuit has contrasted Section 3599 with 42

U.S.C. § 1983 and other statutes which "specifically grant causes of action that provide a federal court with jurisdiction to issue a remedy." *Id.* at 636.

Here, in addition to their Sixth Amendment access-to-counsel claim, Plaintiffs assert that Defendants' actions have impeded their statutory right to counsel under 18 U.S.C. § 3599.  Comp. at ¶¶ 134-147, 160-165.  To redress that alleged violation, Plaintiffs seek both equitable and monetary relief.  *Id.*  However, because Section 3599 is merely a funding law and does not create a private cause of action, the Court must dismiss Plaintiffs' claims under that section for want of jurisdiction.  *See Beatty*, 52 F.4th at 636; *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011) ("[Section 3599] provides a federal court with no jurisdiction to issue any order beyond the authorization of funds.").

### D.  Plaintiffs fail to state any constitutional claim.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a right secured by the Constitution and a violation of that right by one or more state actors.  *See Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994).  Plaintiffs fail to allege any such violation, warranting dismissal under Federal Rule of Civil Procedure 12(b)(6).

### 1.  Plaintiffs fail to state an Eighth Amendment conditions-of-confinement claim.

It is well-settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth Amendment.  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (quoting *Rhodes v. Chapman* 452 U.S. 337, 347 (1981)).  Prison conditions only constitute cruel and unusual punishment if they involve the "wanton and unnecessary infliction of pain" or if they are "grossly disproportionate to the severity of the crime warranting imprisonment."  *Rhodes*, 452 U.S. at 347.

A prisoner must satisfy a two-part test, consisting of an objective and a subjective component, to state an Eighth Amendment conditions-of-confinement claim.  *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).  First, under the objective component, a prisoner must demonstrate the existence

of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). The alleged conditions must be "extreme." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). While a prisoner "need not await a tragic event" before seeking relief, he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). Prison conditions are not unconstitutional simply because they are restrictive; restrictive conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

Second, under the subjective component, a prisoner must allege "that the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). To satisfy this component, a prisoner must allege facts which would permit a finding that the prison official "(1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) subjectively 'drew the inference' that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is "an extremely high standard to meet." *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001). Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. *Hernandez ex rel. Hernandez v. Texas Dep't of Prot. & Reg. Serv.*, 380 F.3d 872, 883 (5th Cir. 2004).

As explained below, Plaintiffs' allegations fail to satisfy either the objective or the subjective component of a viable Eighth Amendment conditions-of-confinement claim.

### a.   The alleged conditions are not sufficiently extreme.

The use of solitary confinement—even long-term solitary confinement—"is not per se cruel and unusual." *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021); *see also Hutto v. Finney*, 437 U.S. 678, 686 (1978) ("It is perfectly obvious that every decision to remove a particular inmate from the

general prison population for an indeterminate period could not be characterized as cruel and unusual"); *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996) ("We hold that absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim."); *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005) (acknowledging that "[p]rolonged confinement in [solitary confinement] may be the State's only option for the control of some inmates").

Only where the solitary confinement conditions are "base, inhuman, and barbaric" do they satisfy the Eighth Amendment's objective component. *Novak v. Beto*, 453 F.2d 661, 65 (5th Cir. 1971) (holding that solitary confinement conditions including "lightless cell[s] . . . limited bedding . . . and minimal food" did not rise to the level of an Eighth Amendment violation). A "common thread" in actionable claims "is the deprivation of basic elements of hygiene." *Id. See, e.g.*, *Hope*, 861 F. App'x at 584 (indefinite solitary confinement in conditions of "mold, urine, and feces" was sufficiently serious to invoke Eighth Amendment concerns); *Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1987) (allegations that inmate's solitary confinement cell was "extremely cold" and that he "was forced to sleep on the floor where rats crawled over him" were sufficient to state Eighth Amendment claim). *Cf. Daigre v. Maggio*, 719 F.2d 1310, 1312 (5th Cir. 1983) (rejecting an Eighth Amendment challenge where the record did not establish that the prisoner's "isolation cell is generally unsanitary"); *Dillard v. Davis*, No. 19-CV-81, 2022 WL 3045747, at *24 (N.D. Tex. June 17, 2022) (determining that inmate's prolonged solitary confinement could not state a viable Eighth Amendment claim "absent egregious hygiene-related facts"), *rec. adopted*, 2022 WL 3042901 (N.D. Tex. Aug. 2, 2022).

Plaintiffs allege no such extreme deprivations of basic hygiene. In fact, they raise no concerns whatsoever about the cleanliness, condition, or contents of their cells.[1] Rather, Plaintiffs' conditions-

---

[1] Plaintiffs' only hygiene-related allegation is that they are not provided with daily showers. Compl. at ¶ 44. However, the Constitution does not require inmates receive daily showers. *See Hamilton v. Lyons*, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (holding that denial of showers for three days did not constitute cruel and unusual

of-confinement claim rests entirely on the indefinite nature of their housing in solitary confinement, coupled with alleged restrictions on nutrition, recreation, interaction with inmates, and phone calls. Compl. at ¶¶ 41-44, 109-114.  Given that indefinite solitary confinement does not in and of itself violate the Eighth Amendment (*see Hope*, 861 F. App'x at 582), the Court need only consider whether the alleged restrictions accompanying that confinement violate the Constitution.  They do not.

