**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| **MARK ROBERTSON,** *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 9:23-CV-0023 |
| | § | |
| **BRYAN COLLIER,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

| | |
|---|---|
| **JOHN SCOTT**<br>**Provisional Attorney General** | SHANNA E. MOLINARE, Chief,<br>**Law Enforcement Defense Division** |
| **BRENT WEBSTER**<br>**First Assistant Attorney General** | MICHAEL J. CALB*<br>**Assistant Attorney General**<br>**Texas State Bar No. 24077883**<br>Michael.Calb@oag.texas.gov |
| **GRANT DORFMAN**<br>**Deputy First Assistant Attorney General** | |
| **JAMES LLOYD**<br>**Acting Deputy Attorney General for**<br>**Civil Litigation** | OFFICE OF THE ATTORNEY GENERAL<br>**Law Enforcement Defense Division**<br>**P.O. Box 12548**<br>**Austin, Texas 78711-2548**<br>**(512) 463-2080/Fax: (512) 370-9814** |

**ATTORNEYS FOR DEFENDANTS**
_____
**\* Counsel of Record**

# TABLE OF CONTENTS

I.  STATEMENT OF THE CASE                                                                                            1

II.  FACTUAL ALLEGATIONS                                                                                            2

III. ISSUES TO BE DECIDED BY THE COURT                                                                  3

IV. STANDARD OF REVIEW                                                                                          4

V.  ARGUMENT                                                                                                              5

    A.  Plaintiffs lack standing to assert claims related to F Pod, retaliation, mold and
        insect exposure, or access to counsel, showers, food, mattresses, and recreation ...............5

        1.  Access-to-counsel and retaliation claims (all Plaintiffs lack standing) ........................6

        2.  Shower-related claims (all Plaintiffs lack standing) ....................................................8

        3.  Mattress-related claims (all Plaintiffs lack standing) ..................................................9

        4.  Insect-related claims (all Plaintiffs lack standing) ......................................................9

        5.  Mold-related claims (Ford, Cummings, and Ward lack standing) ...............................9

        6.  F Pod-related claims (Robertson, Curry, Ford, and Cummings lack standing) .........10

        7.  Food-related claims (Robertson, Curry, and Cummings lack standing). ...................11

        8.  Recreation-related claims (Cummings and Ward lack standing) ...............................11

    B.  Plaintiffs' official-capacity claims under the Texas Constitution
        are barred by Defendants' Eleventh Amendment sovereign immunity. ...........................12

    C.  The Court lacks jurisdiction to provide relief under 18 U.S.C. § 3599, 28 U.S.C.
        §§ 2254-55, or Article 11.071(a) of the Texas Code of Criminal Procedure. ...................14

    D.  Plaintiffs fail to state any constitutional claim. ...................................................................15

        1.  Plaintiffs fail to state an Eighth Amendment conditions-of-confinement claim. ......15

            a.  The alleged conditions are not sufficiently extreme. ...........................................15

            b.  Plaintiffs do not adequately plead deliberate indifference. ..................................23

        2.  Plaintiffs fail to state an Eighth Amendment medical claim. ....................................24

        3.  Plaintiffs fail to state a Fourteenth Amendment due process claim. .........................26

            a.  Plaintiffs have no liberty interest in avoiding their current housing .................27

            b.  Even if Plaintiffs had a liberty interest in avoiding their current housing,
               they were provided with adequate process during sentencing. ..........................30

        4.  Plaintiffs fail to state a Sixth Amendment access-to-counsel claim. .........................33

        5.  Plaintiffs fail to state a First Amendment retaliation claim. .....................................35

    E.  The PLRA's physical injury requirement bars Plaintiffs from recovering
        compensatory damages for retaliation, F Pod conditions, mold and insect
        exposure, or access to counsel, showers, food, mattresses, and recreation. ......................37

    F.  Plaintiffs' individual-capacity claims are barred by qualified immunity. ...........................38

VI. CONCLUSION                                                                                                          40

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Adeleke v. Fleckenstein,*
   385 F. App'x 386 (5th Cir. 2010) ......................................................................35

*Alex v. Stalder,*
   225 F. App'x 313 (5th Cir. 2007)........................................................................22

*Armour v. Davis,*
   No. 6:18-cv-535, 2020 WL 2850140 (E.D. Tex. June 1, 2020) ........................19

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................... 4, 24

*Barnes v. Brownlow,*
   No. 6:08-cv-194, 2008 WL 2704868 (E.D. Tex. July 7, 2008)........................26

*Baze v. Parker,*
   632 F.3d 338 (6th Cir. 2011) ............................................................................14

*Beatty v. Collier,*
   No. 4:22-cv-3658, 2022 WL 16722364 (S.D. Tex. Nov. 4, 2022) ............. 35, 40

*Beatty v. Lumpkin,*
   No. 4:09-cv-225, 2022 WL 5417480 (E.D. Tex. Sept. 16, 2022).....................14

*Beazley v. Johnson,*
   242 F.3d 248 (5th Cir. 2011) ............................................................................15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...........................................................................................4

*Bell v. Avila,*
   No. 4:11-CV-4238, 2013 WL 11730661 (S.D. Tex. June 25, 2013)........34, 35, 40

*Bell v. Hinojosa,*
   No. 2:22-cv-140, 2022 WL 19001974 (S.D. Tex. July 21, 2022) .....................20

*Bell v. Woods,*
   382 F. App'x 391 (5th Cir. 2010) ......................................................................37

*Berry v. Brady,*
   192 F.3d 504 (5th Cir.1999)..............................................................................22

*Blank v. Eavenson,*
   530 F. App'x 364 (5th Cir. 2013) ......................................................................23

*Block v. Rutherford,*
   468 U.S. 576 (1984) ................................................................................... 35, 40

*Bradt v. Smith,*
   634 F.2d 796 (5th Cir. 1981) ............................................................................40

*Brooks v. City of W. Point,*
   639 F. App'x 986 (5th Cir. 2016) ......................................................................38

*Brown v. Callahan,*
   623 F.3d 249 (5th Cir. 2010) ............................................................................39

*Brown v. Taylor,*
   911 F.3d 235 (5th Cir. 2018) ............................................................................36

*Buffington v. Valdez,*
   No. 3:07-cv-260, 2007 WL 2719885 (N.D. Tex. Sept. 28, 2007) ....................40

*Bush v. Monroe*,
  No. 6:17-cv-541, 2018 WL 4648732 (E.D. Tex. July 30, 2018)................................10, 18, 19
*Cantu v. State*,
  939 S.W.2d 627 (Tex. Crim. App. 1997)...........................................................................15
*Carswell v. Camp*,
  54 F.4th 307 (5th Cir. 2022)...............................................................................................38
*Christensen v. Scott*,
  95 F.2d 46, 1996 WL 405492 (5th Cir. 1996)....................................................................34
*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex. 2009)...............................................................................................13
*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)............................................................................................................11
*CleanCOALition v. TXU Power*,
  536 F.3d 469 (5th Cir. 2008)..............................................................................................4
*Cleveland v. Bell*,
  938 F.3d 672 (5th Cir. 2019)..............................................................................................16
*Conn. Dep't of Pub. Safety v. Doe*,
  438 U.S. 1 (2003)................................................................................................................30
*Covarrubias v. Foxworth*,
  No. 6:13-cv-812, 2016 WL 4836864 (E.D. Tex. Sept. 14, 2016).......................................26
*Croft v. Gov. of Tex.*,
  562 F.3d 735 (5th Cir 2009)...............................................................................................5
*Culp v. Martin*,
  471 F.2d 814 (5th Cir. 1973)..............................................................................................10
*Cummings v. State*,
  No. AP-76923, 2014 WL 12713256 (Tex. Crim. App. 2014).............................................34
*Curry v. State*,
  No. AP-77033, 2017 WL 781740 (Tex. Crim. App. Mar. 1, 2017).....................................33
*Davis v. Scott*,
  157 F.3d 1003 (5th Cir. 1998)............................................................................................16
*DeMarco v. Davis*,
  914 F.3d 383 (5th Cir. 2019)..............................................................................................35
*Dillard v. Davis*,
  No. 19-CV-81, 2022 WL 3045747 (N.D. Tex. June 17, 2022)......................................18, 39
*Doe v. Harell*,
  841 F. App'x 663................................................................................................................13
*Does 1-7 v. Abbott*,
  945 F.3d 307 (5th Cir. 2019).........................................................................................30, 31
*Domino v. TDCJ*,
  239 F.3d 752 (5th Cir. 2001)..............................................................................................16
*Duran v. State*,
  363 S.W.3d 719 (Tex. App. Houston [1st Dist.] 2011).......................................................15
*Ex parte Young*,
  209 U.S. 123 (1908)............................................................................................................12
*Farmer v. Brennan*,
  511 U.S. 825 (1994).................................................................................................16, 21, 23
*Fields v. Davis*,
  No. 818746, 2022 WL 818746 (E.D. Tex. Feb. 24, 2022)..................................................22

*Flores v. TDCJ Transitional Planning Dep't S. Region Ins. Div.*,
  No. 2:14-cv-283, 2015 WL 10436114 (S.D. Tex. Nov. 17, 2015) ....................................11

*Flores v. TDCJ Transitorial Planning Dep't S. Region Inst. Div.*,
  No. 2:14-CV-283, 2015 WL 3727833 (S.D. Tex. June 15, 2015) ....................................10

*Ford v. State*,
  919 S.W.2d 107 (Tex. Crim. App. 1996) ....................................34

*Foulds v. Corley*,
  833 F.2d 52 (5th Cir. 1987) ....................................17

*Frank v. Gaos*,
  139 S. Ct. 1041 (2019) ....................................6, 8

*Franklin v. Lynaugh*,
  487 U.S. 164 (1988) ....................................31

*Galindo v. City of Del Rio*,
  No. 20-cv-20, 2021 WL 2763033 (W.D. Tex. Mar. 26,. 2021) ....................................8

*Garrett v. Smith*,
  No. 20-1043, 2021 WL 1215871 (E.D. La. 2021) ....................................19

*Geiger v. Jowers*,
  404 F.3d 371 (5th. Cir. 2005) ....................................24, 25, 37

*Gonzales v. Lopez*,
  No. C-08-008, 2008 WL 724247 (S.D. Tex. Mar. 17, 2008) ....................................39

*Green v. Ferrell*,
  801 F.2d 765 (5th Cir. 1986) ....................................20, 21, 22

*Green v. Harris Cnty., Tex*,
  No. H-16-893, 2019 WL 338243 (S.D. Tex. Jan. 28, 2019) ....................................23

*Hamilton v. Lyons*,
  74 F.3d 99 (5th Cir. 1996) ....................................19

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ....................................38

*Harper v. Showers*,
  174 F.3d 716 (5th Cir. 1999) ....................................16

*Harris v. Hegmann*,
  198 F.3d 153 (5th Cir. 1999) ....................................25

*Helling v. McKinney*,
  509 U.S. 25 (1993) ....................................16

*Hennington v. Gorsuch*,
  No. 6:20-cv-302, 2022 WL 18276844 (E.D. Tex. Nov. 28, 2022) ....................................6, 34

*Hernandez ex rel. Hernandez v. Texas Dep't of Prot. & Reg. Serv.*,
  380 F.3d 872 (5th Cir. 2004) ....................................16, 38, 39

*Hernandez v. Velasquez*,
  522 F.3d 556 (5th Cir. 2008) ....................................16, 21

*Hogan v. Cunningham*,
  722 F.3d 725 (5th Cir. 2013) ....................................39

*Hope v. Harris*,
  861 F. App'x 571 (5th Cir. 2021) ....................................17, 18, 19, 39

*Howard v. Guterrez*,
  No. C-11-125, 2011 WL 2223768 (S.D. Tex. June 7, 2011) ....................................12, 20

*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) ....................................4

*Hudson v. McMillian,*
   503 U.S. 1 (1992) ........................................................................................................16

*Hutchins v. McDaniels,*
   512 F.3d 193 (5th Cir. 2007) .......................................................................................37

*Hutto v. Finney,*
   437 U.S. 678 (1978) ....................................................................................................17

*In re Sepulvado,*
   707 F.3d 550 (5th Cir. 2013) .......................................................................................33

*Inclusive Communities Project, Inc. v. Dep't of Treasury,*
   946 F.3d 649 (5th Cir. 2019) .........................................................................................9

*Jackson v. Boland,*
   No. 2:12-CV-0212, 2014 WL 947567 (N.D. Tex. Mar. 11, 2014) ..............................24

*Jaros v. Ill. Dep't of Corr.,*
   684 F.3d 667 (7th Cir. 2012) .................................................................................19, 20

*Johnson v. Dallas Indep. Sch. Dist.,*
   38 F.3d 198 (5th Cir. 1994) .........................................................................................15

*Johnson v. Doe,*
   No. H-12-2728, 2013 WL 3816727 (S.D. Tex. July 22, 2013) ..............................25, 26

*Johnson v. Texas,*
   509 U.S. 350 (1993) ....................................................................................................31

*Jones v. Greninger,*
   188 F.3d 322 (5th Cir.1999) ........................................................................................37