Nutrition:  "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'"  *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation."  *Id.*

Robertson, Curry, and Cummings do not claim to be suffering any nutritional deficit.  In fact, Cummings claims that he has gained weight since arriving on Polunsky Death Row. Compl. at ¶ 30. Ford is the sole outlier, alleging that he is "unable to get sufficient nutrients from the food available," resulting in health problems.  Compl. at ¶ 26.  However, absent allegations about the volume of food he was served or its nutritional content, Ford's conclusory assertion of insufficient nutrition is insufficient to state a claim.  *See, e.g.*, *Fields v. Davis*, No. 818746, 2022 WL 818746, at *7 (E.D. Tex. Feb. 24, 2022) ("Plaintiff's wholly conclusory allegation of inadequate nutrition is not enough to state a claim under Section 1983"), *rec. adopted*, 2022 WL 811053 (E.D. Tex. Mar. 16, 2022).

Out-of-cell recreation:  The Fifth Circuit has never held that inmates enjoy an absolute right of out-of-cell recreation or exercise.  *See Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir. 1986) (setting aside lower court's judgment requiring jail to provide either outdoor exercise or an indoor exercise facility); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982) ("[T]he deprivation of exercise is not per se cruel and unusual punishment.").  While a deprivation of exercise opportunities might impinge

---

punishment); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment.").

upon an inmate's Eighth Amendment rights in certain circumstances, *Green*, 801 F.2d at 771-72, allegations that an inmate was denied out-of-cell exercise for a few consecutive weeks are insufficient to state a claim.  *See Umondak v. Ginsel*, 426 F. App'x 267, 269 (5th Cir. 2011) (allegation that inmate was denied out-of-cell exercise for 25 days could not support Eighth Amendment claim); *Peterson v. Peshoff*, No. 99-31120, 216 F.3d 1079, 2000 WL 729077, at *2 (5th Cir. May 9, 2000) (Eighth Amendment claim based on deprivation of outdoor exercise for 47 days was "frivolous"); *Urias v. Hudson*, No. 5:09-cv-130, 2010 WL 3257967, at *8 (E.D. Tex. July 16, 2010) (denial of out-of-cell exercise for four weeks did not violate Eighth Amendment), *aff'd*, 429 F. App'x 438 (5th Cir. 2011).

Plaintiffs do not indicate precisely how frequently they receive out-of-cell recreation, but they admit that it is as often as every day.  Compl. at ¶ 42.  And while they allege that inmates on Polunsky Death Row "regularly go weeks without adequate recreational time" (*id.* at ¶ 43), they do not specify how many weeks or explain what they mean by "adequate."  Nor do they claim to have suffered serious injuries resulting from lack of exercise, aside from Robertson who claims generally that his "cardiac health has declined."  *Id.* at ¶ 17.  Absent allegations that Plaintiffs have been denied out-of-cell recreation for several consecutive *months*, and that they suffered a serious illness or injury as a direct result, they cannot establish the "substantial risk of serious harm" required for an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 837; *see also Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (even assuming that plaintiff suffered from muscle atrophy, stiffness, loss of range of motion, and depression as a result of lack of out-of-cell exercise for 13 months, that was insufficient to sustain an Eighth Amendment claim where there was "nonetheless no indication these conditions posed a substantial risk of serious harm").[2]

---

[2] Plaintiffs' allegation that Defendants are violating TDCJ's own policy by restricting recreation opportunities on Polunsky Death Row (Compl. at ¶¶ 43-44) does not alter this conclusion.  *See Williams v. Banks*, 956 F.3d 808, 812 (5th Cir. 2020) ("[A] prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of [the Eighth Amendment], if constitutional minima are nevertheless met.") (quoting *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

In-cell recreation:  In addition to allegedly insufficient out-of-cell recreation, Plaintiffs complain that they are "not permitted in-cell arts and crafts projects to engage their minds."  Compl. at ¶ 44.  However, courts have made it clear that such restrictions do not rise to the level of an Eighth Amendment violation.  *See, e.g., Striz v. Collier*, No. 3:18-cv-202, 2020 WL 7868102, at *14 (S.D. Tex. Nov. 24, 2020) (allegation that inmate was deprived of "environmental and mental stimulus" in solitary confinement did not state a claim), *aff'd*, 2022 WL 1421834 (5th Cir. May 5, 2022).  Depriving Plaintiffs of arts and crafts does not inflict "cruel and unusual punishment" upon them.

Inmate interaction:  Neither the Supreme Court nor the Fifth Circuit has ever held that depriving inmates of contact with other inmates constitutes cruel and unusual punishment.  Plaintiffs cite to *Porter v. Clarke*, in which the Fourth Circuit held that housing inmates in solitary confinement with zero interaction with other inmates raised Eighth Amendment concerns.  923 F.3d 348, 353 (4th Cir. 2019).  However, *Porter* is factually distinguishable.  Whereas the inmates in *Porter* were held far apart from one another with nobody in adjacent cells (*id.*), Plaintiffs admit that their cells are in such "close quarters" that any conversations can be "easily overheard" by others on the row.  Compl. at ¶¶ 13, 31, 46.  Taking their allegations as true, Plaintiffs are able to speak with at least the inmates in cells next to them, negating their assertion of being "completely isolated" (*id.* at ¶ 45) and vitiating their Eighth Amendment claim to the extent it is premised on lack of inmate interaction.  *See Striz*, 2020 WL 7868102, at *14 (allegation that inmate "has been deprived of human contact and social interaction" for over 19 years—unsupported by facts—did not support Eighth Amendment claim).