*Jones v. Johnson,*
   160 F. App'x 336 (5th Cir. 2005) ..................................................................................7

*Jones v. Livingston,*
   No. C-05-520, 2005 WL 3618316 (S.D. Tex. Jan.6, 2005) .........................................25

*Jurek v. Texas,*
   428 U.S. 262 (1976) ....................................................................................................31

*Lawson v. Dallas Cnty.,*
   286 F.3d 257 (5th Cir. 2002) .......................................................................................24

*Lewis v. Casey,*
   518 U.S. 343 (1996) ..............................................................................................5, 6, 8

*Lewis v. Scott,*
   28 F.4th 659 (5th Cir. 2022) ........................................................................................12

*Little v. KPMG LLP,*
   575 F.3d 533 (5th Cir. 2009) .........................................................................................5

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................................5, 8

*Lumsden v. Davis,*
   525 F. Supp. 3d 782 (W.D. Tex. 2021) ........................................................................37

*Manget Bros., Inc. v. Bank of Greenwood, Miss.,*
   381 F.2d 91 (5th Cir. 1967) .........................................................................................32

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ...............................................................................................27, 32

*McFadden v. Lucas,*
   713 F.2d 143 (5th Cir. 1983) .......................................................................................37

*McKinley v. Abbott,*
   643 F.3d 403 (5th Cir. 2011) .......................................................................................13

*Meachum v. Fano,*
   427 U.S. 215 (1976) ................................................................................................ 27, 29

*Meza v. Livingston,*
   607 F.3d 392 (5th Cir. 2010) ............................................................................................ 31

*Mims v. Rapides Parish Detention Center,*
   No. 1:20-cv-575, 2020 WL 3425253 (W.D. La. June 2, 2020) .................................... 19

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) ......................................................................................................... 38

*Monell v. Dep't of Social Servs.,*
   436 U.S. 658 (1978) .............................................................................................. 17, 24, 25

*Moore v. Tarrant Cnty., Tex.,*
   No. 4:21-cv-1206, 2022 WL 1524131 (N.D. Tex. May 12, 2022) ............................ 37, 38

*Morris v. Powell,*
   449 F.3d 682 (5th Cir. 2006) ............................................................................................ 36

*Morrissey v. Brewer,*
   408 U.S. 471 (1972) ......................................................................................................... 30

*Myers v. Klevenhagen,*
   97 F.3d 91 (5th Cir. 1996) ................................................................................................ 23

*Norton v. Dimazana,*
   122 F.3d 286 (5th Cir. 1997) ............................................................................................ 26

*Novak v. Beto,*
   453 F.2d 661 (5th Cir. 1971) ............................................................................ 17, 20, 22, 39

*O'Shea v. Littleton,*
   414 U.S. 488 (1974) ........................................................................................................... 6

*Pa. v. Finley,*
   481 U.S. 551 (1987) ......................................................................................................... 33

*Patin v. LeBlanc,*
   No. 11-3071, 2012 WL 3109402 (E.D. La. May 18, 2012) ........................................... 26

*Payne v. Almanza,*
   No. 1:18-cv-175, 2019 WL 1932760 (N.D. Tex. May 1, 2019) .................................. 19, 20

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) ................................................................................................ 12, 13, 15

*Perez v. Region 20 Educ. Serv. Ctr.,*
   307 F.3d 318 (5th Cir. 2002) ............................................................................................ 13

*Peterson v. Peshoff,*
   No. 99-31120, 216 F.3d 1079, 2000 WL 729077 (5th Cir. May 9, 2000) .................... 21

*Pharmacy Buying Ass'n v. Sebelius,*
   906 F. Supp. 604 (W.D. Tex. Oct. 29, 2012) ............................................................ 13, 14

*Pichardo v. Kinker,*
   73 F.3d 612 (5th Cir. 1996) .............................................................................................. 17

*Planned Parenthood Gulf Coast, Inc. v. Phillips,*
   24 F.4th 442 (5th Cir. 2022) ............................................................................................ 15

*Plotkin v. IP Axess.,*
   407 F.3d 690 (5th Cir. 2005) .............................................................................................. 4

*Porter v. Clarke,*
   923 F.3d 348 (4th Cir. 2019) ............................................................................................ 22

*Prieto v. Clarke,*
   780 F.3d 245 (4th Cir. 2015) ............................................................................ 28, 29, 30, 40

*Public Citizen, Inc. v. Bomer*,
    274 F.3d 212 (5th Cir. 2001) .................................................................. 5, 8

*Raines v. Byrd*,
    521 U.S. 811 (1997) ................................................................................. 5

*Ray v. Livingson*,
    No. 5:15-cv-141, 2016 WL 3187108 (E.D. Tex. June 8, 2016) .............. 24

*Reynolds v. Newcomer*,
    No. 09-1077, 2010 WL 234896 (W.D. La. Jan. 19, 2010) ..................... 18

*Rhodes v. Chapman*,
    452 U.S. 337 (1981) ............................................................................... 16

*Roberts v. Fuentes*,
    No. 21-40036, 2022 WL 1548667 (5th Cir. May 16, 2022) ................... 34

*Robertson v. State*,
    871 S.W.2d 701 (Tex. Crim. App. 1993) ................................................ 33

*Rogers v. Boatright*,
    709 F.3d 403 (5th Cir. 2013) ................................................................ 26

*Ruiz v. Estelle*,
    679 F.2d 1115 (5th Cir. 1982) ............................................................... 20

*Sanchez v. U.S. Postal Serv.*,
    785 F.2d 1236 (5th Cir. 1986) ............................................................... 33

*Sandin v. Conner*,
    515 U.S. 472 (1995) ..................................................................... 27, 28, 29

*Serrano v. Customs & Border Patrol*,
    975 F.3d 488 (5th Cir. 2020) ................................................................ 30

*Shareef v. Alford*,
    No. 1:09-cv-86, 2011 WL 3104582 (E.D. Tex. May 25, 2011) ................ 8

*Siglar v. Hightower*,
    112 F.3d 191 (5th Cir. 1997) ................................................................ 37

*Simmons v. Smith*,
    No. 6:17-cv-557, 2018 WL 4999963 (E.D. Tex. July 20, 2018) ............. 13

*Skinner v. Quarterman*,
    No. 9:09-cv-130, 2011 WL 13131162 (E.D. Tex. Aug. 9, 2011) ........... 38

*Smith v. Herbert*,
    533 F. App'x 479 (5th Cir. 2013) .......................................................... 36

*Smith v. Leonard*,
    244 F. App'x 583 (5th Cir. 2007) .......................................................... 19

*Speer v. Lumpkin*,
    860 F. App'x 66 (5th Cir. 2021) ............................................................ 32

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................. 5, 9, 10, 12

*Stanley v. Foster*,
    464 F.3d 565 (5th Cir. 2006) ...................................................... 7, 30, 31

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ................................................................ 10

*Striz v. Collier*,
    No. 3:18-cv-202, 2020 WL 7868102 (S.D. Tex. Nov. 24, 2020) ........... 22

*Talib v. Gilley*,
    138 F.3d 211 (5th Cir. 1998) .......................................................... 21, 22

*Taylor v. Sterrett,*
    532 F.2d 462 (5th Cir. 1976) ........................................................................................... 33

*Thompson v. Steele,*
    709 F.2d 381 (5th Cir. 1983) ................................................................................... 17, 24

*Thornburgh v. Abbott,*
    490 U.S. 401 (1989) ................................................................................................. 35, 36

*Trulove v. Cerliano,*
    No. 6:20-cv-618, 2021 WL 5933123 (E.D. Tex. Nov. 15, 2021) ................................. 6, 34

*Umondak v. Ginsel,*
    426 F. App'x 267 (5th Cir. 2011) ....................................................................................21

*United Steel. Paper & Forestry v. Anderson,*
    No. SA-17-CV-1242, 2018 WL 3017366 (W.D. Tex. June 15, 2018) ...............................13

*Urias v. Hudson,*
    No. 5:09-cv-130, 2010 WL 3257967 (E.D. Tex. July 16, 2010) .......................................21

*Varnado v. Lynaugh,*
    920 F.2d 320 (5th Cir. 1991) ..........................................................................................25

*Walker v. Livingston,*
    381 F App'x 477 (5th Cir. 2010) .....................................................................................12

*Westfall v. Luna,*
    903 F.3d 534 (5th Cir. 2018) ..........................................................................................38

*Whitaker v. Livingston,*
    No. CV H-13-2901, 2016 WL 3199532 (S.D. Tex. June 6, 2016) .......................... 6, 7, 34

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) ...............................................................................................passim

*Williams v. Banks,*
    956 F.3d 808 (5th Cir. 2020) ..........................................................................................23

*Williams v. Luna,*
    909 F.2d 121 (5th Cir. 1990) ................................................................................... 17, 24

*Williams v. Parker,*
    No. 5:19-cv-100, 2021 WL 3413081 (E.D. Tex. July 12, 2021) .....................................25

*Wilson v. Seiter,*
    501 U.S. 294 (1991) .......................................................................................................21

*Wolff v. McDonnell,*
    418 U.S. 539 (1974) .......................................................................................................27

*Woods v. Smith,*
    60 F.3d 1161 (5th Cir. 1995) ..........................................................................................36

*Young v. McCain,*
    760 F. App'x 251 (5th Cir. 2019) ....................................................................................20

<u>Statutes</u>

18 U.S.C. § 3599 ..................................................................................................... 1, 2, 14
28 U.S.C. §§ 2254-2255 ....................................................................................1, 2, 14, 15
42 U.S.C. § 1983 .....................................................................................................passim
42 U.S.C. § 1997e(e) ............................................................................................... 37, 38
Tex. Code Crim. P. Art. 11.071 .....................................................................1, 2, 14, 15
Tex. Code Crim. P. Art. 37.071 ................................................................................1, 30, 32
Tex. Gov't Code §§ 501.051 *et seq.* ................................................................................25
Tex. Penal Code § 12.31(a) ............................................................................................31

Defendants Bryan Collier ("Collier"), Bobby Lumpkin ("Lumpkin"), Daniel Dickerson ("Dickerson"), Crystal Anthony ("Anthony"), and Ronald Ivey ("Ivey") (collectively, "Defendants"),[1] through the Office of the Attorney General of Texas, file this motion to dismiss Plaintiffs Mark Robertson ("Robertson"), George Curry ("Curry"), Tony Egbuna Ford ("Ford"), Rickey Cummings ("Cummings") and Lucky Ward ("Ward") (collectively, "Plaintiffs")' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support, Defendants offer the following:

## I.      STATEMENT OF THE CASE

Plaintiffs are five Texas prisoners who were convicted of capital offenses.  During the sentencing phase of each of their criminal trials, juries of their peers were asked to determine whether "there [was] a probability that [Plaintiffs] would commit criminal acts of violence that would constitute a continuing threat to society."  Tex. Code Crim. Proc. art. 37.071.  All five juries found beyond a reasonable doubt that there was such a probability and sentenced Plaintiffs to death.  Until their execution dates, Plaintiffs remain confined to the custody of the Texas Department of Criminal Justice ("TDCJ") on death row at the Polunsky Unit in Livingston, Texas ("Polunsky Death Row").

Through this putative class action, Plaintiffs challenge various alleged conditions and restrictions on Polunsky Death Row.  ECF No. 22 ("Am. Compl.").  In short, they complain that their indefinite, automatic placement in restrictive housing—coupled with mold and insect exposure and limited access to medical care, counsel, recreation, showers, mattresses, and nutrition—violates their rights under the Sixth, Eighth, and Fourteenth Amendments, as well as under 18 U.S.C. § 3599, 28 U.S.C. §§ 2254-2255, Article 11.071(a) of the Texas Code of Criminal Procedure, and Article I § 13 of the Texas Constitution.  *Id.*  at ¶¶ 106-142, 153-171. Plaintiffs further allege that Defendants retaliated against them for filing this lawsuit by interfering with their ability to communicate with counsel, thereby violating their First Amendment rights.  *Id.* at ¶¶ 143-152, 172-177.  As Defendants, Plaintiffs

---

[1] Plaintiffs also sue 10 unidentified Doe defendants who have not been served and do not join in this motion.

name TDCJ's Executive Director (Collier), TDCJ's Correctional Institutions Division Director (Lumpkin), the Polunsky Unit Warden (Dickerson),[2] and a Polunsky Unit correctional officer (Anthony), all in both their official and individual capacities.  *Id.* at ¶¶ 32-36.  To redress their alleged injuries, Plaintiffs seek a declaration of wrongdoing, a permanent injunction altering their conditions of confinement, as well as compensatory, nominal, and punitive damages.  *Id.* at p. 49-50.

Defendants assert multiple, overlapping bases for dismissal of Plaintiffs' claims.[3]  First, Plaintiffs lack standing to assert claims based on retaliation, F Pod conditions, mold and insect exposure, or access to counsel, showers, food, mattresses, and recreation on Polunsky Death Row.  Second, Plaintiffs' claims under the Texas Constitution are barred by Defendants' Eleventh Amendment immunity.  Third, the Court lacks jurisdiction to consider Plaintiffs' access-to-counsel claims under 18 U.S.C. § 3599, 28 U.S.C. §§ 2254-2255, or Article 11.071(a) of the Texas Code of Criminal Procedure.  Fourth, Plaintiffs fail to allege any viable constitutional claim under 43 U.S.C. § 1983.  Fifth, the Prison Litigation Reform Act ("PLRA")'s physical injury requirement bars Plaintiffs from seeking compensatory damages for claims related to retaliation, F Pod conditions, exposure to mold and insects, or access to counsel, shower, food, mattresses, and recreation.  Finally, Defendants are entitled to qualified immunity with respect to Plaintiffs' individual-capacity claims.