Phone calls:  Restrictions on inmate communication with the outside world do not implicate the Eighth Amendment unless an inmate is held "completely incommunicado for an extended period."  *Payne v. Sutterfield*, No. 2:17-cv-211, 2020 WL 5237747, at *6 (N.D. Tex. Sep. 2, 2020) (citing *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976)), *aff'd*, 2022 WL 2821953 (5th Cir. July 20, 2022).  Although the Fifth Circuit has not set a minimum number of phone calls inmates must receive, one

call every few months appears to be constitutionally sufficient. *Id.* ("Plaintiff does not suffer an Eighth Amendment injury even if he accurately states he is only permitted one phone call every three months."). Plaintiffs allege that they are "permitted a very limited number of short phone calls," but do not specify the precise frequency or duration of those calls. Compl. at ¶ 42. Because Plaintiffs do not plead facts from which the Court could infer unconstitutional limitations on phone calls, they cannot rely on such restrictions to support their Eighth Amendment claim.

*   *   *   *   *

While the alleged conditions of confinement may be unpleasant and restrictive, Plaintiffs' fail to describe conditions—taken separately or as a whole—which are objectively so extreme as to deprive them of a basic human need. This failure warrants dismissal for failure to state a claim.

### b.   Plaintiffs do not allege that Defendants acted with deliberate indifference.

Plaintiffs also fail to meet the subjective component of their conditions-of-confinement claim. To adequately plead deliberate indifference, a plaintiff must allege facts indicating that each defendant "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Conclusory allegations of conscious disregard are insufficient, and courts will not hesitate to dismiss deliberate indifference claims unsupported by specific facts. *See, e.g.*, *Blank v. Eavenson*, 530 F. App'x 364, 369 (5th Cir. 2013).

Plaintiffs allege only that Defendants "authorize or condone" the policies of placing all Polunsky Death Row inmates in restricted housing. Compl. at ¶¶ 35-37. These conclusory allegations are insufficient to establish that Defendants acted with deliberate indifference to their conditions of confinement. *See, e.g.*, *Green v. Harris Cnty., Tex.*, No. H-16-893, 2019 WL 338243, at *7 (S.D. Tex. Jan. 28, 2019) (allegations that defendant "condoned the policies in place" in state jail and that he was "ultimately responsible" for those policies were insufficient to establish deliberate indifference to the allegedly unconstitutional effects of those policies).

## 2. Plaintiffs' generalized allegations of limited access to medical care do not rise to the level of an Eighth Amendment violation.

In addition to governing prisoners' conditions of confinement, the Eighth Amendment "forbids deliberate indifference to the serious medical needs of prisoners." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). However, this protection "does not . . . translate into a free-standing right to have access to the medical program or to medical care." *Jackson v. Boland*, No. 2:12-CV-0212, 2014 WL 947567, at *13 (N.D. Tex. Mar. 11, 2014). To state a viable claim, "a plaintiff must allege a deprivation of medical care sufficiently serious to show that the state has abdicated a constitutionally-required responsibility to attend to his medical needs, and that a prison official knew of and disregarded an excessive risk to inmate health or safety." *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (internal quotations omitted). Allegations of medical malpractice, unsuccessful treatment or neglect will not suffice. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

Here, Plaintiffs allege generally that inmates on Polunsky Death Row lack adequate access to medical care. Compl. at ¶¶ 45-47. However, as discussed above in the standing context, Plaintiffs do not claim to have personally suffered any actual or imminent injuries directly attributable to a delay or denial of treatment. *See* Section V.A.2, *supra*. This alone warrants dismissal. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (a delay in providing medical care creates constitutional liability only if it "results in substantial harm"); *Grant v. Collins*, No. 93-7316, 3 F.3d 439, 1993 WL 347234, at *1 (5th Cir. 1993) ("Because [plaintiff] failed to establish any resulting substantial harm occasioned by the alleged neglect, his claim has no arguable legal basis, and the court did not abuse its discretion when it dismissed his action as frivolous.").

Moreover, Plaintiffs fail to adequately allege that Defendants acted with deliberate indifference to their serious medical needs. Even assuming that Plaintiffs meant to include inadequate access to medical care as one of the "unconstitutional death row policies" which Defendants allegedly "authorize or condone" (Compl. at ¶¶ 35-37), that conclusory allegation is insufficient to state a claim

because Plaintiffs present no facts indicating that Defendants—all high-level TDCJ officials—knew about their specific medical needs, much less that Defendants acted with wanton disregard to those needs. *See Adams v. Duke*, 73 F. App'x 766 (5th Cir. 2003) (conclusory allegation that defendant caused delay in medical treatment did not state a claim).[3]

### 3.   Plaintiffs fail to state a Fourteenth Amendment due process claim.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.  *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976).  Plaintiffs fail to meet either of these requirements.