## II.    FACTUAL ALLEGATIONS

Since 1999, TDCJ has maintained a policy of housing all male inmates with death sentences on Polunsky Death Row until their execution dates.  Am. Compl. at ¶ 7.  Like all inmates on Polunsky Death Row, Plaintiffs are housed in individual cells and do not receive work assignments.  *Id.* at ¶¶ 7,

---

[2] Ivey replaced Dickerson as the Polunsky Unit Senior Warden on June 1, 2023.  To the extent Dickerson is sued in his official capacity, Ivey is automatically substituted as defendant.  Fed. R. Civ. P. 25(d); ECF No. 28.

[3] Defendants previously filed a motion to dismiss Plaintiffs' original complaint.  ECF No. 13.  Rather than opposing that motion, Plaintiffs filed their amended complaint which, as described herein, suffers from nearly all of the same pleading and jurisdictional defects as their original complaint.

10.   Their cells measure 8 by 12 feet in size, and each presently contains a sink, toilet, bed, mattress, and window.   *Id.* at ¶¶ 2, 40.  While Plaintiffs are required to spend most of their time in their cells, they are permitted out-of-cell physical recreation as often as every day.  *Id.* at ¶ 48.  They are also provided with tablet computers and phone calls.  *Id.* at ¶ 52.  Plaintiffs are within earshot of inmates in neighboring cells, allowing for ample communication.  *Id.* at ¶ 66.  Except for allegations of mold and insect exposure, Plaintiffs do not contend that their cells are dirty or that they are deprived of any elements of proper hygiene.  *Id.* at ¶¶ 9, 125. Plaintiffs complain that the conditions in F Pod within Polunsky Death Row are especially harsh, but only Ward claims to have spent any time on F Pod in the past ten years, and he does not assert facts indicating that Defendants were personally involved in the alleged deprivations he experienced during his time there. *Id.* at ¶¶ 53-55.

Each Plaintiff has been housed on Polunsky Death Row for a different length of time and each alleges unique injuries attributable to prolonged solitary confinement and/or inadequate access to preferred forms of medical and mental health care.  *Id.* at ¶¶ 14-31, 58-66.  None of the Plaintiffs, however, assert facts indicating that Defendants were personally aware of their injuries or that Defendants have had any say in dictating their individual medical treatment.  Plaintiffs further allege that they face restrictions on their access to counsel, including limits on attorney visits, phone calls and contact, but they do not specify any resulting prejudice to existing or potential litigation.  *Id.* at ¶¶ 67-79.   Finally, Plaintiffs allege that Defendants implement stricter restrictions on attorney communication after this lawsuit was filed, but they do not specify any actionable retaliatory adverse acts or resulting injuries.  *Id.* at ¶¶ 80-85.

## III.   ISSUES TO BE DECIDED BY THE COURT

**A.**  Do Plaintiffs have standing to assert claims related to retaliation, F Pod conditions, mold and insect exposure, or access to counsel, showers, food, mattresses, and recreation?

**B.**  Are Plaintiffs' claims under the Texas Constitution barred by the Eleventh Amendment?

    **C.**  Does the Court have jurisdiction to provide relief under 18 U.S.C. § 3599, 28 U.S.C. §§ 2254, 2255, and/or Article 11.071(a) of the Texas Code of Criminal Procedure?

    **D.**  Do Plaintiffs' allegations state any constitutional claim upon which relief may be granted under 42 U.S.C. § 1983?

    **E.**  Does the PLRA's physical injury requirement bar Plaintiffs from recovering compensatory damages for claims related to retaliation, F Pod conditions, mold and insect exposure, or access to counsel, showers, food, mattresses, and recreation?

    **F.**  Are Defendants entitled to qualified immunity with respect to Plaintiffs' individual-capacity claims?

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal for lack of subject-matter jurisdiction. In determining whether subject-matter jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (internal quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal when an opposing party fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. at 556). Thus, while the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

## V.     ARGUMENT

### A.  Plaintiffs lack standing to assert claims related to F Pod, retaliation, mold and insect exposure, or access to counsel, showers, food, mattresses, and recreation.

The Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." U.S. Const. art. III, § 2.  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Constitutional standing, like other jurisdictional requirements, is not subject to waiver and demands "strict compliance." *Id.* at 819; *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996).  To have standing, a plaintiff must satisfy three elements: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Tex.*, 562 F.3d 735, 745 (5th Cir 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

At the pleading stage, "factual allegations of injury resulting from the defendant's conduct may suffice" to confer standing. *Lujan*, 504 U.S. at 561.  However, "the injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016)  (emphasis in original) (internal quotation omitted).  "[A]llegations of injury that is merely conjectural or hypothetical do not suffice to confer standing." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).  Moreover, a "generalized grievance" is insufficient; plaintiffs must allege an injury that "affect[s] the plaintiff in a personal and individual way." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218-19 (5th Cir. 2001) (quoting *Lujan*, 504 U.S. at 560 & n. 1).

"That a suit may be a class action . . . adds nothing to the question of standing." *Lewis*, 518 U.S. at 357.  In a putative class action, the "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* (internal

quotation omitted).  "[F]ederal courts lack jurisdiction if no named Plaintiff has standing." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named Plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

Here, Plaintiffs allege that inmates on Polunsky Death Row are exposed to mold and insects and are denied adequate access to counsel, showers, mattresses, food, and recreation.  They further allege that conditions are especially severe on F Pod, and that they have been subject to retaliation for filing this lawsuit.  However, to the extent Plaintiffs fail to identify concrete, particularized injuries resulting from these conditions and restrictions, their claims must be dismissed for lack of standing.

### 1.   Access-to-counsel and retaliation claims (all Plaintiffs lack standing).

An inmate only has standing to challenge his access to the courts if he has suffered an "actual injury" stemming from the purported restriction.  *Lewis*, 518 U.S. at 351.   Specifically, he must plead "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 349.   This requirement has been extended to cases where, as here, inmates' access to the courts has allegedly been compromised through restrictions on interaction with counsel.  *See, e.g., Hennington v. Gorsuch*, No. 6:20-cv-302, 2022 WL 18276844, at *6 (E.D. Tex. Nov. 28, 2022) (dismissing inmate's claim challenging restrictions on attorney communication because he had not alleged resulting prejudice to contemplated or existing litigation), *rec. adopted*, 2023 WL 175171 (E.D. Tex. Jan 12, 2023); *Trulove v. Cerliano*, No. 6:20-cv-618, 2021 WL 5933123, at *3-4 (E.D. Tex. Nov. 15, 2021) (same), *rec. adopted*, 2021 WL 5930848 (E.D. Tex. Dec. 15, 2021); *Whitaker v. Livingston*, No. CV H-13-2901, 2016 WL 3199532, at *7 (S.D. Tex. June 6, 2016) (same), *aff'd sub nom. Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017).

Plaintiffs allege that inmates on Polunsky Death Row face various restrictions to accessing their counsel, including limits on the length and frequency of attorney visits and phone calls, delays in

receiving legal mail, violations of the attorney/client privilege, intimidation tactics, and limits on contact visits with experts.  Am. Compl. at ¶¶ 67-79.  They further allege that Defendants imposed additional restrictions on inmates' access to counsel in retaliation for filing this lawsuit.  *Id.* at ¶¶ 80-85.  However, because Plaintiffs do not assert that these alleged restrictions resulted in actual prejudice to contemplated or existing litigation, they lack standing to sue:

- Curry does not allege any specific interference with his access to counsel, much less any resulting prejudice to contemplated or existing litigation.

- Robertson alleges that he was denied sufficient privacy during a meeting with habeas counsel on May 12, 2022, but does not assert any resulting prejudice to his habeas petition or other contemplated or existing litigation.  *Id.* at ¶ 78.

- Ford alleges that guards intercepted documents during a meeting with habeas counsel on May 27, 2022, and confiscated documents after a meeting with his defense counsel on June 6, 2022, but does not assert any resulting prejudice to his criminal case, habeas petition or other contemplated or existing litigation.  *Id.*  Ford further alleges that he was punished for filing a lawsuit against TDCJ in 2012, but does not assert any resulting prejudice to that lawsuit or other contemplated or existing litigation.  *Id.* at ¶ 85.[4]

- Cummings alleges that he was unable to meet with his federal habeas attorney on March 23, 2023 to discuss an evidentiary hearing, but does not assert any resulting prejudice to his habeas petition or any other contemplated or existing litigation.  *Id.* at ¶ 82.

- Ward alleges that guards searched his legal papers following a meeting with his defense attorney on April 25, 2023, but does not assert any resulting prejudice to his criminal case or other contemplated or existing litigation.  *Id.* at ¶ 78.

The only time Plaintiffs hint at potential prejudice is by alleging that Defendants "interfered with Plaintiffs' ability to respond to Defendants' Motion to Dismiss," citing to intimidation tactics allegedly employed during Plaintiffs' counsel's calls with Ward and another Polunsky Death Row inmate, Gary Green ("Green") on May 3, 2023 and May 8, 2023, respectively.  *Id.* at ¶ 84.  That allegation is insufficient to confer standing for two reasons.  First, any prejudice to Green cannot be

---

[4] Ford is also barred from relying on a 2012 incident to confer standing because claims under Section 1983 are governed by a two-year statute of limitations which is not tolled by an ongoing injury.  *See Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006); *Jones v. Johnson*, 160 F. App'x 336, 337 (5th Cir. 2005).

taken into account, since he is not a party and standing must be predicated on injuries to the named Plaintiffs. *See Bomer*, 274 F.3d at 218-19. Second, given that Defendants' motion to dismiss rested entirely on the inadequacy of Plaintiff's allegations in their original complaint (*see* ECF No. 13), there was no need for Plaintiffs' counsel to confer with Plaintiffs—especially Ward, who was not yet a party—in order to prepare a response. And, in any event, Plaintiffs chose to amend their complaint rather than opposing Defendants' motion and were able to file their amended complaint on time. Because Plaintiffs have not alleged any actual prejudice, they lack standing to challenge inmates' access to counsel on Polunsky Death Row. *See Lewis*, 518 U.S. at 351-52.[5]

Plaintiffs' retaliation claims must also be dismissed for lack of standing even if viewed separate and apart from their access-to-counsel claims. While Plaintiffs generally aver that they have been "directly affected" by the stricter rules on attorney communication imposed after the filing of their original complaint (Am. Compl. at ¶ 82), they do not specify any concrete and particularized injuries resulting therefrom. *See Lujan*, 504 U.S. at 560-61; *Galindo v. City of Del Rio*, No. 20-cv-20, 2021 WL 2763033, at *5 (W.D. Tex. Mar. 26,. 2021) ("Because [plaintiff] has not alleged an injury independent of [a non-party]'s injuries, he does not have standing to bring his First Amendment retaliation claim.").

### 2.   Shower-related claims (all Plaintiffs lack standing).

Plaintiffs allege that prisoners on Polunsky Death Row Unit "are regularly limited to just three showers per week and, in some weeks, are not given an opportunity to shower at all." Am. Compl. at ¶ 47. However, because none of the Plaintiffs claim to have been injured by insufficient shower access, they lack standing to sue on those grounds. *See Bomer*, 274 F.3d at 218-19; *Shareef v. Alford*, No.

---

[5] Plaintiffs' only other allegations hinting at prejudice relate to restrictions imposed on non-party inmates. *See* Am. Compl. at ¶ 83. ("At least one other prisoner . . . has expressed hesitancy to speak with Plaintiffs' counsel out of fear of retaliation from TDCJ guards); *id.* ("[O]ne attorney has been unable to schedule a meeting with her [non-Plaintiff] client for months and has therefore been unable to adequately prepare [her] client's habeas petition."). However, unless or until class certification is granted, Plaintiffs cannot rely on alleged injuries to non-plaintiff "class members" to establish standing. *See Lewis*, 518 U.S. at 357; *Frank*, 139 S. Ct. at 1046.

1:09-cv-86, 2011 WL 3104582, at *1 (E.D. Tex. May 25, 2011) (inmate lacked standing to challenge shower access where he did not "identify an injury in fact that affects him in a personal and individual way or one that is imminent"), *rec. adopted*, 2011 WL 3104772 (E.D. Tex. July 25, 2011).

### 3.  Mattress-related claims (all Plaintiffs lack standing).

While Plaintiffs allege generally that inmates on Polunsky Death Row are "sometimes" deprived of mattresses, none of them claim to be currently deprived of a mattress.  Am. Compl. at ¶ 40.  Ward and Cummings allege that they experienced temporary mattress deprivations in the past, but neither of them mention any resulting injuries.  *Id.* at ¶¶ 40, 46, 54.  Accordingly, Plaintiffs lack standing to assert any mattress-related claims.  *See Spokeo, Inc.* 578 U.S. at 334.