### a.   Plaintiffs have no liberty interest in avoiding their current housing.

The Supreme Court has long recognized that a prisoner may have a liberty interest in avoiding certain prison confinement conditions.  *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974).  But the Court has been equally clear that if no state statute, regulation, or policy creates such a liberty interest, a prisoner cannot "invoke the procedural protections of the Due Process Clause."  *Meachum*, 427 U.S. at 224.  In an effort to reduce "[p]arsing" of state statutes and regulations to find rights by "negative implication," the Supreme Court added a second requirement for establishing a liberty interest warranting due process: the denial of such an interest must "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 482-84 (1995).  Before reaching the "atypical and significant hardship" inquiry, however, courts must first still address the "threshold question" of

---

[3] Plaintiffs attribute the care limitations on Polunsky Death Row to "staffing shortages" (Compl. at ¶¶ 21, 47), but that too is insufficient to establish deliberate indifference. *See Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987) (holding that inmate's "general and conclusory allegations of . . . inadequate staffing" did not satisfy subjective element of Eighth Amendment claim), *aff'd*, 851 F.2d 359 (5th Cir. 1988).

whether a liberty interest "arise[s] from state policies or regulations." *Wilkinson*, 545 U.S. at 221-22.

When the *Wilkinson* Court applied this two-prong analysis, the parties agreed that Ohio prison classification regulations gave administrators discretion over where to house the plaintiff inmates.  *Id.* at 215–17, 221.  The *Wilkinson* Court thus focused on the second prong: whether the restrictive conditions at the supermax prison constituted an "atypical and significant hardship" compared to other prisons where the plaintiff inmates could have been housed.  *Id.* at 223-24.  Similarly, in *Wilkerson v. Goodwin*, because the inmate's placement in solitary confinement was not preordained by law or official policy, the Fifth Circuit delved directly into the comparative nature of the deprivation in determining whether a liberty interest existed.  774 F.3d 845, 851-57 (5th Cir. 2014).

Importantly, *Sandin*, *Wilkinson*, and *Wilkerson* did not establish a new regime in which atypical and harsh confinement conditions, in and of themselves, give rise to a protected liberty interest, regardless of whether any state law or policy creates the possibility of avoiding such conditions. Instead, it is only where inmates have a standalone interest in avoiding erroneous placement under the state's classification regulations, combined with harsh and atypical conditions, that due process is required.  *See Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015) ("After finding a basis for an interest or expectation in state regulations, an inmate must then demonstrate that denial of this state-created interest resulted in an 'atypical and significant hardship' to him.") (quoting *Sandlin*, 515 U.S. at 484).[4]

Here, Plaintiffs cannot establish a basis for protection under the Due Process Clause.  To do so, they would need to point to a Texas regulation or policy providing them with an expectation of

---

[4] In addition to misreading governing law, removing the requirement of a state-created liberty interest would collapse Plaintiffs' due process claim into an Eighth Amendment claim.  The Eighth Amendment "appl[ies] when the conditions of confinement compose the punishment at issue."  *Rhodes*, 452 U.S.at 347.  Allegations that prison conditions "involve the wanton and unnecessary infliction of pain," or are "without any penological purpose" fall squarely within the ambit of the Eighth Amendment—not the Due Process Clause.  *Id.*  As the Fourth Circuit has observed, "[t]reating *Sandin* and *Wilkinson* as holding that confinement conditions alone trigger a Due Process claim—without regard to whether a state policy or regulation provides the basis to challenge such conditions—would elide that critical distinction."  *Prieto*, 780 F.3d at 251.

avoiding their conditions of confinement *and* demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life.  *See id.* at 252.  Plaintiffs do neither.

First, Plaintiffs have no expectation in avoiding confinement in their current conditions.  As they admit, official TDCJ policy *requires* that all male capital offenders be housed on Polunsky Death Row.  Compl. at ¶ 81 ("*[A]ll* male prisoners sentenced to death are held in solitary confinement at the Polunsky Death Row Unit, as a blanket policy.") (emphasis in original).  This state policy forecloses any due process expectation or right on the part of Plaintiffs to any other housing assignment, and is therefore dispositive of their claim.  *See Prieto*, 780 F.3d at 252 ("A court cannot conclude that death row inmates have a state-created interest in consideration for non-solitary confinement when the State's established written policy expressly precludes such consideration.").

Plaintiffs also fail to allege that their conditions of confinement impose an atypical and significant hardship in relation to the ordinary incidents of prison life.  While the Supreme Court has not identified the proper baseline for this inquiry, it has previously emphasized the importance of the sentence of conviction in determining the existence of a liberty interest.  *See Meachum*, 427 U.S. at 225 (rejecting the contention that "burdensome conditions" imposed by transfer to a maximum-security facility provided the basis for a due process claim because those conditions fell "within the normal limits or range of custody which the conviction has authorized the State to impose."); *Sandin*, 515 U.S. at 485 (finding significant, in rejecting a prisoner's due process claim, that the challenged conditions fell "within the expected perimeters of the sentence imposed").  As the Court explained in *Sandin* and repeated in *Wilkinson*, a prisoner does not establish a state-created liberty interest in avoiding disciplinary segregated confinement if such confinement "does not present a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence." *Id.*; *Wilkinson*, 545 U.S. at 223.