### 4.  Insect-related claims (all Plaintiffs lack standing).

Plaintiffs allege that "cockroaches and insects are widespread" on Polunsky Death Row.  Am. Compl. at ¶ 45.  However, Plaintiffs fail to allege any concrete injuries which they have personally suffered from this alleged insect infestation.  Cummings alleges that, while housed on C-Pod between 2018 to 2020, "there were multiple instances when . . . cockroaches were crawling in his food," but that allegation is insufficient to confer standing for three reasons.  First, since Plaintiffs did not file this lawsuit until 2023, any claims premised on events between 2018 to 2020 are barred by the statute of limitations.  *See* n. 4, *supra*.  Second, other than the mere displeasure of finding insects in his food, Cummings does not indicate how (if at all) he was harmed.  Third, even assuming that Cummings was harmed, he does not offer facts tying that injury to Defendants' actions.  *See Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) ("Article III requires a causal connection between the plaintiff's injury and the defendant's challenged conduct.").

### 5.  Mold-related claims (Ford, Cummings, and Ward lack standing).

Plaintiffs allege that cells on Polunsky Death row are "often infested with black mold," which "Defendants have not taken adequate measures to remedy."  Am. Compl. at ¶¶ 9, 44.  However, with

the exception of Robertson and Curry, the remaining Plaintiffs fail to allege any concrete injuries that they have personally suffered (or imminently will suffer) from mold exposure.  Accordingly, they lack standing to sue for that alleged mold exposure.  *See Spokeo, Inc.*, 578 U.S. at 334; *Bush v. Monroe*, No. 6:17-cv-541, 2018 WL 4648732, at *3 (E.D. Tex. July 30, 2018) (dismissing Eighth Amendment claim premised on mold exposure because the inmate plaintiff failed to allege that he experienced any medical problems stemming from that exposure), *rec. adopted*, 2018 WL 4042418 (E.D. Tex. Aug. 24, 2018); *Flores v. TDCJ Transitorial Planning Dep't S. Region Inst. Div.*, No. 2:14-CV-283, 2015 WL 3727833, at *7 (S.D. Tex. June 15, 2015) (same), *rec. adopted*, 2015 WL 5554630 (S.D. Tex. Sept. 21, 2015).

      **6.**    **F Pod-related claims (Robertson, Curry, Ford, and Cummings lack standing).**

Plaintiffs allege that conditions on Polunsky Death Row are most severe in F Pod, where inmates are "deprived of even minimal stimulation" and "TDCJ guards regularly deny food."  Am. Compl. at ¶ 53.  However, the only Plaintiffs who claim to have actually spent any time in F Pod are Ward (from November 2022 to February 1, 2023), Ford (for an unspecified period beginning in 2012), and Robertson (for an unspecified time period), and, of those three, only Ward specifies any injuries resulting therefrom.  *Id.* at ¶¶ 53-54.  Moreover, Ford is precluded from suing concerning his 2012 stint in F Pod by statute of limitations, even if he had alleged continuing injuries.  *See* n. 4, *supra*.  Therefore, Ward is the sole Plaintiff with standing to sue about conditions on F Pod, and even his standing is limited to claims for damages because he has been housed elsewhere since this February.  Am. Compl. at ¶ 54; *Culp v. Martin*, 471 F.2d 814, 815 (5th Cir. 1973) (holding that inmates lacked standing to seek injunctive relief related to conditions of jail in which they were no longer housed).

Plaintiffs cannot establish standing to challenge the conditions of F Pod merely because there is a possibility that they may be housed there in the future.  Even if is true that "the threat of F Pod looms over *every* prisoner" (Am. Compl. at ¶ 54), Plaintiffs do not allege any facts indicating that their transfer to F Pod is "imminent" as required to establish an injury-in-fact.  *See Stringer v. Whitley*, 942

F.3d 715, 721 (5th Cir. 2019) (for an injury-in-fact to be imminent, "there must be at least a substantial

risk that the injury will occur") (internal quotation omitted); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

409 (2013) ("[A]llegations of possible future injury are not sufficient.").[6]

### 7.  Food-related claims (Robertson, Curry, and Cummings lack standing).

Plaintiffs allege that "TDCJ guards . . . sometimes deny multiple meals in a row to individual

prisoners" on Polunsky Death Row.  Am. Compl. at ¶ 51.  They further allege that "[m]eals provided

to prisoners [on Polunsky Death Row] sometimes consist entirely of a 'food loaf,' which is leftover

(sometimes rotten) food that is ground up and baked into a loaf." *Id.*  However, while Ford and Ward

claim to have lost weight from lack of sufficient food, Robertson, Curry, and Cummings do not claim

to have suffered from any nutritional deficit.  In fact, Robertson and Cummings allege that they have

*gained* weight since arriving on Polunsky Death Row. Am. Compl. at ¶¶ 15, 25.  Robertson, Curry, and

Cummings therefore lack standing to assert any food-related claims.  *See Flores v. TDCJ Transitional

Planning Dep't S. Region Ins. Div.*, No. 2:14-cv-283, 2015 WL 10436114, at *3 (S.D. Tex. Nov. 17, 2015)

(inmate could not challenge sufficiency of TDCJ diet where his allegations indicated that "he has not

suffered any significant weight loss, nor has he been diagnosed with any medical condition attributable

to poor nutrition or lack of calories"), *aff'd*, 694 F. App'x 300 (5th Cir. 2017).

### 8.  Recreation-related claims (Cummings and Ward lack standing).

Plaintiffs allege that inmates on Polunsky Death Row "regularly go several days or weeks

without recreation," including during quarterly lockdowns, when "death-sentenced prisoners are

denied recreation for approximately ten to fourteen days."  Am. Compl. at ¶ 48.  However, while

Robertson, Curry, and Ford specify concrete injuries resulting from insufficient recreation, Cummings

and Ward do not, thereby depriving them of standing to challenge recreation restrictions on Polunsky

---

[6] Plaintiffs also allege that conditions on F Pod led to the suicide of inmate Terence Andrus ("Andrus") in January 2023.  Am. Compl. at ¶ 55.  However, because Andrus's estate is not a party, allegations concerning the circumstances of his death cannot support Plaintiffs' standing to challenge F Pod conditions.

Death Row. *See Spokeo, Inc.*, 578 U.S. at 334; *Howard v. Guterrez*, No. C-11-125, 2011 WL 2223768, at *10 (S.D. Tex. June 7, 2011) (holding that inmate lacked standing to challenge restrictions on recreation where "he has not suffered an actual injury" resulting therefrom).

### B. Plaintiffs' official-capacity claims under the Texas Constitution are barred by Defendants' Eleventh Amendment sovereign immunity.

The Eleventh Amendment prohibits suits against a state—including suits against state actor in their official capacities—unless the state has waived its immunity or Congress has abrogated immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *Walker v. Livingston*, 381 F App'x 477, 478-79 (5th Cir. 2010). Where applicable, it provides a "jurisdictional bar [that] applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100. In *Ex parte Young*, 209 U.S. 123, 159-60 (1908), the Supreme Court created a narrow exception to Eleventh Amendment immunity allowing plaintiffs "to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022). The *Ex parte Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. 89, 105 (1984) (quoting *Young*, 209 U.S. at 160)).

In *Pennhurst*, the Supreme Court unequivocally held that the *Young* exception does not permit official-capacity claims for alleged violations of *state* law in federal court, even where only equitable relief is sought. *Id.* The Court reasoned that state law claims do not implicate the federal supremacy concerns supporting *Young*, and that supplemental jurisdiction is insufficient to abrogate sovereign immunity. *Id.* 106-112, 119–21. Moreover, the Court explained, letting a federal court tell state officials how to follow state law would be an "intrusion on state sovereignty" and would "conflict directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106.

Relying on *Pennhurst*, the Fifth Circuit has ruled that the Eleventh Amendment bars official-capacity claims for injunctive and declaratory relief to redress alleged violations of the Texas

Constitution.  *McKinley v. Abbott*, 643 F.3d 403, 405–06 (5th Cir. 2011).  Several district courts have

followed suit, dismissing such claims at the Rule 12(b) stage.  *See, e.g.*, *Simmons v. Smith*, No. 6:17-cv-

557, 2018 WL 4999963, at *5 (E.D. Tex. July 20, 2018) (relying on *Pennhurst* and *McKinley* to dismiss

official-capacity claims for equitable relief under the Texas Constitution), *rec. adopted*, 2018 WL

4269551 (E.D. Tex. Sept. 8, 2018), *aff'd*, 744 F. App'x 228 (5th Cir. 2019); *United Steel. Paper & Forestry*

*v. Anderson*, No. SA-17-CV-1242, 2018 WL 3017366, at *9 (W.D. Tex. June 15, 2018) (same); *Pharmacy*

*Buying Ass'n v. Sebelius*, 906 F. Supp. 2d 604, 619 (W.D. Tex. Oct. 29, 2012) (same).

This case calls for a similarly straightforward application of *Pennhurst* and *McKinley*.  In addition

to their various federal claims, Plaintiffs bring state law claims against Defendants—in their official

capacities only—for alleged violations of Art. I § 13 of the Texas Constitution.  Am. Compl. at ¶¶

115-120.  To redress those alleged violations, Plaintiffs seek injunctive and declaratory relief.  *Id.*  The

Court cannot provide such relief, however, without infringing upon Defendants' Eleventh

Amendment immunity.  *See Pennhurst*, 465 U.S. at 105-06; *McKinley*, 643 F.3d at 405-06.

Plaintiffs attempt to circumvent this conclusion by alleging that Defendants "were acting

without legal authority, and thus their actions are *ultra vires*."  Am. Compl. at ¶ 119.   However, the

*ultra vire*s doctrine is a "narrow and questionable exception" to Eleventh Amendment immunity which

does not apply where, as here, the relief sought is "institutional and official in character."  *Pennhurst*,

465 U.S. at 106-109, 116; *see also Doe v. Harell*, 841 F. App'x 663, 667-69, n. 5 (5th Cir. 2021) (holding

that official-capacity state law claims for equitable relief premised on allegedly *ultra vires* actions were

barred by sovereign immunity because relief was institutional and could only come from defendants).[7]

---

[7] To the extent Plaintiffs intend to invoke the state law *ultra vires* doctrine set forth in *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368–69 (Tex. 2009) and its progeny, that body of law does not apply to claims brought in federal court.  *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) ("A state's waiver of sovereign immunity in state court does not mean the state has waived [sovereign] immunity in federal court"); *United Steel v. Anderson*, No. 17-cv-1242, 2018 WL 3017366, at *9 n. 7 (W.D. Tex. June 15, 2018) ("Even if Plaintiffs were asserting *ultra vires* official-capacity claims as permitted by Texas law, the fact that a State permits certain claims in its own courts does not establish a waiver of immunity to suit in federal court.").

**C. The Court lacks jurisdiction to provide relief under 18 U.S.C. § 3599, 28 U.S.C. §§ 2254-55, or Article 11.071(a) of the Texas Code of Criminal Procedure.**

In addition to their Sixth Amendment access-to-counsel claim, Plaintiffs seek both equitable relief and damages for alleged violations of their statutory right to counsel under 18 U.S.C. § 3599, 28 U.S.C. §§ 2254-55, and Article 11.071(a) of the Texas Code of Criminal Procedure. Comp. at ¶¶ 131-142, 166-171. However, none of these cited statutes provide a private cause of action in federal court for Plaintiffs to challenge alleged restrictions on their access to counsel on Polunsky Death Row.

18 U.S.C. § 3599 states that indigent criminal defendants facing the death penalty are entitled to counsel, both before final judgment and in post-conviction proceedings. However, while Section 3599 "provides funding to indigent capital defendants for attorneys and related services," it "does not confer jurisdiction on the federal courts to compel state action." *Beatty v. Lumpkin*, No. 4:09-cv-225, 2022 WL 5417480, at *1 (E.D. Tex. Sept. 16, 2022), *aff'd*, 52 F.4th 632 (5th Cir. 2022); *see also Beatty*, 52 F.4th at 634 ("[Section 3599] is a funding law, not a law that grants federal courts authority to oversee the scope and nature of federally funded legal representation."). In this way, the Fifth Circuit has contrasted 18 U.S.C. § 3599 with 42 U.S.C. § 1983 and other statutes which "specifically grant causes of action that provide a federal court with jurisdiction to issue a remedy." *Id.* at 636. Because Section 3599 is merely a funding law, the Court must dismiss Plaintiffs' claims under that section for want of jurisdiction. *See id.*; *Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011) ("[18 U.S.C. § 3599] provides a federal court with no jurisdiction to issue any order beyond the authorization of funds.").

28 U.S.C. § 2254 confers jurisdiction on federal courts to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Similarly, 28 U.S.C. § 2255 provides inmates challenging the constitutionality of their sentence to "move the court which imposed the sentence to vacate, set aside, or correct the sentence." While both sections indicate that counsel may be appointed, neither guarantees a right to counsel, much less

provides a private cause of action for inmates challenging alleged restrictions on that right.   *See* 28 U.S.C. § 2254(h); 28 U.S.C. § 2255(g); *see also Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2011) (noting that "no constitutional right to habeas counsel in state collateral proceedings exists" under 28 U.S.C. § 2254).  The Court therefore lacks jurisdiction to provide Plaintiff relief under 28 U.S.C. §§ 2254-55.