The Supreme Court in *Wilkinson* and the Fifth Circuit in *Wilkerson* both held that the plaintiff inmates had established atypical and significant hardship compared with "any plausible" or "any

possible" baseline.  *Wilkinson*, 545 U.S. at 210; *Wilkerson*, 774 F.3d at 855.  Those cases are

distinguishable, however, because neither involved a discrete class of inmates who had been sentenced

to death and for that reason were required by state policy to be confined under particular conditions.

In *Prieto*, by contrast, the Fourth Circuit was presented with that precise scenario and held as follows:

> [I]n the unusual instances in which state law mandates the confinement conditions to
> be imposed on offenders convicted of a certain crime and receiving a certain sentence,
> those confinement conditions are, by definition, the "ordinary incidents of prison life"
> for such offenders. Virginia law mandates that all persons convicted of capital crimes
> are, upon receipt of a death sentence, automatically confined to death row. Thus, in
> Virginia the ordinary incidents of prison life for those inmates, including [plaintiff],
> include housing on death row. . . . [Plaintiff], like any other inmate, can only be
> deprived of that to which he is entitled. Thus, in determining whether a deprivation
> imposes a significant or atypical hardship on him, the court must use as its benchmark
> the incidents of prison life to which he is entitled. Virginia imposes death row
> confinement on capital offenders because of the crime they have committed and the
> sentence they have received. That confinement is the expected—indeed mandated—
> confinement condition flowing from the conviction and sentence. State law defines
> the perimeters of confinement conditions, and here state law is pellucid: tethered to
> the death sentence in Virginia is pre–execution confinement on death row.

780 F.3d at 254.  Because this case presents nearly identical facts to those in *Prieto*, the Court should

similarly find that Plaintiffs' conditions of confinement—"flowing from [their] conviction and

sentence" (*id.*)—do not create a liberty interest giving rise to due process protections.[5]

### b.   Even if Plaintiffs had a liberty interest in avoiding their current housing, Plaintiffs were provided with adequate due process during sentencing.

The Due Process Clause's procedural component is "flexible," and its requirements depend

on what "the particular situation demands."  *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th

Cir. 2020) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  Here, Plaintiffs are housed on

---

[5] Although the Fifth Circuit has not yet considered the unique question presented in *Prieto*, there is strong
evidence that it would adopt the same holding if given the opportunity.  The reasoning in *Prieto* is strikingly
similar to the Fifth Circuit's reasoning in sex offender due process cases in which "registration requirements
'turn on an offender's conviction alone—a fact that a convicted offender already had a procedurally safeguarded
opportunity to contest."  *Does 1-7 v. Abbott*, 945 F.3d 307, 312 (5th Cir. 2019) (quoting *Conn. Dep't of Pub. Safety
v. Doe*, 438 U.S. 1, 7-8 (2003)).  In both cases, the conditions flow directly from the conviction, and, in both
cases, persons so convicted "are owed no additional process."  *Compare id.* at 312, *with Prieto*, 780 F.3d at 254.

Polunsky Death Row due to their death sentences, not as the result of any classification hearing or review.  Compl. at ¶¶ 19, 23, 28, 33.  Therefore, the appropriate inquiry is whether the process they received during sentencing was sufficient to warrant their current housing assignments.[6]

Texas law mandates bifurcated proceedings in capital cases.  Tex. Code Crim. Proc. art. 37.071(2)(a).  The "guilt/innocence phase" is the typical trial in which the jury determines whether the evidence establishes beyond a reasonable doubt the defendant's guilt of the capital crime.  *Id.*  If the defendant is found guilty, the same jury is reconvened for a separate "sentencing phase," during which both sides may present evidence regarding "any matter that the court deems relevant to [the defendant's] sentence, including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty."  *Id.*  The jury is then presented with "special issues" to determine if the death penalty is warranted.  First, the jury is asked to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."  *Id.* at § (2)(b)(1).  The state bears the burden of proving this "future dangerousness" issue beyond a reasonable doubt.  *Id.* at § (2)(c).  If the jury unanimously answers "yes," it must then answer the following "mitigation" issue: "[w]hether, taking into consideration all of the evidence . . . there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed."  *Id.* at § (2)(e)(1).  If the jury unanimously answers "no" to that mitigation question, then the defendant is sentenced to death.  *Id.* at § (2)(g).[7]

The Supreme Court has repeatedly upheld Texas's capital sentencing scheme—and in

---

[6] To the extent Robertson and Ford challenge the process they were afforded during their transfer to Polunsky Death Row from the Ellis Unit in 1999, any such claims are barred by the two-year statute of limitations applicable to actions under Section 1983.  *See Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006).

[7] While the "future dangerousness" special issue has been part of Texas's capital sentencing scheme in its current form since 1973, the mitigation issue was amended in 2005 to reflect the State's removal of the possibility of parole for capital offenders.  *See* Tex. Penal Code § 12.31(a).

particular its "future dangerousness" special question—against due process challenges.  *See, e.g., Jurek v. Texas*, 428 U.S. 262, 273 (1976); *Franklin v. Lynaugh*, 487 U.S. 164, 177–80 (1988); *Johnson v. Texas*, 509 U.S. 350, 368–69 (1993).  Surely, if the process provided by that scheme is sufficient to support a death sentence, it is sufficient to support TDCJ's decision to place an inmate on Polunsky Death Row.  *Cf. Does 1-7*, 945 F.3d at 312 (holding that persons convicted of sex offenses are owed no additional process when their obligation to register as sex offenders turns on their conviction alone); *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010) (same).