Finally, Article 11.071(a) of the Texas Code of Criminal Procedure provides individuals who have been sentenced to death with a right to counsel in state habeas proceedings upon a showing of indigence.  Tex. Code Crim. P. 11.071(a).  That provision does not, however, create a private cause of action for alleged infringements of that right.  And to the extent Plaintiffs bring claims under Article 11.071(a) against Defendants in their official capacities, such claims are barred by the Eleventh Amendment because there has been no waiver of sovereign immunity.  *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) ("Under the Eleventh Amendment, federal courts cannot tell state officials 'how to conform their conduct to state law'—for one can hardly imagine 'a greater intrusion on state sovereignty.'") (quoting *Pennhurst*, 465 U.S. at 106).

### D.  Plaintiffs fail to state any constitutional claim.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a right secured by the Constitution and a violation of that right by one or more state actors.  *See Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994).  Plaintiffs fail to allege any such violation.

### 1.  Plaintiffs fail to state an Eighth Amendment conditions-of-confinement claim.[8]

It is well-settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth

---

[8] The arguments in this section apply equally to Plaintiffs' conditions-of-confinement claim under the Texas Constitution, which prohibits "cruel or unusual punishment."  Tex. Const. Art. 1 § 13; *see also Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997) (finding no significance in difference between Eighth Amendment's "cruel and unusual" phrasing and Texas Constitution's "cruel or unusual" phrasing); *Duran v. State*, 363 S.W.3d 719, 723 (Tex. App. Houston [1st Dist.] 2011) (holding that the same legal analysis applies to claims brought under the Eighth Amendment and Article 1 § 13 of the Texas Constitution).

Amendment.  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (quoting *Rhodes v. Chapman* 452 U.S. 337, 347 (1981)).  Prison conditions only constitute cruel and unusual punishment if they involve the "wanton and unnecessary infliction of pain" or if they are "grossly disproportionate to the severity of the crime warranting imprisonment."  *Rhodes*, 452 U.S. at 347.

A prisoner must satisfy a two-part test, consisting of an objective and a subjective component, to state an Eighth Amendment conditions-of-confinement claim.  *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).  First, under the objective component, a prisoner must allege the existence of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need."  *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).  The alleged conditions must be "extreme."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  While a prisoner "need not await a tragic event" before seeking relief, he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health."  *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993).  Prison conditions are not unconstitutional simply because they are restrictive; restrictive conditions "are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes*, 452 U.S. at 347.

Second, under the subjective component, a prisoner must establish "that the responsible prison officials acted with deliberate indifference to his conditions of confinement."  *Harper*, 174 F.3d at 720.  To satisfy this component, a prisoner must allege facts indicating that the prison official "(1) was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'; (2) subjectively 'drew the inference' that the risk existed; and (3) disregarded the risk."  *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Deliberate indifference is "an extremely high standard to meet."  *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001).  Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.  *See Hernandez ex rel. Hernandez v. Texas Dep't of Prot.*

*& Reg. Serv.*, 380 F.3d 872, 883 (5th Cir. 2004).  Moreover, because the concept of *respondeat superior* does not apply to claims brought under Section 1983, a plaintiff cannot successfully plead deliberate indifference without alleging personal involvement in the constitutional violation by each named defendant.  *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–93 (1978).

As explained below, Plaintiffs' allegations fail to satisfy either the objective or the subjective component of a viable Eighth Amendment conditions-of-confinement claim.

### a.   The alleged conditions are not sufficiently extreme.

The use of solitary confinement—even long-term solitary confinement—"is not per se cruel and unusual." *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021); *see also Hutto v. Finney*, 437 U.S. 678, 686 (1978) ("It is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual"); *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996) ("We hold that absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim."); *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005) (acknowledging that "[p]rolonged confinement in [solitary confinement] may be the State's only option for the control of some inmates").

Only where the solitary confinement conditions are "base, inhuman, and barbaric" do they satisfy the Eighth Amendment's objective component.  *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971) A "common thread" in actionable claims "is the deprivation of basic elements of hygiene."  *Id.*; *see, e.g.*, *Hope*, 861 F. App'x at 584 (indefinite solitary confinement in the presence of urine and feces was sufficiently serious to invoke Eighth Amendment concerns); *Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1987) (allegations that inmate's solitary confinement cell was "extremely cold" and that he "was forced to sleep on the floor where rats crawled over him" were sufficient to state Eighth Amendment claim).

Absent allegations of egregious deprivations of hygiene, Eighth Amendment challenges to prolonged solitary confinement will not succeed. *See, e.g.*, *Dillard v. Davis*, No. 19-CV-81, 2022 WL 3045747, at *24 (N.D. Tex. June 17, 2022) (determining that inmate's prolonged solitary confinement could not form the basis of a viable Eighth Amendment claim "absent egregious hygiene-related facts"), *rec. adopted*, 2022 WL 3042901 (N.D. Tex. Aug. 2, 2022).

Plaintiffs allege no extreme deprivations of basic hygiene. Rather, Plaintiffs' conditions-of-confinement claim rests entirely on the indefinite nature of their housing in solitary confinement, coupled with alleged exposure to mold and insects and restrictions on showers, food, recreation, mattresses, and interaction with inmates. Am. Compl. at ¶¶ 46, 53-54, 69-95, 107-118, 148-153.[9] Given that indefinite solitary confinement does not in and of itself violate the Eighth Amendment (*see Hope*, 861 F. App'x at 582), the Court need only consider whether the alleged conditions and restrictions accompanying that confinement violate the Constitution. They do not.

<u>Mold and insects</u>: This is not the first case in which inmates have complained about mold and insects in their living quarters. In *Bush v. Monroe*, for example, the plaintiff inmate alleged that he was forced to live in the presence of black mold, insects and vermin, among other elements of disrepair. 2018 WL 4648732, at *3. The Eastern District dismissed the inmate's Eighth Amendment claim, both because he failed to allege an injury and because his allegations of being housed "in a cell with black mold . . . and critters" did not present constitutional concerns. *Id.* Several other courts have reached the same conclusion. *See, e.g.*, *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower

---

[9] Plaintiffs' original complaint raised no concerns whatsoever about the cleanliness, condition, or contents of their cells. *See* ECF No. 1. Following Defendants' initial motion to dismiss, which argued that Plaintiffs' failure to include hygiene-related allegations precluded their Eighth Amendment claims (ECF No. 13), Plaintiffs suddenly expressed concerns about mold and insect infestations which have allegedly plagued Polunsky Death Row for several years. Am. Compl. at ¶¶ 42-45. However, as described herein, Plaintiffs mold- and insect-related allegations are insufficient to save their claims from dismissal.

areas" were found to "rise to no more than a de minimis level of imposition with which the Constitution is not concerned"); *Mims v. Rapides Parish Detention Center*, No. 1:20-cv-575, 2020 WL 3425253, at *2 (W.D. La. June 2, 2020) ("The mere fact that mold and fungus is present in a jail does not render an inmate's confinement unconstitutional."); *Armour v. Davis*, No. 6:18-cv-535, 2020 WL 2850140, at *14 (E.D. Tex. June 1, 2020) (noting that insects are a "fact of life" in rural East Texas and collecting cases holding that pest problems in cell blocks do not violate the Constitution).

This case is no different.  Like the inmate in *Bush*, Plaintiffs' allegations of mold and insect exposure "evince mere discomfort rather than the deprivation of basic human needs."  2018 WL 4648732, at *3.  Absent additional unsanitary conditions, mold and insect exposure alone are insufficient to state a claim.  *Compare id.* and *Armour*, 2020 WL 2850140, at *14, with *Hope*, 861 F. App'x at 584 (long term mold exposure—coupled with mold and feces on cell walls—rose to the level of an Eighth Amendment violation) and *Smith v. Leonard*, 244 F. App'x 583, 584 (5th Cir. 2007) (allegations that cells were ridden with "lead paint, mold, asbestos, and unsanitary food slots"— combined—were sufficient to state a claim).

Showers:  The Constitution does not require that inmates receive daily showers.  *See Hamilton v. Lyons,* 74 F.3d 99, 106 n.8 (5th Cir. 1996) (finding no constitutional harm in consistently denying inmates showers for three days); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("[L]imiting inmates to weekly showers does not violate the Eighth Amendment."); *Garrett v. Smith*, No. 20-1043, 2021 WL 1215871, at *8 (E.D. La. 2021) ("[T]he Constitution does not require daily, or even weekly showers."), *rec. adopted*, 2021 WL 1212535 (E.D. La. May 31, 2021).  Furthermore, "a need for showering can be greatly reduced or eliminated when an inmate can clean himself by using the sink in his cell."  *Payne v. Almanza*, No. 1:18-cv-175, 2019 WL 1932760, at *7 (N.D. Tex. May 1, 2019).

Plaintiffs allege that inmates on Polunsky Death Row are "regularly limited to just three showers per week and, in some weeks, are not given an opportunity to shower at all."  Am. Compl. at

¶ 47.   However, since weekly showers are constitutionally sufficient, and Plaintiffs admit that their cells contain operational sinks (*id.* at ¶ 40), these allegations fail to state a viable claim.  *See Jaros*, 84 F.3d at 671; *Payne*, 2019 WL 1932760, at *7; *Howard v. Guterrez*, No. C-11-125, 2011 WL 2223768, at *6 (S.D. Tex. June 7, 2011) ("Plaintiff's allegations specifically concerning the sporadic denial of showers do not amount to a denial of life's basic necessities, and these claims are dismissed.").[10]

Mattresses:  Ward alleges that he was "denied a mattress for a two week period" while in F Pod.  Am. Compl. at ¶ 54.  However, courts have made clear that such temporary mattress deprivations do not rise to the level of a constitutional violation.  *See Novak*, 453 F.2d at 665-66, 669, 671 (finding no Eighth Amendment violation where the inmates in solitary confinement were not provided mattresses or pillows for up to 15 days); *Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (affirming dismissal of Eighth Amendment claim premised on denial of "mattress, sheets, and blankets for 60 days"); *Bell v. Hinojosa*, No. 2:22-cv-140, 2022 WL 19001974, at *7-8 (S.D. Tex. July 21, 2022) (allegations that inmate was "housed in a cell with no mattress, pillow, or blanket . . . for a period of approximately two weeks" were insufficient to state Eighth Amendment claim), *rec. adopted as mod.*, 2023 WL 2072412 (S.D. Tex. Feb. 16, 2023).[11]

Recreation:  The Fifth Circuit has never held that inmates enjoy an absolute right to out-of-cell recreation or exercise.  *See Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir. 1986) (setting aside lower court's judgment requiring jail to provide either outdoor exercise or an indoor exercise facility); *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982) ("[T]he deprivation of exercise is not per se cruel and

---

[10] The only Plaintiff claiming that he ever went longer than a week without a shower is Ward, who allegedly "regularly went two or three weeks without a shower" while on F Pod between November 2022 and February 2023.  Am. Compl. at ¶ 54.  However, as described below, his claims related to restrictions on F Pod cannot survive because he does not allege any personal involvement by Defendants.  *See* Section V.D.1.B, *infra.*

[11] Cummings alleges that he was forced to sleep in a "bloody cell without a mattress" for an unspecified period beginning in August 2019.  Am. Compl. at ¶ 46.  Absent allegations that he remained in that cell for more 17 months, his claims related to that incident are barred by the two-year statute of limitations.  *See* n. 4, *supra.*

unusual punishment."). While a deprivation of exercise opportunities might impinge upon an inmate's Eighth Amendment rights in certain extreme circumstances, *Green*, 801 F.2d at 771-72, allegations that an inmate was denied out-of-cell exercise for a few consecutive weeks are insufficient to state a claim. *See Umondak v. Ginsel*, 426 F. App'x 267, 269 (5th Cir. 2011) (allegation that inmate was denied out-of-cell exercise for 25 days could not support Eighth Amendment claim); *Peterson v. Peshoff*, No. 99-31120, 216 F.3d 1079, 2000 WL 729077, at *2 (5th Cir. May 9, 2000) (Eighth Amendment claim based on deprivation of outdoor exercise for 47 days was "frivolous"); *Urias v. Hudson*, No. 5:09-cv-130, 2010 WL 3257967, at *8 (E.D. Tex. July 16, 2010) (denial of out-of-cell exercise for four weeks did not violate Eighth Amendment), *aff'd*, 429 F. App'x 438 (5th Cir. 2011).

Plaintiffs allege that they "regularly go several days or weeks without recreation," including during quarterly lockdowns, when they are "denied recreation for approximately ten to fourteen days." Am. Compl. at ¶ 48. However, other than alleging that Robertson was denied recreation for 16 days earlier this year (*id.*), Plaintiffs do not specify the maximum length of time any of them has gone without recreation, and nowhere suggest that it was longer than three weeks. Absent allegations that Plaintiffs have been denied recreation for several consecutive *months*, and that they suffered serious injuries as a direct result, they cannot establish the "substantial risk of serious harm" required for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 837; *Umondak*, 426 F. App'x at 269; *see also Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (evidence that plaintiff suffered from muscle atrophy, stiffness, loss of range of motion, and depression as a result of lack of out-of-cell exercise for 13 months was insufficient to sustain an Eighth Amendment claim because there was "nonetheless no indication these conditions posed a substantial risk of serious harm").