Plaintiffs nevertheless demand additional process, presumably in the form of individualized classification reviews.  Courts will consider three factors in determining whether sufficient process has been afforded: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3), "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.  All three factors weigh in Defendants' favor.

First, as discussed above, Plaintiffs have no interest in avoiding their current housing because *all* male capital offenders are automatically housed on Polunsky Death Row, and they do not face an "atypical or significant hardship" vis-à-vis other death row inmates.  *See* Section V.D.3.a, *supra*.  Moreover, even if Plaintiffs did have such an interest, it must be evaluated "within the context of the prison system and its attendant curtailment of liberties."  *Wilkinson*, 545 U.S. at 225.

Second, there is no risk of erroneous deprivation by denying Plaintiffs of individualized classification reviews.  The purpose of such reviews would be to assess whether Plaintiffs pose a continuing threat of violence in the prison environment—something their sentencing juries have *already* determined to be the case beyond a reasonable doubt.  *See* Tex. Code Crim. Proc. art. 37.071(2)(c); *Speer v. Lumpkin*, 860 F. App'x 66, 70 (5th Cir. 2021) ("[T]he question of future

dangerousness often focuses on the likelihood the defendant will be violent in prison.").  Plaintiffs would not benefit from relitigating that issue now, especially given the comparatively limited procedural safeguards required in prison classification decisions.[8]

Third, requiring TDCJ to conduct individualized classification reviews would be contrary to the State's interest, which is the "dominant consideration" in determining whether additional process is required.  *Id.* at 227.   For one thing, any classification reviews would necessarily entail reassessing the "future dangerousness" finding of Plaintiffs' criminal juries, something prison officials would be loath to do given that findings by a jury are "sacrosanct."  *See Manget Bros., Inc. v. Bank of Greenwood, Miss.*, 381 F.2d 91, 96 (5th Cir. 1967).  Moreover, reviewing each of Plaintiffs' entire files would require additional time and money from an agency already lacking in resources.  *See Wilkinson*, 545 U.S. at 228 ("The problem of scarce resources is another component of the State's interest.").

*     *     *     *     *

In sum, Plaintiffs do not have a state-created liberty interest in avoiding their current housing.  Plus, even if such a liberty interest existed, their criminal sentencing provided ample process prior to the finding of "future dangerousness," which TDCJ then relied upon in placing Plaintiffs on Polunsky Death Row.  Finally, TDCJ need not conduct individualized classification reviews because doing so would not add any probable value and would be contrary to the State's interest.  Plaintiffs' due process claim must therefore be dismissed.

### 4.    Plaintiffs fail to state a Sixth Amendment claim.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . .  to have the assistance of counsel for his defense."  U.S. Const. amend. VI. "Since the

---

[8] Whereas Plaintiffs had the right to counsel during sentencing and could present any evidence which might weigh against a finding of future dangerousness, *see* Tex. Code Crim. Proc. art. 371.071(a)(1), Plaintiffs would have no right to counsel during classification reviews, and TDCJ could constitutionally place limits on the type and quantity of evidence permitted.  *See Wilkinson*, 545 U.S. at 228-29 (holding that "informal, nonadversary procedures" were sufficient before placing non-death row inmates in prolonged solitary confinement).

right to effective counsel under the Sixth Amendment extends only to criminal matters, it is applicable solely to pre-trial detainees or to a convicted prisoner being tried on additional charges or contesting the legality of a previous conviction." *Taylor v. Sterrett*, 532 F.2d 462, 472 (5th Cir. 1976) (citations omitted). And, even then, it "extends to the first appeal of right, and no further." *Pa. v. Finley*, 481 U.S. 551, 555 (1987). *See also In re Sepulvado*, 707 F.3d 550, 554 (5th Cir. 2013) ("[The Sixth Amendment does not apply in habeas proceedings.") (internal quotation omitted); *Sanchez v. U.S. Postal Serv.*, 785 F.2d 1236, 1237 (5th Cir. 1986) ("[T]he sixth amendment . . .  does not apply to civil proceedings.").

Here, Plaintiffs claim that Defendants have impeded their Sixth Amendment right to counsel by, *inter alia*, placing limitations on in-person, telephone, and mail communications with their lawyers. Compl. at ¶¶ 48-60. However, Plaintiffs have long since exhausted their direct appeals of the convictions for which they were sentenced to death. *See Robertson v. State*, 871 S.W.2d 701 (Tex. Crim. App. 1993); *Curry v. State*, No. AP-77033, 2017 WL 781740 (Tex. Crim. App. Mar. 1, 2017); *Ford v. State*, 919 S.W.2d 107 (Tex. Crim. App. 1996); *Cummings v. State*, No. AP-76923, 2014 WL 12713256 (Tex. Crim. App. 2014). Thus, unless they have been charged with or convicted of subsequent offenses (which is not alleged), any attorney contact they wish to have could only be related to habeas petitions or civil actions as to which they have no Sixth Amendment protections. On this basis alone, dismissal of their Sixth Amendment claims is appropriate. *See Whitaker*, 862 F.3d at 501 (affirming dismissal of access-to-counsel claim because inmates had exhausted their direct appeals and Sixth Amendment rights no longer applied); *Bell v. Avila*, No. 4:11-CV-4238, 2013 WL 11730661, at *3 (S.D. Tex. June 25, 2013) (dismissing Sixth Amendment claim predicated on access to civil counsel).[9]

Moreover, even setting that issue aside, Plaintiffs fail to state a Sixth Amendment claim for the same reason they lack standing to assert that claim: they do not allege any actual legal prejudice.