Food:   "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Whether the deprivation of food falls

below this threshold depends on the amount and duration of the deprivation." *Id.*; *see also Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir.1986) (holding that the state is not required to furnish prisoners with three meals a day); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir.1999) (finding denial of eight meals over seven month period did not state a claim); *Novak*, 453 F.2d at 665 (holding that solitary confinement with "minimal food" did not rise to the level of an Eighth Amendment violation).

Plaintiffs allege generally that "TDCJ guards . . . sometimes deny multiple meals in a row to individual prisoners" on Polunsky Death Row.   Am. Compl. at ¶ 51.   However, absent specific allegations about the volume of food they are served or its nutritional content, their conclusory assertion of insufficient nutrition is insufficient to state a claim.   *See, e.g., Fields v. Davis*, No. 818746, 2022 WL 818746, at *7 (E.D. Tex. Feb. 24, 2022) ("Plaintiff's wholly conclusory allegation of inadequate nutrition is not enough to state a claim under Section 1983"), *rec. adopted*, 2022 WL 811053 (E.D. Tex. Mar. 16, 2022).[12]   Moreover, Plaintiffs cannot state a claim solely on the basis that they are occasionally served "food loaf."   *See Alex v. Stalder*, 225 F. App'x. 313, 313 (5th Cir. 2007).

Inmate interaction:  Plaintiffs allege that that Defendants' policy of housing all Polunsky Death Row inmates in restrictive housing "depriv[es] them of any meaningful human interaction."  Am. Compl. at ¶ 2.  However, they admit that their voices can be "easily overheard" by others on the row (*id.* at ¶ 11), implying that they are able to speak with at least the inmates in adjacent cells.  Absent factual allegations indicating that Plaintiffs have *zero* ability to communicate, they cannot rely on blanket assertions of isolation to state a claim.  *See Striz*, 2020 WL 7868102, at *14 (allegation that inmate "has been deprived of human contact and social interaction" for over 19 years—unsupported by facts—did not support Eighth Amendment claim); *cf. Porter v. Clarke*, 923 F.3d 348, 353 (4th Cir.

---

[12] Ward alleges that, while housed in F Pod between November 2022 and February 1, 2023, "he lost 20-25 pounds due to TDCJ guards denying him food."  However, those guards are not named parties, and Ward cannot impute their alleged actions on Defendants.  *See* Section V.D.1.B, *infra*.

2019) (holding that purposefully housing inmates in solitary confinement far away from each other, with nobody in adjacent cells to talk to, raised Eighth Amendment concerns).

*     *     *     *     *

While their alleged conditions of confinement may be unpleasant and restrictive, Plaintiffs fail to describe conditions which are objectively so extreme as to deprive them of a basic human need. Plaintiffs' insistence that Defendants are violating TDCJ's own policy by imposing certain conditions (Am. Compl. at ¶¶ 10, 47, 87) does not alter this conclusion. *See Williams v. Banks*, 956 F.3d 808, 812 (5th Cir. 2020) ("[A] prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of [the Eighth Amendment], if constitutional minima are nevertheless met.") (quoting *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

### b. Plaintiffs do not adequately plead deliberate indifference.

Plaintiffs also fail to meet the subjective component of their conditions-of-confinement claim. To adequately plead deliberate indifference, a plaintiff must allege facts indicating that each defendant "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Conclusory allegations of conscious disregard are insufficient, and courts will not hesitate to dismiss deliberate indifference claims unsupported by specific facts. *See, e.g., Blank v. Eavenson*, 530 F. App'x 364, 369 (5th Cir. 2013).

Plaintiffs allege that Defendants "authorize or condone" the conditions of confinement on Polunsky Death Row. Am. Compl. at ¶¶ 32-34, 62. However, this conclusory statement does not establish that Defendants acted with deliberate indifference to the individualized effects of any specific condition. *See, e.g., Green v. Harris Cnty., Tex.*, No. H-16-893, 2019 WL 338243, at *7 (S.D. Tex. Jan. 28, 2019) (allegations that defendant "condoned" and was "ultimately responsible" for jail's policies were insufficient to show deliberate indifference to the allegedly unconstitutional effects of those policies). Plaintiffs further allege that they have made Defendants aware their conditions by

23

submitting grievances and sending letters (Am. Compl. at ¶ 56), but mere receipt of grievances and letters does not mean that Defendants subjectively drew the inference of a substantial risk. *See Ray v. Livingson*, No. 5:15-cv-141, 2016 WL 3187108, at *1 (E.D. Tex. June 8, 2016) ("Plaintiff argues [the prison warden] is personally involved because by signing off on his grievances, she was made aware of all of the situations, but showed deliberate indifference through her failure to act. This objection lacks merit because Plaintiff does not have a constitutionally protected liberty interest in having grievances resolved to his satisfaction.") (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th. Cir. 2005)).

Throughout their amended complaint, Plaintiffs attempt to satisfy the deliberate indifference requirement by imputing the alleged actions and mental states of non-party TDCJ staff on Defendants. *See*, *e.g.*, Am. Compl. at ¶¶ 45-46, 51, 53-55, 57-60, 65, 67, 72, 78, 84-85, 125. For example, when describing Ward's recent conditions in F Pod, Plaintiffs list a number of alleged actions taken by individual F Pod officers and then summarily conclude that Defendants "allow TDCJ guards on F Pod. . . to physically and mentally abuse death-sentenced prisoners with impunity." *Id.* at ¶ 53. This attempt at imputation must fail, however, since civil rights plaintiffs must demonstrate not only a constitutional violation, but also personal involvement on behalf of each named defendant. *See Thompson*, 709 F.2d at 382; *Monnell*, 436 U.S. at 691; *Williams*, 909 F.2d at 123; *see also Iqbal*, 556 U.S. at 677 ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

## 2.  Plaintiffs fail to state an Eighth Amendment medical claim.

In addition to governing prisoners' conditions of confinement, the Eighth Amendment "forbids deliberate indifference to the serious medical needs of prisoners." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). However, this protection "does not . . . translate into a free-standing right to have access to the medical program or to medical care." *Jackson v. Boland*, No. 2:12-CV-0212, 2014 WL 947567, at *13 (N.D. Tex. Mar. 11, 2014). To state a viable claim, "a plaintiff must allege a

deprivation of medical care sufficiently serious to show that the state has abdicated a constitutionally-required responsibility to attend to his medical needs, and that a prison official knew of and disregarded an excessive risk to inmate health or safety." *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (internal quotations omitted).  Allegations of medical malpractice, unsuccessful treatment, or neglect will not suffice.  *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Here, Plaintiffs allege generally that "Defendants have a policy and practice of not providing death-sentenced prisoners with timely medical responses and treatment, and they do not have an adequate system for responding to healthcare emergencies." Am. Compl. at ¶ 58.  However, they do not allege that any of the Defendants—all high level TDCJ officials—were personally involved in their healthcare decisions, which is required to show deliberate indifference.  *See Williams v. Parker*, No. 5:19-cv-100, 2021 WL 3413081, at *7 (E.D. Tex. July 12, 2021) (dismissing Eighth Amendment claim where plaintiff had "offered nothing to suggest that the warden, who is not a nurse or a medical provider, had any personal involvement in the medical care which Plaintiff did or did not receive."), *rec. adopted*, 2021 WL 3404014 (E.D. Tex. Aug. 4, 2021).  As with their conditions-of-confinement claim, Plaintiffs cannot hold Defendants liable for the medical treatment (or lack thereof) provided by prison staff on a theory of supervisory liability, or on the basis that Defendants failed to respond favorably to their grievances.  *See Monell*, 436 U.S. at 691-93; *Geiger*, 404 F.3d at 373-74; *Jones v. Livingston*, No. C-05-520, 2005 WL 3618316, at * 3 (S.D. Tex. Jan.6, 2005) (dismissing medical care claim against supervisory official because "the fact that he did not respond to, or denied, plaintiff's grievances does not, alone, state a claim.").[13]

---

[13] Medical care for inmates at the Polunsky Unit is provided by the University of Texas Medical Branch ("UTMB"), a separate government agency which contracts with TDCJ.  *See* Tex. Gov't Code §§ 501.051 *et seq.*; *Johnson v. Doe*, No. H-12-2728, 2013 WL 3816727, at *11 (S.D. Tex. July 22, 2013) ("Health care workers at the TDCJ units are employees of UTMB and are not employees of TDCJ . . . .  Consequently, the TDCJ administration is not responsible for the daily medical operations.") (citations omitted).  Because neither UTMB nor any of its employees are parties to this action, Plaintiffs' claims against Defendants premised on the actions or inactions of medical staff (all UTMB employees) must be dismissed for lack of personal involvement.

Moreover, setting aside Defendants' lack of personal involvement, many of Plaintiffs' complaints about their medical care amount to nothing more than disagreement with treatment decisions. *See, e.g.,* Am. Compl. at ¶ 60 (Ward disagreed with the decision to increase his blood pressure medication rather than providing medical boot); ¶ 64 (Ford disagreed with the decision to discontinue one-on-one mental health counseling); *id.* (Ward disagreed with his doctor's diagnosis and the decision to increase medication dosage). Such "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (collecting cases). Similarly, Plaintiffs' allegations that TDCJ staff failed to make their scheduled rounds or respond to sick call requests (Am. Compl. at ¶ 60) sound in negligence and are insufficient to show deliberate indifference. *See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013).

Finally, to the extent Plaintiffs rest their Eighth Amendment claim on the lack of privacy they receive during medical visits (Am. Compl. at ¶¶ 25, 66), courts have made clear that limitations on inmates' medical privacy are constitutionally permissible. *See, e.g., Covarrubias v. Foxworth*, No. 6:13-cv-812, 2016 WL 4836864, at *3 (E.D. Tex. Sept. 14, 2016) (dismissing claim premised on presence of guards during medical appointments and noting that "prisoners do not have a constitutional right to the confidentiality of their medical records"); *Barnes v. Brownlow*, No. 6:08-cv-194, 2008 WL 2704868, at * 4 (E.D. Tex. July 7, 2008) (finding no constitutional violation where nurse made inmate announce his medical problem in front of other prisoners); *Patin v. LeBlanc*, No. 11-3071, 2012 WL 3109402, at *21 (E.D. La. May 18, 2012) (dismissing inmate's privacy-related challenge to prison policy of requiring open doors during mental health sessions), *rec. adopted*, 2012 WL 3109398 (E.D. La. July 31, 2012).

### 3.   Plaintiffs fail to state a Fourteenth Amendment due process claim.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property

interest and (2) demonstrate deprivation of that interest without due process of law.  *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976).  Plaintiffs fail to meet either of these requirements.

### a.   Plaintiffs have no liberty interest in avoiding their current housing.

The Supreme Court has long recognized that a prisoner may have a liberty interest in avoiding certain conditions of confinement.  *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974).  But the Court has been equally clear that if no state statute, regulation, or policy creates such a liberty interest, a prisoner cannot "invoke the procedural protections of the Due Process Clause."  *Meachum*, 427 U.S. at 224.  In an effort to reduce "[p]arsing" of state statutes and regulations to find rights by "negative implication," the Supreme Court added a second requirement for establishing a liberty interest warranting due process: the denial of such an interest must impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 482-84 (1995).  Before reaching the "atypical and significant hardship" inquiry, however, courts must first still address the "threshold question" of whether a liberty interest "arise[s] from state policies or regulations."  *Wilkinson*, 545 U.S. at 221-22.

When the *Wilkinson* Court applied this two-prong analysis, the parties agreed that Ohio prison classification regulations gave administrators discretion over where to house the plaintiff inmates.  *Id.* at 215–17, 221.  The *Wilkinson* Court thus focused on the second prong: whether the restrictive conditions at the supermax prison constituted an "atypical and significant hardship" compared to other prisons where the plaintiff inmates could have been housed.  *Id.* at 223-24.  Similarly, in *Wilkerson v. Goodwin*, because the inmate's placement in solitary confinement was not preordained by law or official policy, the Fifth Circuit delved directly into the comparative nature of the deprivation in determining whether a liberty interest existed.  774 F.3d 845, 851-57 (5th Cir. 2014).

Importantly, *Sandin*, *Wilkinson*, and *Wilkerson* did not establish a new regime in which atypical and harsh confinement conditions, in and of themselves, give rise to a protected liberty interest,

regardless of whether any state law or policy creates the possibility of avoiding such conditions. Instead, it is only where inmates have a standalone interest in avoiding erroneous placement under the state's classification regulations, *combined* with harsh and atypical conditions, that due process is required. *See Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015) ("After finding a basis for an interest or expectation in state regulations, an inmate must then demonstrate that denial of this state-created interest resulted in an 'atypical and significant hardship' to him.") (quoting *Sandlin*, 515 U.S. at 484).[14]

Here, Plaintiffs cannot establish a basis for protection under the Due Process Clause.  To do so, they would need to point to a Texas regulation or policy providing them with an expectation of avoiding their conditions of confinement *and* demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life. *See id.* at 252.  Plaintiffs do neither.