---

[9] To the extent Plaintiffs assert Sixth Amendment claims premised on restrictions on access to counsel *before* they had exhausted their direct appeals, any such claims are now time-barred. *See* n. 6, *supra*.

*See* Section V.A.2., *supra*.  "It is well-settled that, in order to state a claim of the violation of the Sixth Amendment right of access to the courts, an inmate must allege that he has suffered some cognizable legal prejudice as a result of the alleged wrongful conduct."  *Hennington*, 2022 WL 18276844, at *6.  *See also Roberts v. Fuentes*, No. 21-40036, 2022 WL 1548667, at *2 (5th Cir. May 16, 2022) ("To show that his Sixth Amendment right of access to the courts was violated, [plaintiff] must show an actual injury—that his efforts to pursue a nonfrivolous legal claim were hindered.").  Plaintiffs' failure to allege legal prejudice is grounds for dismissal under Rule 12(b)(6).  *See, e.g., Christensen v. Scott*, 95 F.2d 46, 1996 WL 405492, at *1 (5th Cir. 1996) (affirming dismissal of access-to-counsel claim as "frivolous" where inmate "failed to allege the element of legal prejudice"); *Truelove*, 2021 WL 5933123, at *3 ("[Plaintiff] neither demonstrated actual injury nor a constitutional right to in-person visitation with counsel, and, therefore, failed to state a claim upon which relief may be granted.").[10]

### E.  Plaintiffs' requested injunction is not permitted by Federal Rule 65 or the PLRA.

Federal Rule 65 requires that all injunctions must state their terms "specifically" and "describe in reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)(1).  To comply with this rule, "[a]n injunction must simply be framed so that those enjoined will know what conduct the court has prohibited."  *Texas v. EEOC*, 933 F.3d 433, 451 (5th Cir. 2019).  "A general injunction which in essence orders a defendant to obey the law is not permitted" under this rule.  *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981).

In addition, under the PLRA, courts "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the

---

[10] Plaintiffs explicitly frame their access-to-counsel claim as arising under the Sixth Amendment.  However, even if the Court were to interpret Plaintiffs' complaint as asserting an access-to-courts claim under the First Amendment, that claim would similarly be precluded by Plaintiffs' failure to allege actual prejudice.  *See DeMarco v. Davis*, 914 F.3d 383, 387-88 (5th Cir. 2019).

Federal right." 18 U.S.C. § 3626(a)(1).  This provision "limits relief to the particular plaintiffs before the court." *Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015).  "A district court abuses its discretion if it issues an injunction that is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Barbee v. Collier*, No. 22-70011, 2022 WL 16860944, at *2 (5th Cir. Nov. 11, 2022) (internal quotation omitted).

Plaintiffs' requested injunctive relief—"enjoining Defendants from violating the Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution" (Compl. at p. 44)— falls well outside of Rule 65 and the PLRA's parameters. First of all, Plaintiffs do not demonstrate that there has been any violation of a federal right that could be rectified by an injunction.  *See* Section V.D., *supra*.  Further, even assuming *arguendo* that some federal right was violated, Plaintiffs' requested injunction is not "narrowly drawn" to redress their alleged individualized injuries and does not "describe in reasonable detail . . . the act or acts restrained or required." 18 U.S.C. § 3626(a)(1); Fed. R. Civ. P. 65(d)(1).  Rather, Plaintiffs seek precisely the type of "obey the law" injunction deemed improper by the Fifth Circuit. *See Ball*, 792 F.3d at 599.  Accordingly, Plaintiffs' claims for injunctive relief cannot be permitted to proceed.  *See, e.g., Roberts v. Lozada*, No. 5:21-cv-170, 2021 WL 5969301, at *3 (N.D. Tex. Nov. 23, 2021) (dismissing inmate's request for an injunction that was "inherently nebulous" and did "not describe the specific relief" because such an injunction would violate both the PLRA and Rule 65), *rec. adopted*, 2021 WL 5967560 (N.D. Tex. Dec. 16, 2021).

### F.  Plaintiffs' claims for compensatory damages arising from access to medical care and counsel are barred by the PLRA's physical injury requirement.

As a part of the PLRA, Congress restricted a prisoner's ability to recover compensatory damages without a showing of physical injury as the result of the alleged violation of his rights: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

42 U.S.C. § 1997e(e).  This physical injury requirement "applies to *all federal civil actions* in which a prisoner alleges a constitutional violation." *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007) (emphasis in original) (quoting *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005)).