First, Plaintiffs have no expectation in avoiding confinement in their current conditions.  As they admit, official TDCJ policy *requires* that all male capital offenders be housed on Polunsky Death Row.  Am. Compl. at ¶ 8 ("Defendants, of their own accord, impose a blanket practice of holding all male death row prisoners in solitary confinement [on Polunsky Death Row] for the duration of their incarceration.").  This state policy forecloses any due process expectation or right on the part of Plaintiffs to any other housing assignment, and is therefore dispositive of their claim. *See Prieto*, 780 F.3d at 252 ("A court cannot conclude that death row inmates have a state-created interest in consideration for non-solitary confinement when the State's established written policy expressly precludes such consideration.").

---

[14] In addition to misreading governing law, removing the requirement of a state-created liberty interest would collapse Plaintiffs' due process claim into an Eighth Amendment claim.  The Eighth Amendment "appl[ies] when the conditions of confinement compose the punishment at issue." *Rhodes*, 452 U.S. at 347.  Allegations that prison conditions "involve the wanton and unnecessary infliction of pain," or are "without any penological purpose" fall squarely within the ambit of the Eighth Amendment—not the Due Process Clause. *Id.*  As the Fourth Circuit has observed, "[t]reating *Sandin* and *Wilkinson* as holding that confinement conditions alone trigger a Due Process claim—without regard to whether a state policy or regulation provides the basis to challenge such conditions—would elide that critical distinction." *Prieto*, 780 F.3d at 251.

Plaintiffs also fail to allege that their conditions of confinement impose an atypical and significant hardship in relation to the ordinary incidents of prison life. While the Supreme Court has not identified the proper baseline for this inquiry, it has previously emphasized the importance of the sentence of conviction in determining the existence of a liberty interest. *See Meachum*, 427 U.S. at 225 (rejecting the contention that "burdensome conditions" imposed by transfer to a maximum-security facility provided the basis for a due process claim because those conditions fell "within the normal limits or range of custody which the conviction has authorized the State to impose."); *Sandin*, 515 U.S. at 485 (finding significant, in rejecting a prisoner's due process claim, that the challenged conditions fell "within the expected perimeters of the sentence imposed"). As the Court explained in *Sandin* and repeated in *Wilkinson*, a prisoner does not establish a state-created liberty interest in avoiding disciplinary segregated confinement if such confinement "does not present a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence." *Id.*; *Wilkinson*, 545 U.S. at 223.

The Supreme Court in *Wilkinson* and the Fifth Circuit in *Wilkerson* held that the plaintiff inmates had established atypical and significant hardship compared with "any plausible" or "any possible" baseline. *Wilkinson*, 545 U.S. at 210; *Wilkerson*, 774 F.3d at 855. Those cases are distinguishable, however, because neither involved a discrete class of inmates who had been sentenced to death and *for that reason* were required by state policy to be confined under particular conditions. In *Prieto*, by contrast, the Fourth Circuit was presented with that precise scenario and held as follows:

> [I]n the unusual instances in which state law mandates the confinement conditions to be imposed on offenders convicted of a certain crime and receiving a certain sentence, those confinement conditions are, by definition, the "ordinary incidents of prison life" for such offenders. Virginia law mandates that all persons convicted of capital crimes are, upon receipt of a death sentence, automatically confined to death row. Thus, in Virginia the ordinary incidents of prison life for those inmates, including [plaintiff], include housing on death row. . . . [Plaintiff], like any other inmate, can only be deprived of that to which he is entitled. Thus, in determining whether a deprivation imposes a significant or atypical hardship on him, the court must use as its benchmark the incidents of prison life to which he is entitled. Virginia imposes death row confinement on capital offenders because of the crime they have committed and the sentence they have received. That confinement is the expected—indeed mandated—

29

> confinement condition flowing from the conviction and sentence. State law defines the perimeters of confinement conditions, and here state law is pellucid: tethered to the death sentence in Virginia is pre–execution confinement on death row.

780 F.3d at 254. Because this case presents nearly identical facts to those in *Prieto*, the Court should similarly find that Plaintiffs' conditions of confinement—"flowing from [their] conviction and sentence" (*id.*)—do not create a liberty interest giving rise to due process protections.[15]

### b. Even if Plaintiffs had a liberty interest in avoiding their current housing, they were provided with adequate process during sentencing.

The Due Process Clause's procedural component is "flexible," and its requirements depend on what "the particular situation demands." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Here, Plaintiffs are housed on Polunsky Death Row based entirely on their death sentences, not as the result of any classification hearing or review. Am. Compl. at ¶¶ 2, 8, 13, 88. Therefore, the appropriate inquiry is whether the process they received during sentencing was sufficient to warrant their current housing assignments.

Texas law mandates bifurcated proceedings in capital cases. Tex. Code Crim. Proc. art. 37.071 § 2(a). The "guilt/innocence phase" is the typical trial in which the jury determines whether the evidence establishes beyond a reasonable doubt the defendant's guilt of the capital crime. *Id.* If the defendant is found guilty, the same jury is reconvened for a separate "sentencing phase," during which both sides may present evidence regarding "any matter that the court deems relevant to [the defendant's] sentence, including evidence of the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty." *Id.* The jury

---

[15] Although the Fifth Circuit has not yet considered the unique question presented in *Prieto*, there is strong evidence that it would adopt the same holding if given the opportunity. The reasoning in *Prieto* is strikingly similar to the Fifth Circuit's reasoning in sex offender due process cases in which "registration requirements 'turn on an offender's conviction alone—a fact that a convicted offender already had a procedurally safeguarded opportunity to contest." *Does 1-7 v. Abbott*, 945 F.3d 307, 312 (5th Cir. 2019) (quoting *Conn. Dep't of Pub. Safety v. Doe*, 438 U.S. 1, 7-8 (2003)). In both cases, the conditions flow directly from the conviction, and, in both cases, persons so convicted "are owed no additional process." *Compare id.* at 312, *with Prieto*, 780 F.3d at 254.

is then presented with "special issues" to determine if the death penalty is warranted.  First, the jury is asked to determine "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Id.* at § 2(b)(1).  The state bears the burden of proving this "future dangerousness" issue beyond a reasonable doubt. *Id.* at § 2(c).  If the jury unanimously answers "yes," it must then answer the following "mitigation" issue: "[w]hether, taking into consideration all of the evidence . . . there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed." *Id.* at § 2(e)(1).  If the jury unanimously answers "no" to that mitigation question, then the defendant is sentenced to death. *Id.* at § 2(g).[16]

The Supreme Court has repeatedly upheld Texas's capital sentencing scheme—and in particular its "future dangerousness" special question—against due process challenges. *See, e.g., Jurek v. Texas*, 428 U.S. 262, 273 (1976); *Franklin v. Lynaugh*, 487 U.S. 164, 177–80 (1988); *Johnson v. Texas*, 509 U.S. 350, 368–69 (1993).  Surely, if the process provided by that scheme is sufficient to support a death sentence, it is sufficient to support TDCJ's decision to place an inmate on Polunsky Death Row. *Cf. Does 1-7*, 945 F.3d at 312 (holding that persons convicted of sex offenses are owed no additional process when their obligation to register as sex offenders turns on their conviction alone); *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010) (same).

Plaintiffs nevertheless demand additional process in the form of individualized classification reviews.  Courts will consider three factors in determining whether sufficient process has been afforded: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3), "the Government's interest, including the

---

[16] While the "future dangerousness" special issue has been part of Texas's capital sentencing scheme in its current form since 1973, the mitigation issue was amended in 2005 to reflect the State's removal of the possibility of parole for capital offenders.  *See* Tex. Penal Code § 12.31(a).

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  All three factors weigh in Defendants' favor.

First, as discussed above, Plaintiffs have no interest in avoiding their current housing because *all* male capital offenders are automatically housed on Polunsky Death Row, and they do not face an "atypical or significant hardship" vis-à-vis other male death row inmates.  *See* Section V.D.3.a, *supra*. Moreover, even if Plaintiffs did have such an interest, it must be evaluated "within the context of the prison system and its attendant curtailment of liberties."  *Wilkinson*, 545 U.S. at 225.

Second, there is no risk of erroneous deprivation by denying Plaintiffs of individualized classification reviews.  The purpose of such reviews would be to assess whether Plaintiffs pose a continuing threat of violence in the prison environment—something their sentencing juries have *already* determined to be the case beyond a reasonable doubt.  *See* Tex. Code Crim. Proc. art. 37.071 § 2(c); *Speer v. Lumpkin*, 860 F. App'x 66, 70 (5th Cir. 2021) ("[T]he question of future dangerousness often focuses on the likelihood the defendant will be violent in prison.").  Plaintiffs would not benefit from relitigating that issue now, especially given the comparatively limited procedural safeguards required in prison classification decisions.[17]

Third, requiring TDCJ to conduct individualized classification reviews would be contrary to the State's interest, which is the "dominant consideration" in determining whether additional process is required.  *Id.* at 227.   For one thing, any classification reviews would necessarily entail reassessing the "future dangerousness" finding of Plaintiffs' criminal juries, something prison officials would be loath to do given that findings by a jury are "sacrosanct."  *See Manget Bros., Inc. v. Bank of Greenwood, Miss.*, 381 F.2d 91, 96 (5th Cir. 1967).  Moreover, reviewing each of Plaintiffs' entire files would require

---

[17] Whereas Plaintiffs had the right to counsel during sentencing and could present any evidence which might weigh against a finding of future dangerousness, *see* Tex. Code Crim. P. art. 37.071(a)(1), Plaintiffs would have no right to counsel during classification reviews, and TDCJ could constitutionally place limits on the type and quantity of evidence permitted.  *See Wilkinson*, 545 U.S. at 228-29 (holding that "informal, nonadversary procedures" were sufficient before placing non-death row inmates in prolonged solitary confinement).

additional time and money from an agency already lacking in resources.  *See Wilkinson*, 545 U.S. at 228

("The problem of scarce resources is another component of the State's interest.").

*   *   *   *   *

In sum, Plaintiffs do not have a state-created liberty interest in avoiding their current housing,

and their conditions do not impose an atypical hardship compared to other death row inmates.  Plus,

even if they had a liberty interest in avoiding their current housing, their criminal sentencing provided

ample process prior to the finding of "future dangerousness" which led to both their death sentences

and placement on Polunsky Death Row.  Finally, TDCJ need not conduct individualized classification

reviews because doing so would not add any probable value and would go against the State's interest.

### 4.   Plaintiffs fail to state a Sixth Amendment access-to-counsel claim.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy

the right . . .  to have the assistance of counsel for his defense."  U.S. Const. amend. VI. "Since the

right to effective counsel under the Sixth Amendment extends only to criminal matters, it is applicable

solely to pre-trial detainees or to a convicted prisoner being tried on additional charges or contesting

the legality of a previous conviction."  *Taylor v. Sterrett*, 532 F.2d 462, 472 (5th Cir. 1976) (citations

omitted).  And, even then, it "extends to the first appeal of right, and no further."  *Pa. v. Finley*, 481

U.S. 551, 555 (1987); *see also In re Sepulvado*, 707 F.3d 550, 554 (5th Cir. 2013) ("[T]he Sixth Amendment

does not apply in habeas proceedings.") (internal quotation omitted); *Sanchez v. U.S. Postal Serv.*, 785

F.2d 1236, 1237 (5th Cir. 1986) ("[T]he sixth amendment . . .  does not apply to civil proceedings.").

Here, Plaintiffs claim that Defendants have impeded their Sixth Amendment right to counsel

by, *inter alia*, placing limitations on in-person, telephone, and mail communications with their lawyers.

Am. Compl. at ¶¶ 67-79.  However, except for Ward, Plaintiffs have long since exhausted their direct

appeals of the convictions for which they were sentenced to death.  *See Robertson v. State*, 871 S.W.2d

701 (Tex. Crim. App. 1993); *Curry v. State*, No. AP-77033, 2017 WL 781740 (Tex. Crim. App. Mar. 1,

33

2017); *Ford v. State*, 919 S.W.2d 107 (Tex. Crim. App. 1996); *Cummings v. State*, No. AP-76923, 2014 WL 12713256 (Tex. Crim. App. 2014).   Thus, unless those Plaintiffs have been charged with or convicted of subsequent offenses (which is not alleged), any attorney contact they wish to have could only be related to habeas petitions or civil actions as to which they have no Sixth Amendment protections.   On this basis alone, dismissal of Robertson, Curry, Ford, and Cummings' Sixth Amendment claims is appropriate.   *See Whitaker*, 862 F.3d at 501 (affirming dismissal of access-to-counsel claim because inmates had exhausted their direct appeals and Sixth Amendment rights no longer applied); *Bell v. Avila*, No. 4:11-CV-4238, 2013 WL 11730661, at *3 (S.D. Tex. June 25, 2013) (dismissing Sixth Amendment claim predicated on access to civil counsel).[18]

Moreover, all of the Plaintiffs fail to state a Sixth Amendment claim for the same reason they lack standing to assert that claim: they do not allege any actual legal prejudice to contemplated or existing litigation.   *See* Section V.A.1, *supra*.   "It is well-settled that, in order to state a claim of the violation of the Sixth Amendment right of access to the courts, an inmate must allege that he has suffered some cognizable legal prejudice as a result of the alleged wrongful conduct." *Hennington*, 2022 WL 18276844, at *6; *see also Roberts v. Fuentes*, No. 21-40036, 2022 WL 1548667, at *2 (5th Cir. May 16, 2022) ("To show that his Sixth Amendment right of access to the courts was violated, [plaintiff] must show an actual injury—that his efforts to pursue a nonfrivolous legal claim were hindered."). Plaintiffs' failure to allege prejudice is grounds for dismissal under Rule 12(b)(6).   *See, e.g., Christensen v. Scott*, 95 F.2d 46, 1996 WL 405492, at *1 (5th Cir. 1996) (affirming dismissal of access-to-counsel claim as "frivolous" where inmate "failed to allege the element of legal prejudice"); *Truelove*, 2021 WL

---

[18] To the extent Plaintiffs assert Sixth Amendment claims premised on restrictions on access to counsel *before* they had exhausted their direct appeals, any such claims are now time-barred.   *See* n. 4, *supra*.