Here, as discussed above, Plaintiffs fail to allege any injuries—physical or otherwise—resulting from inadequate access to medical care or counsel.  *See* Section V.A., *supra*.  However, even if the Court were to conclude that Plaintiffs have alleged emotional or mental injuries resulting from that allegedly inadequate access, Plaintiffs are precluded from recovering compensatory damages for those injuries because they do not allege any accompanying physical injuries.  *See Hawkins v. Trent Flying Serv.*, 45 F. App'x 325, 2002 WL 1899587, at *1 (5th Cir. July 9, 2002) (affirming dismissal of Eighth Amendment denial of medical care claim where plaintiffs failed to allege a physical injury); *Moore v. Tarrant Cnty., Tex.,* No. 4:21-cv-1206, 2022 WL 1524131, at *2-3 (N.D. Tex. May 12, 2022) (dismissing Sixth Amendment claim that did not include any allegations of a physical injury).

### G.  Plaintiffs' individual-capacity claims are barred by qualified immunity.[11]

Qualified immunity affords protection to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity analysis is a two-step inquiry. "First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established right." *Hernandez ex rel Hernandez v. Tex. Dep't of Prot. & Reg. Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).  "Second, if the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident." *Id.*  To be clearly established, a court "must be able to point to controlling authority—or a robust consensus of

---

[11] Because qualified immunity is an "immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985),  the Fifth Circuit recently held that, "[w]hen defendants assert qualified immunity in a motion to dismiss, the district court may not defer ruling on that assertion." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022).  "The rule is that 'a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation'—full stop." *Id.* (internal quotation omitted).

persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (internal quotation omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Plaintiffs have not cleared the first hurdle of this inquiry because they fail to allege any constitutional violation. *See* Section V.D, *supra*. However, even if the Court disagrees, Defendants are still entitled to qualified immunity because their actions were (and are) objectively reasonably in light of clearly established law.

With respect to Plaintiffs' conditions-of-confinement claim, Defendants acted (and continue to act) reasonably in confining Plaintiffs in restrictive housing until their execution dates. The "clearly established law," both now and at the time Plaintiffs were placed on Polunsky Death Row, is that prolonged, even indefinite placement in solitary confinement does not constitute cruel and unusual punishment unless it is coupled with squalid conditions which deprive inmates of basic hygiene. *See Hope*, 861 F. App'x at 584; *Novak*, 453 F.2d at 665. Because Plaintiffs allege no such deprivations of hygiene, Defendants are entitled to qualified immunity. *See Dillard*, 2022 WL 3045747, at *24 (N.D. Tex. June 17, 2022) (holding that qualified immunity barred Eighth Amendment claim premised on prolonged solitary confinement because there were no hygiene-related deprivations alleged).

With respect to Plaintiffs' due process claim, Defendants acted (and continue to act) reasonably in confining Plaintiffs in restrictive housing based solely on their death sentences without individualized assessments. While the Supreme Court and Fifth Circuit have held that inmates sometimes have a liberty interest in avoiding prolonged solitary confinement, those rulings are distinguishable because the plaintiff inmates were not on death row and prison officials had discretion to place them elsewhere. *Wilkinson*, 545 U.S. at 221-24; *Wilkerson*, 774 F.3d at 851-57. The only "clearly established law" governing the unique situation presented here—in which Plaintiffs' housing

assignment "flow[s] from the[ir] conviction and sentence"—is found in *Prieto*, wherein the Fourth Circuit held that no liberty interest was present and thus no additional procedural protections were required.  780 F.3d at 254.  Defendants are therefore entitled to qualified immunity on that claim.

      With respect to Plaintiffs' access-to-counsel claim, Defendants acted (and continue to act) reasonably in limiting Plaintiffs' access to attorney phone calls and visits because the Supreme Court "has afforded considerable deference to the determinations of prison administrators [to] regulate the relations between prisoners and the outside world."  *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989).  Although a complete ban on attorney communication violates the constitution, regulations on the frequency of those communications do not.  *See, e.g.*, *Bell*, 2013 WL 11730661, at *2-3.  Defendants also acted (and continue to act) reasonably in not taking additional measures to ensure the privacy of attorney communication, since "the attorney-client privilege cannot be asserted as a basis for recovery under § 1983."  *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981); *see also Buffington v. Valdez*, No. 3:07-cv-260, 2007 WL 2719885, at *5 (N.D. Tex. Sept. 28, 2007) (holding that lack of soundproof, confidential inmate-attorney booths did not violate the Sixth Amendment).  Finally, Defendants acted (and continue to act) reasonably in permitting Plaintiffs only indirect access to the law library, and by requiring that Plaintiffs be handcuffed during expert evaluations.  *See Lewis*, 518 U.S. at 361-62 (holding that prison could constitutionally bar physical access to the law library for "inmates presenting special disciplinary and security concerns"); *Beatty v. Collier*, No. 4:22-cv-3658, 2022 WL 16722364, at *8 (S.D. Tex. Nov. 4, 2022) ("Requiring handcuffs during a contact visit is, quite simply, a rational security concern.").  Defendants are thus entitled to qualified immunity on that claim, too.

## VI.    CONCLUSION

      For the reasons described above, Defendants respectfully request that all of Plaintiffs' claims against them be dismissed with prejudice for want of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN E. COWLES**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, **MICHAEL J. CALB**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served to all attorneys of record by the Electronic Case Filing System of the Eastern District of Texas on March 30, 2023.

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General