5933123, at *4 ("[Plaintiff] neither demonstrated actual injury nor a constitutional right to in-person visitation with counsel, and, therefore, failed to state a claim upon which relief may be granted.").[19]

Finally, even setting those issues aside, the types of restrictions allegedly imposed on Plaintiffs do not constitute constitutional violations. The Supreme Court "has afforded considerable deference to the determinations of prison administrators [to] regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989). Although a complete ban on attorney contact violates the constitution, even severe regulations on the frequency of that contact do not. *See*, *e.g.*, *Bell*, 2013 WL 11730661, at *2-3 (dismissing inmate's challenge to policy barring phone access to attorneys when no deadline was imminent). In addition, Defendants have no constitutional obligation to take additional measures to ensure the privacy of attorney communications, since "the attorney-client privilege cannot be asserted as a basis for recovery under § 1983." *Bradt v. Smith*, 634 F.2d 796, 800 (5th Cir. 1981); *see also Buffington v. Valdez*, No. 3:07-cv-260, 2007 WL 2719885, at *5 (N.D. Tex. Sept. 28, 2007) (holding that inmates did not have a constitutional right to soundproof, confidential inmate-attorney booths). Nor must Defendants allow contact visits, much less unshackled contact visits. *See Block v. Rutherford*, 468 U.S. 576, 586 (1984) (upholding ban on all contact visits); *Beatty v. Collier*, No. 4:22-cv-3658, 2022 WL 16722364, at *8 (S.D. Tex. Nov. 4, 2022) ("Requiring handcuffs during a contact visit is, quite simply, a rational security concern."). Thus, none of the alleged restrictions on attorney access on Polunsky Death Row violate the constitution.

### 5. Plaintiffs fail to state a First Amendment retaliation claim.

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387

---

[19] Plaintiffs explicitly frame their access-to-counsel claim as arising under the Sixth Amendment (as applied to the states by the Fourteenth Amendment). Am. Compl. at ¶¶ 131-142, 166-171. However, even if the Court were to interpret Plaintiffs' amended complaint as asserting an access-to-courts claim under the First Amendment, that claim would similarly be precluded by Plaintiffs' failure to allege actual prejudice. *See DeMarco v. Davis*, 914 F.3d 383, 387-88 (5th Cir. 2019).

(5th Cir. 2010).  To state a First Amendment retaliation claim, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (internal quotations omitted).  The adverse action must be more than *de minimis*, rising to a level "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).  To show causation, a plaintiff must allege that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).  A plaintiff must either "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

Plaintiffs allege that, after filing their original complaint on January 26, 2023, Defendants "restrict[ed] the number and length of attorney [visits]" on the Polunsky Unit and "applied new rules restricting the hours that attorneys can meet with the clients, and limiting the ability for attorneys from the same firm to meet with each other's clients." Am. Compl. at ¶ 81.  However, the implementation of unit-wide policies is far too generalized to constitute an "adverse act" for purposes of Plaintiffs' retaliation claims.  *See Smith v. Herbert*, 533 F. App'x 479, 483 (5th Cir. 2013) (affirming dismissal of inmate's retaliation claim where he "did not allege that [defendants] had committed any specific retaliatory adverse acts against him.").  Only Cummings alleges to have been personally impacted by the new policies, and that impact—being unable to meet with his habeas attorney on a specific date— was *de miminis* under clearly established law.  *See* Am. Compl. at ¶ 82; *Morris v. Powell*, 449 F.3d 682, 685-86 (5th Cir. 2006) (holding that adverse acts which cause an inmate "discomfort for a few days," impose "a [single] minor sanction," or impose otherwise constitutional restrictions on the inmate are de minimis and insufficient to support a retaliation claim).

Plaintiffs' remaining examples of alleged retaliation are similarly insufficient to state a claim. Cummings alleges that Defendant Anthony attempted to intimidate his habeas attorney by referencing

this lawsuit and telling him to "be careful what you ask for."  Am. Compl. at ¶ 82.  But courts have made clear that "[a]s a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to [a] constitutional violation."'  *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (internal quotation omitted); *see also Lumsden v. Davis*, 525 F. Supp. 3d 782, 792 (W.D. Tex. 2021) (dismissing retaliation claim premised on "threatening language and verbal harassment"), *aff'd*, 2022 WL 989390 (5th Cir. Apr. 1, 2022).  Similarly, even taking as true Ward's allegation that eleven TDCJ guards observed his call with Plaintiffs' counsel in a threatening fashion (Am. Compl. at ¶ 84), the mere presence of those guards is not an actionable adverse act.  *See id.*; *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010) ("[Plaintiff] has not stated a retaliation claim because he has alleged only a threat, but no retaliatory adverse act.") (citing *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir.1999)).[20]

### E. The PLRA's physical injury requirement bars Plaintiffs from recovering compensatory damages for retaliation, F Pod conditions, mold and insect exposure, or access to counsel, showers, food, mattresses, and recreation.

The PLRA precludes an action for compensatory damages stemming from a prisoner's conditions of confinement "without a prior showing of physical injury."  42 U.S.C. § 1997e(e).   In order to seek mental or emotional damages, the prisoner must also allege a physical injury that is "more than de minimis."  *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  This requirement "applies to *all federal civil actions* in which a prisoner alleges a constitutional violation."  *Hutchins v. McDaniels*, 512 F.3d 193, 196 (5th Cir. 2007) (emphasis in original) (quoting *Geiger*, 404 F.3d at 375); *see also Geiger*, 404 F.3d at 375 (applying physical injury requirement to bar damages for retaliation claim); *Moore v. Tarrant Cnty., Tex.,* No. 4:21-cv-1206, 2022 WL 1524131, at *2-3 (N.D. Tex. May 12, 2022) (applying physical injury requirement to bar damages for Sixth Amendment claim).

---

[20] Ford's claim that he was retaliated against for filing a lawsuit in 2012 (Am. Compl. at ¶ 85) is barred by the statute of limitations. *See* n. 4, *supra*.  Moreover, allegations of a single instance of retaliation eleven years ago by unidentified TDCJ guards does not present a chronology of events upon which the Court may infer a continuing retaliatory motive by Defendants.

Here, with limited exceptions, Plaintiffs fail to specify any physical injuries resulting from retaliation, F Pod conditions, mold and insect exposure, or inadequate access to counsel, retaliation, showers, mattresses, recreation, and food. *See* Section V.A., *supra*.[21] Thus, to the extent Plaintiffs seek damages for emotional or mental injuries resulting from those alleged conditions and restrictions without any accompanying physical injuries, Plaintiffs are precluded from recovering such damages by the PLRA. Moreover, Ford, Curry, and Robertson's alleged physical injuries from recreation deprivation—hip sores, eczema flair-ups, and a decline in cardiac health, respectively (Am. Compl. at ¶¶ 14, 19, 49)—and Ford's alleged injuries from food deprivation—general weakness and fading of skin pigmentation (*id.* at ¶ 22)—are *de minimis* and insufficient to satisfy 42 U.S.C. § 1997e(e). *See, e.g., Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (abrasions, bruises, and high blood pressure and heart rate were *de minimis* physical injuries); *Brooks v. City of W. Point*, 639 F. App'x 986, 990 (5th Cir. 2016) (abrasions, some back and neck pain, and exacerbation of asthma were *de minimis* physical injuries); *Skinner v. Quarterman*, No. 9:09-cv-130, 2011 WL 13131162, at *9 (E.D. Tex. Aug. 9, 2011) (minor skin condition was *de minimis* physical injury).

### F.  Plaintiffs' individual-capacity claims are barred by qualified immunity.[22]

Qualified immunity affords protection to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis is a two-step inquiry. "First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly

---

[21] The only exceptions are that Ward alleges physical injuries related to F Pod conditions and food deprivation, Ford alleges injuries related to food and recreation deprivation, and Robertson and Curry allege physical injuries related to recreation deprivation and mold exposure. *Id.*

[22] Because qualified immunity is an "immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Fifth Circuit recently held that, "[w]hen defendants assert qualified immunity in a motion to dismiss, the district court may not defer ruling on that assertion." *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022). "The rule is that 'a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation'—full stop." *Id.* (internal quotation omitted).

established right." *Hernandez ex rel Hernandez v. Tex. Dep't of Prot. & Reg. Servs.*, 380 F.3d 872, 879 (5th Cir. 2004). "Second, if the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident." *Id.* To be clearly established, a court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (internal quotation omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Plaintiffs have not cleared the first hurdle of this inquiry because they fail to allege any constitutional violation. *See* Section V.D, *supra*. However, even if the Court disagrees, Defendants are still entitled to qualified immunity because their actions were (and are) objectively reasonable in light of clearly established law.

With respect to Plaintiffs' conditions-of-confinement claims, Defendants acted (and continue to act) reasonably in confining Plaintiffs—who were sentenced to death—in restrictive housing until their execution dates. *See Gonzales v. Lopez*, No. C-08-008, 2008 WL 724247, at *5 (S.D. Tex. Mar. 17, 2008) ("Plaintiff is charged with capital murder, the most serious offense in the Texas Penal Code. It was reasonable for jail officials to segregate plaintiff from the general jail population."). Moreover, the "clearly established law," both now and at the time Plaintiffs were placed on Polunsky Death Row, is that prolonged, even indefinite placement in solitary confinement does not constitute cruel and unusual punishment unless it is coupled with extreme deprivations of basic hygiene. *See Hope*, 861 F. App'x at 584; *Novak*, 453 F.2d at 665. Because Plaintiffs allege no such extreme deprivations of hygiene, Defendants are entitled to qualified immunity. *See Dillard*, 2022 WL 3045747, at *24 (N.D. Tex. June 17, 2022) (holding that qualified immunity barred Eighth Amendment claim premised on prolonged solitary confinement because there were no alleged extreme hygiene-related deprivations).

With respect to Plaintiffs' due process claims, Defendants acted (and continue to act) reasonably in confining Plaintiffs in restrictive housing based solely on their death sentences without individualized assessments.  While the Supreme Court and Fifth Circuit have held that inmates sometimes have a liberty interest in avoiding prolonged solitary confinement, those rulings are distinguishable because prison officials had discretion to place them elsewhere.  *Wilkinson*, 545 U.S. at 221-24; *Wilkerson*, 774 F.3d at 851-57.  The only law governing the circumstances presented here—in which Plaintiffs' housing assignment "flow[s] from the[ir] conviction and sentence"—is found in *Prieto*, wherein the Fourth Circuit held that no liberty interest was present and thus no additional procedural safeguards were required.  780 F.3d at 254.  Given that the Fifth Circuit has not addressed this scenario and there is strong reason to believe that it would adopt the reasoning of *Prieto* if given the opportunity (*see* n. 15, *supra*), Defendants are entitled to qualified immunity with respect to Plaintiffs' Fourteenth Amendment claim.

Finally, with respect to Plaintiffs' access-to-counsel claims, Defendants acted (and continue to act) reasonably in limiting Plaintiffs' access to attorney phone calls and visits because regulations on the frequency of attorney contact.  *See, e.g., Bell*, 2013 WL 11730661, at *2-3.  Defendants also acted (and continue to act) reasonably in not taking additional measures to ensure the privacy of attorney communication, and by requiring that Plaintiffs be handcuffed during contact visits.  *See Buffington*, 2007 WL 2719885, at *5; *Block v. Rutherford*, 468 U.S. at 586; *Beatty*, 2022 WL 16722364, at *8.  Defendants are thus entitled to qualified immunity with respect to Plaintiffs' access-to-counsel claims.

## VI.    CONCLUSION

For the reasons described herein, Defendants respectfully request that the Court dismiss all of Plaintiffs' claims against them with prejudice for want of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.

Respectfully submitted,

**JOHN SCOTT**
Provisional Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for
Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I, **MICHAEL J. CALB**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served to all attorneys of record by the Electronic Case Filing System of the Eastern District of Texas on July 10, 2023.

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General