**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **MARK ROBERTSON,** *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 9:23-CV-0023 |
| | § | |
| **BRYAN COLLIER,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

---

| | |
|---|---|
| **ANGELA COLMENERO**<br>**Provisional Attorney General** | SHANNA E. MOLINARE, Chief,<br>**Law Enforcement Defense Division** |
| **BRENT WEBSTER**<br>**First Assistant Attorney General** | MICHAEL J. CALB*<br>**Assistant Attorney General**<br>**Texas State Bar No. 24077883**<br>Michael.Calb@oag.texas.gov |
| **GRANT DORFMAN**<br>**Deputy First Assistant Attorney General** | |
| **JAMES LLOYD**<br>**Acting Deputy Attorney General for**<br>**Civil Litigation** | OFFICE OF THE ATTORNEY GENERAL<br>**Law Enforcement Defense Division**<br>**P.O. Box 12548**<br>**Austin, Texas 78711-2548**<br>**(512) 463-2080/Fax: (512) 370-9814** |

**ATTORNEYS FOR DEFENDANTS**

---

**\* Counsel of Record**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

I.    PRELIMINARY STATEMENT .......................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

    A.  Plaintiffs lack standing to challenge most of their alleged conditions. .................... 1

    B.  The PLRA severely limits Plaintiffs' claims for compensatory damages. .............. 4

    C.  Plaintiffs fail to properly invoke the *ultra vires* exception to sovereign immunity. ... 5

    D.  Plaintiffs fail to state a viable conditions-of-confinement claim. .......................... 6

    E.  Plaintiffs fail to state a viable medical deliberate indifference claim. .................. 10

    F.  Plaintiffs fail to state a viable due process claim. ................................................ 12

    G.  Plaintiffs fail to state a viable access-to-counsel claim. ..................................... 16

    H.  Plaintiffs fail to state a viable retaliation claim. ................................................. 18

    I.  Defendants are entitled to qualified immunity. ................................................... 19

III.  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agee v. City of McKinney*,
  No. 4:12-cv-550, 2014 WL 1232644 (E.D. Tex. Mar. 22, 2014) ...................................5

*Alfred v. Corr. Corp. of Am.*,
  437 F. App'x 281 (5th Cir. 2011) .............................................................................11

*Baker v. Armstrong*,
  No. 16-CV-303, 2018 WL 11475406 (W.D. Tex. Apr. 2, 2018) ..............................11

*Barnes v. Brownlow*,
  No. 6:08-cv-194, 2008 WL 2704868 (E.D. Tex. July 7, 2008) ................................11

*Bauer v. Texas*,
  341 F.3d 352 (5th Cir. 2003) .....................................................................................3

*Beatty v. Lumpkin*,
  No. 4:09-cv-225, 2022 WL 5417480 (E.D. Tex. Sept. 16, 2022) ...........................17

*Bell v. Woods*,
  382 F. App'x 391 (5th Cir. 2010) .............................................................................18

*Boggess v. Johnson*,
  132 F.3d 1454 (5th Cir. 1997) ..................................................................................16

*Bowles v. Desantis*,
  No. 4:19CV319, 2019 WL 10631192 (N.D. Fla. July 19, 2019) .............................18

*Brewer v. Wilkinson*,
  3 F.3d 816 (5th Cir. 1993) ........................................................................................17

*Brown v. Taylor*,
  911 F.3d 235 (5th Cir. 2018) ....................................................................................18

*Buehler v. Dear*,
  27 F.4th 969 (5th Cir. 2022) .....................................................................................19

*Bush v. Monroe*,
  No. 6:17-cv-541, 2018 WL 4648732 (E.D. Tex. July 30, 2018) ...............................7

*Chapman v. Scott*,
  232 F.3d 208, 2000 WL 1272465 (5th Cir. 2000) .....................................................8

*Christensen v. Scott*,
  95 F.3d 46 (5th Cir. 1996) ........................................................................................16

*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex. 2009) ......................................................................................5

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ...................................................................................................3

*Covarrubias v. Foxworth*,
  No. 6:13-cv-812, 2016 WL 4836864 (E.D. Tex. Sept. 14, 2016) ...........................11

*Dillard v. Davis*,
  2022 WL 3042901 (Aug. 2, 2022) ..............................................................................7

*Does 1-7 v. Abbott*,
  945 F.3d 307 (5th Cir. 2015) .............................................................................16, 20

*Ex parte Alvarez*,
  468 S.W.3d 543 (Tex. Crim. App. Apr. 29, 2015) ..................................................17

*Farmer v. Brennan,*
  511 U.S. 825 (1994) .................................................................................................. 8, 9

*Fields v. Davis,*
  2022 WL 811053 (E.D. Tex. Mar. 16, 2022) ................................................................ 8

*Fields v. Tex. Dep't of State Health Servs.,*
  2017 WL 4684003 (E.D. Tex. Oct. 19, 2017) ........................................................... 7, 8

*French v. Quarterman,*
  No. 9:09CV74, 2010 WL 998354 (E.D. Tex. Jan. 22, 2010) ...................................... 10

*Gates v. Cook,*
  376 F.3d 323 (5th Cir. 2004) ........................................................................................ 8

*Gen. Land Office v. U.S. Dep't of the Interior,*
  947 F.3d 309 (5th Cir. 2020) ........................................................................................ 2

*Gregory v. McKennon,*
  430 F. App'x 306 (5th Cir. 2011) .................................................................................. 2

*Guerrero v. Turner,*
  2012 WL 760876 (E.D. Tex. Mar. 7, 2012) .................................................................. 9

*Guild v. Securus Tech., Inc.,*
  2015 WL 10818584 (W.D. Tex. Feb. 4, 2015) .......................................................... 4, 5

*Hernandez v. Velasquez,*
  522 F.3d 556 (5th Cir. 2008) ........................................................................................ 9

*Hewitt v. Henderson,*
  271 F. App'x 426 (5th Cir. 2008) .................................................................................. 7

*Holloway v. Walker,*
  765 F.2d 517 (5th Cir. 1985) ........................................................................................ 5

*Hope v. Harris,*
  861 F. App'x 571 (5th Cir. 2021) ....................................................................... 6, 7, 19

*Howard v. Livingston,*
  No. 1:09-cv-396, 2011 WL 3328642 (E.D. Tex. May 23, 2011) .................................. 2

*Icumaa v. Stirling,*
  791 F.3d 517 (4th Cir. 2015) ................................................................................. 13, 15

*Jackson v. Cain,*
  854 F.2d  (5th Cir. 1989) ............................................................................................ 18

*Johnson v. Ryan,*
  55 F.4th 1167 (9th Cir. 2022) ..................................................................................... 13

*Lewis v. Casey,*
  518 U.S. 343 (1996) ................................................................................................. 2, 4

*McClendon v. City of Columbia,*
  305 F.3d 314 (5th Cir. 2002) (en banc ...................................................................... 19

*Moore v. Murray,*
  No. 4:21-cv-2780, 2022 WL 19619 (S.D. Tex. Jan. 3, 2022) .................................... 11

*Morris v. Powell,*
  449 F.3d 682 (5th Cir. 2006) ...................................................................................... 18

*Muniz v. State,*
  851 S.W.2d 238 (Tex. Crim. App. 1993) ................................................................... 16

*Norman v. Texas Dep't of Crim. Just., Institutional Div.,*
  293 F. App'x 285 (5th Cir. 2008) ................................................................................ 10

*Parker v. Cook,*
  642 F.2d 865 (5th Cir. 1981) ................................................................... 12, 14, 15, 20

*Pittman v. Beaird,*
    15 F.3d 181, 1994 WL 24950 (5th Cir. 1994) ............................................................7

*Porras v. Sanchez,*
    No. 13-cv-248, 2014 WL 2118085 (W.D. Tex. May 21, 2014) ............................17

*Prestage Farms. v. Board of Sup'rs of Noxubee Cty., Miss.,*
    205 F.3d 265 (5th Cir. 2000) ....................................................................................3

*Prieto v. Clarke,*
    780 F.3d 245 (4th Cir. 2015) .........................................................................12, 13, 15

*Public Citizen, Inc. v. Bomer,*
    274 F.3d 212 (5th Cir. 2001) ....................................................................................2

*Reynolds v. Newcomer,*
    No. 09-1077, 2010 WL 234896 (W.D. La. Jan. 19, 2010) ....................................7

*Rezaq v. Nalley,*
    677 F.3d 1001 (10th Cir. 2012) ..............................................................................14

*Sandin v. Connor,*
    515 U.S. 472 (1995) ............................................................................................13, 15

*Smith v. Coughlin,*
    748 F.2d 783 (2d Cir. 1984) ....................................................................................12

*Stanley v. Foster,*
    464 F.3d 565 (5th Cir. 2006) ....................................................................................6

*Stem v. Gomez,*
    813 F.3d 205 (5th Cir. 2016) ....................................................................................5

*Taylor v. El Centro College,*
    No. 3:21-cv-999, 2022 WL 102611, n.7 (N.D. Tex. Jan. 10, 2022) ......................5

*Thompson v. Steele,*
    709 F.2d 381 (5th Cir. 1983) ..................................................................................10

*Thunderhorse v. Collier,*
    No. 9:17-cv-196, 2020 WL 3002220 (E.D. Tex. Feb. 20, 2020) ....................10, 19

*Tipps v. Leonard,*
    328 F. App'x 302 (5th Cir. 2009) ..............................................................................9

*Walker v. Davis,*
    No. 6:17CV166, 2019 WL 2465298 (E.D. Tex. Jan. 10, 2019) ............................10

*Walston v. State Counsel for Offenders,*
    No. H-07-2120, 2010 WL 3056657 (S.D. Tex. July 30, 2010) ..............................9

*White v. Pauly,*
    580 U.S. 73 (2017) ..................................................................................................19

*Wilkerson v. Goodwin,*
    774 F.3d 845 (5th Cir. 2015) ..................................................................................14

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) ..........................................................................................13, 14

Statutes

18 U.S.C. § 3599 ......................................................................................................17, 20
28 U.S.C. §§ 2254-55 ..............................................................................................17, 20
42 U.S.C. § 1997e(e) ..................................................................................................3, 5
Texas Code of Criminal Procedure Article 11.071(a) ............................................17, 20

## I.    PRELIMINARY STATEMENT

Plaintiffs' Original Complaint was light on facts and heavy on bluster, asserting a plethora of claims without the elements to back them up, and in many cases without standing to bring them in the first place.  ECF No. 1.[1]  Defendants painstakingly laid out these pleading and jurisdictional defects in a motion to dismiss, providing Plaintiffs a veritable road map for how to cure them—if indeed they had the facts to do so.  ECF No. 12.  Apparently, they did not.  Rather than bolstering their existing claims with factual detail, Plaintiffs' First Amended Complaint merely muddled the water further with more unsupported (and in some cases unsupportable) claims.  ECF No. 22 ("FAC").  Defendants filed a new motion to dismiss, largely mirroring their first motion, to which Plaintiffs have now responded.  ECF No. 29 ("Opposition").  As described herein, Plaintiffs' Opposition is unsuccessful in salvaging any of their claims and the Court should grant Defendants' Motion in full.

## II.    ARGUMENT

### A.  Plaintiffs lack standing to challenge most of their alleged conditions.

As explained in Defendants' Motion, *none* of the Plaintiffs allege a concrete, particularized injury-in-fact resulting from insect exposure, retaliation or restrictions on access to counsel, showers, or mattresses.  Mot. at 5-9.  And, with respect to the remaining conditions giving rise to Plaintiffs' conditions-of-confinement claims, Plaintiffs' alleged injuries are limited as follows:

| Alleged condition | Plaintiff(s) with alleged injury-in-fact |
|---|---|
| Mold exposure | Robertson (continuing injury) |
| Food restrictions | Ward (past injury only while on F Pod)<br>Ford (continuing injury) |
| Recreation restrictions | Robertson (continuing injury)<br>Ward (continuing injury)<br>Curry (continuing injury) |

---

[1] All undefined capitalized terms in this reply have the same meaning as the capitalized terms in Defendants' motion to dismiss Plaintiff's First Amended Complaint.  ECF No. 29 ("Motion" or "Mot.").

*Id.* at 10-12.[2]

Plaintiffs attempt to gloss over these gaps in standing by construing their challenges to several different conditions as monolithic claims. Opp. at 2-3. Because each of them has suffered an injury from at least one of the conditions on Polunsky Death Row, Plaintiffs argue, they collectively have standing to challenge those conditions in toto. *Id.* Not so. Plaintiffs' collective standing is cabined by their personal injuries. *See Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218-19 (5th Cir. 2001) (for an injury to be "particularized" and confer standing, "it must affect the plaintiff in a personal and individual way") (internal quotation omitted); *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (prisoners lack standing to sue under Section 1983 for violations of other prisoners' rights); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (plaintiffs in putative class action must still "show that they personally have been injured"). No Plaintiff has alleged personal injuries from *all* of the conditions giving rise to this lawsuit. Therefore, before deciding whether any alleged condition or set of conditions is constitutional, the Court must first determine whether at least one Plaintiff has alleged personal injuries from that precise condition or set of conditions. *See, e.g., Howard v. Livingston*, No. 1:09-cv-396, 2011 WL 3328642, at *1 (E.D. Tex. May 23, 2011) (dismissing inmate's conditions-of-confinement claim for lack of standing where he alleged that "prisoners were not given clean linens or proper nourishment" but "failed to identify an injury in fact that affects him in a personal and individual way or one that is imminent"), *rec. adopted*, 2011 WL 3322796 (E.D. Tex. July 29, 2011).

---

[2] This chart excludes alleged injuries from events which occurred outside the two-year statute of limitations applicable to Plaintiffs' claims. Contrary to Plaintiffs' contention (Opp. at 4 n.4), none of their allegations concerning events from before that timeframe are "continuing" so as to toll the statute. *See e.g.*, FAC at ¶¶ 53-54 (Ford's allegedly retaliatory transfer to F Pod in 2012 is not ongoing); ¶ 43 (Curry's alleged extreme mold exposure from 2019-2020 is not ongoing); ¶ 45 (Cummings' alleged conditions on C Pod from 2018-2020 are not ongoing); ¶ 46 (Cummings' alleged mattress deprivation and blood exposure in 2019 is not ongoing). Plaintiffs cannot trigger tolling simply by labeling these discrete events as part of a generalized ongoing practice. *See Gen. Land Office v. U.S. Dep't of the Interior*, 947 F.3d 309, 319 (5th Cir. 2020) ("The continuing violation doctrine does not apply to claims based on discrete actions [or] failures to act that are properly characterized as discrete events, not as ongoing, durational conditions") (internal quotation omitted).

While the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement, the nature of each Plaintiff's injuries alters the scope of available claims. For example, since only Robertson alleges injuries from mold exposure and only Ward and Ford allege injuries from food restrictions, no Plaintiff has standing to assert that those conditions *combined* violate the Eighth Amendment. Likewise, since no Plaintiff alleges continuing injuries from F Pod conditions, no Plaintiff can seek injunctive relief to alter those conditions. *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (plaintiffs seeking injunctive relief must allege "either continuing harm or a real and immediate threat of repeated injury in the future"). Undergoing this condition-by-condition, Plaintiff-by-Plaintiff standing analysis is critical because it will dictate which alleged conditions the Court may consider in deciding if Plaintiffs have stated any viable claim.[3]

In analyzing Plaintiffs' standing, the Court must be mindful of the distinction between *imminent* future injury (which is sufficient to confer standing) and merely *possible* future injury (which is not). *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient."). For example, Plaintiffs argue that, although they are not currently housed on F Pod, they "are at heightened risk of being sent to F Pod due to their filing of this suit." Opp. at 4. As evidence, they point only to the fact that Ford was allegedly sent to F Pod after filing another lawsuit back in 2012. *Id.* (citing FAC ¶ 53). However, even if one allegedly retaliatory action more than ten years ago were enough to create a "substantial risk" of Defendants retaliating against Plaintiffs in the same fashion now, it does not follow that Plaintiffs' transfer to F Pod is "certainly impending." *See Prestage Farms. v. Board of Sup'rs of Noxubee Cty., Miss.*, 205 F.3d 265,

---

[3] Plaintiffs argue that the Court should consider Plaintiffs' emotional and psychological injuries in conducting its standing analysis. Opp. at 5. Doing so would be pointless, however. To the extent Plaintiffs allege emotional or psychological injuries from any of their prison condition without any accompanying physical injuries, they are barred from redressing those injuries by the PLRA. *See* 42 U.S.C. § 1997e(e); Mot. at 37-38.

268 (5th Cir. 2000) (even an injury based on a "likely and credible chain of events" must still be "certainly impending" to support standing). Similarly, no Plaintiff has alleged that he will imminently suffer injuries from insect exposure or restrictions on access to counsel, showers, or mattresses. Mot. at 6-9. And the Plaintiffs who have not already been injured from mold exposure or restrictions on food or recreation do not allege that such injuries are certainly impending. *Id.* at 9-12.

Moreover, with respect to Plaintiff's access-to-counsel claims, the Court must apply the heightened "actual prejudice" requirement for injury-in-fact set forth in *Lewis*, 518 U.S. at 351. *See* Mot. at 6-8. Plaintiffs appear to ignore the jurisdictional nature of this requirement, mentioning prejudice only in connection with the viability of their Sixth Amendment claim. Opp. at 30-31. And even there, the sole case they rely upon is easily distinguishable. In *Guild v. Securus Tech., Inc.*, the Western District held that Travis County detainees adequately showed prejudice to ongoing litigation—and thus an injury-in-fact sufficient to confer standing—by alleging that the defendants had surreptitiously recorded confidential phone calls with their defense attorneys and disclosed copies of those conversations to the prosecutors in their cases. No. 1:14-cv-cv-366, 2015 WL 10818584, at *2, 6 (W.D. Tex. Feb. 4, 2015), *rec. adopted*, 2015 WL 11237655 (W. D. Tex. May 23, 2015) (cited in Opp. at 2, n.2). Plaintiffs allege no such prejudice here. For example, while Ward claims that his legal papers were searched after meeting with his defense attorneys (FAC at ¶ 78), he does not allege or even insinuate that any action was taken following those searches to hinder his criminal case. Absent allegations of *actual* prejudice such as those asserted by the detainees in *Guild*, Plaintiffs lack standing to challenge inmates' access to counsel on Polunsky Death Row. *See* Mot. at 6 (collecting cases).

### B.  The PLRA severely limits Plaintiffs' claims for compensatory damages.

Plaintiffs have not, as they claim, provided "detailed allegations regarding physical injuries." Opp. at 38. Tellingly, the three instances they list as examples are either outside the statute of limitations period or did not involve physical harm at all. *Id.* at 38, n.16 (citing Curry's mold exposure

in a prior cell from 2019-2020, Ford's food deprivation in F Pod in 2012, and Cummings' inability to meet with his lawyer earlier this year). In reality, Plaintiffs' alleged physical injuries from within the statute of limitations period are few and far between, and still fewer surpass the PLRA's *de minimis* threshold. Mot. at 37-38. To the extent Plaintiffs seek compensatory damages for alleged emotional or mental injuries without an accompanying non-*de minimis* physical injury, Plaintiffs' claims for compensatory damages must be dismissed. *Id*; 42 U.S.C. § 1997e(e). Notably, among other claims, the PLRA disposes of *all* of Plaintiffs' claims for compensatory damages related to mold and insect exposure, retaliation, and restrictions on access to showers, mattresses, and recreation. *Id.*

### C. Plaintiffs fail to properly invoke the *ultra vires* exception to sovereign immunity.

Plaintiffs' claims under the Texas Constitution are barred by sovereign immunity and they cannot avoid this result simply by stating that Defendants were acting *ultra vires*. FAC at ¶ 119; Mot. at 12-13. "To fall within this *ultra vires* exception, Plaintiff must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Agee v. City of McKinney*, No. 4:12-cv-550, 2014 WL 1232644, at *15 (E.D. Tex. Mar. 22, 2014), *aff'd*, 593 F. App'x 311 (5th Cir. 2014) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009)). Put differently, an official's actions are not *ultra vires* unless they were "committed in the clear absence of all jurisdiction." *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985) (affirming dismissal of state claims for equitable relief where plaintiff failed to allege that state officials acted outside of their statutory authority).

In both of the cases cited by Plaintiffs, the named defendants allegedly acted without legal authority. *See Stem v. Gomez*, 813 F.3d 205, 214 (5th Cir. 2016) (former police officer's allegation that mayor terminated him without statutory authority to do so was sufficient to invoke *ultra vires* exception); *Taylor v. El Centro College*, No. 3:21-cv-999, 2022 WL 102611, at *1, 6, n.7 (N.D. Tex. Jan. 10, 2022) (college student's allegation that administrators and campus police denied him access to

school library in violation of school policy allowing him access was sufficient to invoke *ultra vires* exception). Here, by contrast, while Plaintiffs allege that Defendants violated the Texas Constitution, they do not explain how, in doing so, Defendants acted outside the scope of their authority as TDCJ employees. In fact, Plaintiffs *admit* that Defendants each have "the authority to compel or constrain conditions of confinement" on Polunsky Death Row. FAC at ¶¶ 32-35. Plaintiffs do not allege any actions taken outside of that authority, and thus the narrow *ultra vires* exception does not apply.

### D. Plaintiffs fail to state a viable conditions-of-confinement claim.

Because long-term solitary confinement "is not per se unconstitutional," the Court need only consider whether the alleged conditions and restrictions accompanying solitary confinement on Polunsky Death Row violate the Constitution. *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021). Once standing is taken into account, Plaintiffs' conditions-of-confinement claims are limited to challenging mold exposure and restrictions on recreation and food. Mot. at 5-12; *supra* Section II.A. None of these alleged conditions are sufficiently extreme—as applied to the Plaintiff(s) experiencing them—to satisfy the Eighth Amendment's objective component.

<u>Mold exposure</u>: Only Robertson alleges injuries from ongoing mold exposure. FAC at ¶ 43.[4] However, while Plaintiffs generally aver that cells are "often infested with black mold" (FAC at ¶ 9) and that "black mold has infested [Polunsky Death Row] since it opened" (*id.* at ¶ 42), nowhere do they describe how much mold is in Robertson's particular cell or how long that mold has been present. Without that information, the Court cannot conclude that Robertson's mold exposure was as extreme as in *Hope v. Harris*, where the inmate alleged that mold covered the walls, floor, and doors of *his* solitary confinement cell for *decades*. 861 F. App'x 517, 575 (5th Cir. 2021). But even if the Court

---

[4] Curry's alleged mold exposure occurred while housed in a specific cell from 2019-2020. *Id.* Because he has since been removed from that cell, his mold-related claims are barred by the statute of limitations. *Supra* n.2. Continuing injury alone does not toll the statute. *See Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006).

assumes (which it should not) that Robertson's mold exposure was comparable to that of the inmate in *Hope*, the Fifth Circuit only found that level of mold exposure to be actionable when combined with equal exposure to feces and urine. *Id.* at 583-84.[5]  In cases premised on allegations of mold exposure alone, this Court and others have found no Eighth Amendment violation. *See, e.g.*, *Bush v. Monroe*, No. 6:17-cv-541, 2018 WL 4648732, at *3 (E.D. Tex. July 30, 2018), *rec. adopted*, 2018 WL 4042418 (E.D. Tex. Aug. 24, 2018); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) ("'[T]he presence of black mold in living areas, eating areas, and shower areas' are 'no more than a de minimis level of imposition with which the Constitution is not concerned.'").

Recreation restrictions:  Robertson, Curry, and Ward allege injuries from restrictions on out-of-cell recreation.  FAC at ¶¶ 15, 19, 49.  Exercise deprivation claims "should be evaluated on a case-by-case basis using, inter alia, the following criteria: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and (3) the overall duration of the inmate's confinement." *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008).  Here, Plaintiffs are housed in 8 by 12 foot cells, and the longest period they allege to have gone without out-of-cell recreation was approximately three months between November 2021 to late January 2022, with continuing 10-14 day interruptions per quarter. *Id.* at ¶¶ 2, 48.  Faced with similar facts, both the Fifth Circuit and this Court have held that allegations of deprivations of exercise for three months in solitary confinement are insufficient to state a claim. *See Pittman v. Beaird*, 15 F.3d 181, 1994 WL 24950, at *3-4 (5th Cir. 1994); *Fields v. Tex. Dep't of State Health Servs.*, No. 4:16-CV-607, 2017 WL 9287009, at *7 (E.D. Tex. Sept. 13, 2017), *rec. adopted*, 2017 WL 4684003 (E.D. Tex. Oct. 19, 2017).[6]

---

[5] While the Fifth Circuit mentioned in dicta in *Hope* that mold exposure alone "might be sufficiently serious by itself" to violate the Eighth Amendment, its actual holding was that prolonged mold exposure, coupled with prolonged feces and urine exposure, stated a valid conditions-of-confinement claim. *Hope*, 861 F. App'x at 584.
[6] Plaintiffs cite *Dillard v. Davis* as allowing "analogous recreation-related claims" to survive summary judgment (Opp. at 10), but the inmate in that case was confined to a much smaller 6 by 9 foot cell.  No. 7:19-cv-81, 2022 WL 3045747, at *11, 23 (N.D. Tex. June 17, 2022), *rec. adopted*, 2022 WL 3042901 (Aug. 2, 2022).

Food restrictions:  Only Ford and Ward allege injuries from food restrictions on Polunsky Death Row. FAC at ¶¶ 22, 54.  However, while Ford alleges that he is "unable to get sufficient nutrients from food at the Unit" (*id.* at ¶ 22), and Ward alleges that he was denied food periodically while in F Pod (*id.* at ¶ 54), their failure to detail the extent and duration of their food deprivations renders their claims conclusory.  *See* Mot. at 21-22 (citing *Fields v. Davis*, No. 818746, 2022 WL 818746, at *7 (E.D. Tex. Feb. 24, 2022) ("Plaintiff's wholly conclusory allegation of inadequate nutrition is not enough to state a claim under Section 1983"), *rec. adopted*, 2022 WL 811053 (E.D. Tex. Mar. 16, 2022)).

Because none of these individual conditions or restrictions violate the Constitution, Plaintiffs ask the Court to lump them together and find that, combined, they are sufficiently extreme to violate the Constitution.  Opp. at 6-7.  That would be improper, however, because no Plaintiff has standing to challenge all of those conditions.  *Supra* Section II.A.  Moreover, as the Fifth Circuit explained:

> Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but *only* when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise——for example, a low cell temperature at night combined with a failure to issue blankets.

*Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (cited in Opp. at 12) (emphasis added).  Since Plaintiffs fail to allege that their various conditions deprive them of a *single* human need, those conditions cannot be combined to state an Eighth Amendment claim.  *Id.*

Plaintiffs also fail to adequately plead deliberate indifference.  Start with Robertson's mold exposure claim.  Robertson avers that the mold in his cell makes it difficult to breathe after it rains (FAC ¶ 43), but he never claims to have told any of the Defendants about those adverse effects.  And, to the extent he did so through grievances or letters (*id.* at ¶ 111), it does not follow that Defendants "subjectively drew the inference" that a "substantial risk of serious harm" existed and consciously disregarded that risk.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Chapman v. Scott*, 232 F.3d 208, 2000 WL 1272465, at *1 (5th Cir. 2000) ("[C]omplaints about the outcome of [prison] grievance

proceedings do not implicate the Constitution."); *Guerrero v. Turner*, No. 9:11-cv-82, 2012 WL 760876, at *4 (E.D. Tex. Mar. 7, 2012) (inmate informing warden of his injuries in a letter was not enough to infer deliberate indifference).

Plaintiffs' allegation that mold is "visibly spread throughout the Unit, such that any person walking through—including Defendants—would see it" (FAC at ¶ 44) is insufficient to infer a substantial or obvious risk to Roberson from that mold. First of all, Lumpkin and Collier are state-level officials who do not work at the Polunsky Unit. *Id.* at ¶¶ 32-33. Plaintiffs provide no explanation for how they would know about the existence of mold on Polunsky Death Row, and the suggestion that they "should have known" is insufficient. *See Tipps v. Leonard*, 328 F. App'x 302, 303 (5th Cir. 2009). But even for the Defendants who work at the Polunsky Unit, their knowledge of the mere presence of mold does not imply knowledge of an "obvious risk of harm" to Robertson. *See Walston v. State Counsel for Offenders*, No. H-07-2120, 2010 WL 3056657, at *6 (S.D. Tex. July 30, 2010) (to state a claim based on mold exposure, an inmate must allege not only that the official knew about the mold, but also that he knew that it was a "risk to plaintiffs' health"). Nor does it imply that Polunsky Unit Defendants consciously disregarded that specific risk. *See Farmer*, 511 U.S. at 837.

Similarly, Robertson, Curry, and Ward fail to allege that lack of exercise "posed a substantial risk of serious harm" to their health. *See Hernandez v. Velasquez,* 522 F.3d 556, 561 (5th Cir. 2008). In *Hernandez,* the Fifth Circuit held that an inmate's "muscle atrophy, stiffness, loss of range of motion, and depression" resulting from deprivation out-of-cell recreation for 13 months provided "no indication [his] conditions posed a substantial risk of serious harm." *Id.* Likewise, Robertson, Curry, and Ward's alleged injuries from exercise deprivation—weight gain, eczema, and hip sores (FAC at ¶¶ 15, 19, 49)—are insufficient to meet this threshold. Thus, even if Defendants knew that such injuries were possible or had occurred, their failure to act in response does not evince deliberate indifference.

Finally, Plaintiffs fail to establish that Defendants were personally involved in any food

deprivations, much less that they acted with deliberate indifference. Plaintiffs attribute food deprivations not to Defendants' actions or official policies, but rather to individual "TDCJ guards" who, despite being "responsible for delivering food trays" (presumably under Defendants' policies), "sometimes deny multiple meals in a row." FAC at ¶¶ 51-54. Those guards are not parties, and their alleged dereliction of duties cannot be imputed on Defendants to establish deliberate indifference simply by construing Defendants' failure to intervene as a "policy" (Opp. at 15-16). *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *See Thunderhorse v. Collier*, No. 9:17-cv-196, 2020 WL 3002220, at *2 (E.D. Tex. Feb. 20, 2020) (Hawthorne, J.) (dismissing inmate's conditions-of-confinement claim against Collier and other TDCJ officials because he failed to allege that the officials were personally involved in the deprivation*), rec. adopted*, 2020 WL 2992350 (E.D. Tex. June 30, 2020); *Walker v. Davis*, No. 6:17CV166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019) ("[Prisoner]'s vague allegation of unspecified 'policies' with regard to the [condition of confinement] and his generalized and inchoate allegations of possible danger are insufficient to show that the Defendants are acting with deliberate indifference to his safety."), *rec. adopted*, 2019 WL 1421152 (E.D. Tex. Mar. 28, 2019).

**E. Plaintiffs fail to state a viable medical deliberate indifference claim.**

Plaintiffs seek to hold Defendants—all TDCJ employees—liable for alleged delays and inadequacies in their medical treatment. FAC at ¶¶ 60-61; Opp. at 17-19. However, neither TDCJ nor any of its employees are responsible for setting medical policy or providing inmate medical care. Rather, medical policy and medical care for TDCJ inmates are provided by contracted agencies including the University of Texas Medical Branch ("UTMB") and those agencies' employees. *See Norman v. Tex. Dep't of Crim. Just., Instit'l Div.*, 293 F. App'x 285, 287–88 (5th Cir. 2008) (recognizing that "TDCJ was not responsible for the daily medical operations at the prison, and that neither the TDCJ nor any of its employees had any supervisory or enforcement authority over [UTMB] health care staff"); *French v. Quarterman*, No. 9:09CV74, 2010 WL 998354, at *8 (E.D. Tex. Jan. 22, 2010)

("The medical personnel who provide treatment for TDCJ prisoners are not employees of TDCJ, but of one of the agencies who contract with TDCJ to provide such medical treatment"), *rec. adopted*, 2010 WL 998546 (E.D. Tex. Mar. 12, 2010); *Baker v. Armstrong*, No. 16-CV-303, 2018 WL 11475406, at *6 (W.D. Tex. Apr. 2, 2018) ("UTMB, not TDCJ, is responsible for promulgating medical policy").

Thus, to the extent Plaintiffs sue Defendants concerning medical policy or the provision of medical care, those claims must be dismissed for lack of personal involvement. *See, e.g., French*, 2010 WL 998546, at *8 ("[The TDCJ Correctional Institutions Division Director] has no supervisory authority over . . . medical personnel at the Eastham Unit and thus could not be held liable under a theory of supervisory liability even if such a theory were possible in a Section 1983 case, which it is not."); *Moore v. Murray*, No. 4:21-cv-2780, 2022 WL 19619, at *5 (S.D. Tex. Jan. 3, 2022) ("[Plaintiff]'s claims against [Lumpkin and other officials] additionally fail because he does not plead that these Defendants were personally involved in the alleged denial of medical care.").[7]

Once alleged actions and inactions by medical staff are excluded, the only possible remaining basis for Plaintiffs' medical deliberate indifference claim is Defendants' alleged failure to protect the confidentiality of medical information. FAC at ¶ 66. Plaintiffs cite to *Alfred v. Corr. Corp. of Am.*, in which the Fifth Circuit found prison officials liable for *intentionally* revealing one inmate's HIV status to another inmate. 437 F. App'x 281, 284-85 (5th Cir. 2011). *Alfred* is easily distinguishable, however, because Plaintiffs only allege the *incidental* sharing of medical information. FAC at ¶¶ 22, 66. In far more analogous cases, this Court dismissed claims premised on violations medical privacy. *See, e.g., Covarrubias v. Foxworth*, No. 6:13-cv-812, 2016 WL 4836864, at *3 (E.D. Tex. Sept. 14, 2016) (dismissing claim premised on presence of guards during medical appointments); B*arnes v. Brownlow*, No. 6:08-cv-194, 2008 WL 2704868, at *4 (E.D. Tex. July 7, 2008) (no constitutional violation where

---

[7] Defendants' lack of involvement or authority in determining medical policy also deprives Plaintiffs of standing to seek an injunction altering that policy because their alleged injuries are not redressable by Defendants.

nurse made inmate announce his medical problem in front of other prisoners).

### F. Plaintiffs fail to state a viable due process claim.

The viability of Plaintiff's Fourteenth Amendment claims turns largely on a single question: Do death-sentenced inmates have a liberty interest in avoiding conditions on death row when the state has a blanket policy of automatically and indefinitely housing *all* death-sentenced inmates in those conditions? In *Parker v. Cook*, the Fifth Circuit answered this question with a resounding **no**:

> It appears that, when a person in Florida is convicted of a capital crime and sentenced to death, that person is transferred to a prison and immediately placed in administrative segregation. Because death row inmates are never placed in the general population or given an expectation of being placed in the general population, it appears that no liberty interest is affected when they are placed in administrative segregation.

642 F.2d 865, 874, n.7 (5th Cir. 1981).[8]  Because Florida death row inmates had no liberty interest in avoiding solitary confinement, the Fifth Circuit concluded that only "non-death row inmates" must receive due process protections before being housed in those conditions.  *Id.* at 866-87.

Neither the Supreme Court nor the Fifth Circuit has abrogated *Parker*, and so its holding remains binding precedent in this Circuit.  Moreover, in the years since *Parker*, several federal appellate courts have unanimously reached the same conclusion: inmates housed on death row automatically on the basis of their sentence have no liberty interest in avoiding the conditions on death row and may be housed in those conditions without individualized review.  *See, e.g.*, *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) ("[I]n light of [state policy], which expressly mandated his confinement [on death row], appellant had no basis to claim to be the beneficiary of any state-created liberty interest."); *Prieto v. Clarke*, 780 F.3d 245, 252-55 (4th Cir. 2015) (holding that death row inmate could be housed in solitary confinement without due process where state policy foreclosed housing elsewhere).

In *Prieto*, the most recent appellate case to squarely consider this scenario, the Fourth Circuit

---

[8] Defendants' prior statement the Fifth Circuit has never addressed this question (Mot. at 30, n.15) was in error. The undersigned counsel did not become aware of the *Parker* decision until after the Motion was filed.

underwent a two-step analysis to determine whether the death row inmate had a liberty interest in avoiding his conditions of confinement. First, it asked the "threshold question" of whether a liberty interest in avoiding death row conditions "arise[s] from state policies or regulations." 780 F.3d at 248 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005)). Second, it asked whether the confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). Plaintiffs object to the first step of this analysis, arguing that it is contrary to Supreme Court precedent. Opp. at 20-23. Defendants disagree (*see* Mot. at 27-30), but, importantly, this Court need not take a side in that debate to adopt *Prieto*'s conclusion. Applying the *Sandin* test—which Plaintiffs insist is the only relevant inquiry (Opp. at 21)—the Fourth Circuit ruled that an inmate's conditions on death row cannot constitute an "atypical and significant hardship" when exposure to those conditions is automatic based on his sentence:

> When determining the baseline for atypicality, a court must consider whether the confinement conditions are imposed on a prisoner because of his conviction and sentence. For conditions dictated by a prisoner's conviction and sentence are the conditions constituting the 'ordinary incidents of prison life' for that prisoner. . . . [An inmate] can only be deprived of that to which he is entitled. In determining whether a deprivation imposes a significant or atypical hardship on him, the court must use as its benchmark the incidents of prison life to which he is entitled. Virginia imposes death row confinement on capital offenders because of the crime they have committed and the sentence they have received. That confinement is the expected—indeed mandated—confinement condition flowing from the conviction and sentence.

*Prieto*, 780 F.3d at 253-54 (quoting *Sandin*, 515 U.S. at 484).[9]

Plaintiffs argue that this Court should reject *Prieto*'s application of the *Sandin* test and instead simply determine, as the Supreme Court and Fifth Circuit determined in *Wilkinson* and *Wilkerson*, respectively, that their conditions "pose an 'atypical and significant hardship under any possible

---

[9] *Prieto*'s application of the *Sandin* test was reaffirmed in *Icumaa v. Stirling*, 791 F.3d 517, 527-28 (4th Cir. 2015), and was recently cited with approval by the Ninth Circuit in *Johnson v. Ryan*, 55 F.4th 1167, 1180 (9th Cir. 2022). The *Johnson* court held that, because the inmate was not automatically housed in his current unit as a direct consequence of his criminal sentence (like the inmate in *Prieto*), the appropriate baseline for determining the "atypicality" of his conditions was the general population from which he was moved. *Id.*

baseline.'"  Opp. at 23-24 (quoting *Wilkinson*, 545 U.S. at 223); *Wilkerson v. Goodwin*, 774 F.3d 845, 854 (5th Cir. 2015).  But neither *Wilkinson* nor *Wilkerson* involved a discrete class of inmates challenging conditions imposed *automatically* as the result of their sentences.  Rather, they only considered whether due process was required to subject inmates to conditions that were discretionary and unassociated with a particular sentence.  *Wilkinson*, 545 U.S. at 216; *Wilkerson*, 774 F.3d at 848-99.  Nothing in their holdings implies that similar conditions pose an atypical and significant hardship compared to the ordinary incidents of prison life where—as in *Parker*, *Prieto*, and here—the inmates were automatically housed on death row because of their sentences and had no possibility of avoiding those conditions. *See Rezaq v. Nalley*, 677 F.3d 1001, 1013 (10th Cir. 2012) ("The ordinary incidents of prison life will differ depending on a particular inmate's conviction.") (internal quotation omitted)).

Plaintiffs' attempts to factually distinguish *Prieto* are unavailing.  Faced with the glaring similarities between the two cases, Plaintiffs focus on the fact that the Virginia policy of automatically housing death-sentenced prisoners in solitary confinement was written down, whereas TDCJ's policy is not.  Opp. at 22-23.  This distinction is immaterial, however.  What mattered for the Fourth Circuit in applying the *Sandin* test was not that the state policy mandating solitary confinement was written down, but rather that the policy existed and was strictly being enforced, thus creating a different benchmark from which to determine the "atypicality" of the challenged conditions.  Similarly, the Fifth Circuit's holding *Parker* turned on the *fact* that death row inmates were forbidden from entering general population, not that that prohibition was in writing.  *Parker*, 642 F.2d at 874, n.7.

By Plaintiffs' own account, it has been TDCJ's "blanket policy" for over 20 years to "automatically" and "indefinitely" place all male inmates with death sentences on Polunsky Death Row.  Am. Compl. at ¶¶ 2, 8, 86-87 92-93.[10]  Plaintiffs cite no exceptions to that policy, and indeed

---

[10] In another attempt to distinguish *Prieto*, Plaintiffs point out that female death-sentenced inmates in Texas, unlike in Virginia, are not automatically housed in solitary confinement.  Opp. at 23.  But since Plaintiffs are male, and they admit that all male death-sentenced inmates are automatically housed in solitary confinement,

filed this lawsuit to reverse that policy.  *Id.*  Thus, the appropriate benchmark for the atypicality of Plaintiffs' conditions on Polunsky Death Row is the conditions of other inmates on Polunsky Death Row.  *See Prieto*, 780 F.3d at 254; *Incumaa*, 791 F.3d at 529.  And since Plaintiffs do not allege that their conditions are *worse* than those of other inmates on Polunsky Death Row, their conditions cannot constitute an "atypical" hardship giving rise to a liberty interest and due process protections.  *Id.*

Notably, while *Parker* predated *Sandin* and thus did not explicitly apply the "atypicality" analysis, there is no reason to believe that the Fifth Circuit's reasoning or conclusion would be altered if *Parker* were decided today.  In holding that death row inmates had no liberty interest in avoiding solitary confinement, the *Parker* court found dispositive that "death row inmates are never placed in the general population or given an *expectation* of being placed in the general population."  *Parker*, 642 F.2d at 874 n.7 (emphasis added).  This reasoning is entirely consistent with *Sandin*, which held that prison conditions are not "atypical" so long as they remain "within the range of confinement to be normally *expected* for one serving [a particular sentence]."  *Sandin*, 515 U.S. at 486-88; *see also Prieto*, 780 F.3d at 254 (holding that solitary confinement could not be "atypical" if it was "the *expected*—and indeed mandated—confinement flowing from the conviction and sentence") (emphasis added).  Therefore, the Court has no reason to disturb the Fifth Circuit precedent set in *Parker* and should find—in line with that precedent, *Sandin*, and *Prieto*—that Plaintiffs may be housed on Polunsky Death Row without any due process protections.

Even if the Court disregards this weight of authority and finds that Plaintiffs have a liberty interest in avoiding their current housing, it should still dismiss Plaintiffs' due process claims because Plaintiffs were provided adequate procedural safeguards at their criminal trials.  Mot. at 30-33.  Plaintiffs object on the grounds that their criminal juries, in determining that they faced a "continuing threat to society," focused on their "threat to the public if released, and not their security classification

---

the housing of female death row inmates is irrelevant in determining the atypicality of their conditions.

while in prison." Opp. at 26. For one thing, that is simply not true. *See Boggess v. Johnson*, 132 F.3d 1454 (5th Cir. 1997) (explaining that Texas's future dangerousness inquiry is "not limited to dangerousness to free society but include[s] danger to others in the prison milieu, including guards"); *see also Muniz v. State*, 851 S.W.2d 238, 250 (Tex. Crim. App. 1993). But, more importantly, the focus of Plaintiffs' criminal juries is ultimately irrelevant. In order for Plaintiffs' sentencing to suffice as due process for their housing on Polunsky Death Row, all that matters is that Plaintiffs received constitutionally adequate procedural safeguards during sentencing, and that their housing flowed automatically from their criminal sentence. *See Does 1-7 v. Abbott*, 945 F.3d 307, 312-13 (5th Cir. 2015).[11] Because Plaintiffs do not deny either of these points, and because all four *Mathews* factors weigh in their favor (Mot. at 31-33), the Court should find that no additional process is required.

### G. Plaintiffs fail to state a viable access-to-counsel claim.

Plaintiffs' constitutional access-to-counsel claims fail for four overlapping reasons. *First*, as Plaintiffs tacitly admit, all inmates other than Ward have exhausted their criminal appeals and no longer enjoy a right to counsel under the Sixth Amendment. Mot. at 33-34; Opp. at 28. *Second*, none of the Plaintiffs have articulated actual legal prejudice to existing or contemplated litigation, which, in addition to being necessary to confer standing, is required to state an access-to-counsel or access-to-courts claim under the First or Sixth Amendments. Mot. at 34-35; *Christensen v. Scott*, 95 F.3d 46 (5th Cir. 1996) (affirming dismissal where inmate complained about interruptions with attorney calls but "failed to allege the element of legal prejudice."). *Third*, all of the alleged restrictions on Plaintiffs' access to counsel, including any alleged interference with their attorney-client communications, are

---

[11] In *Does*, the Fifth Circuit held that sex offenders could be required to register (and could be subjected to all associated restrictions) without additional due process because they had received adequate process during their criminal trials and the registration requirement flowed automatically from their conviction. 945 F.3d at 312-13. Importantly, the court did not further require that registration or its restrictions had to be explicitly anticipated during trial. Thus, it follows that Plaintiffs' criminal sentences can suffice to place them on Polunsky Death Row even if their juries were completely unaware of the housing implications of sentencing.

constitutionally permissible.  Mot. at 35.  *Fourth*, Plaintiffs' allegations do not state an access-to-courts

claim under the Fourteenth Amendment (Opp. at 31-33), because that right "has not been extended

to encompass more than the ability of an inmate to prepare and transmit a necessary legal document

to a court." *Porras v. Sanchez*, No. 13-cv-248, 2014 WL 2118085, at *8 (W.D. Tex. May 21, 2014) (citing

*Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)).

Faced with these obstacles to obtaining relief under the Constitution, Plaintiffs rely on various

statutes to supply the foundation for their access-to-counsel claims.  This strategy is unsuccessful.

Plaintiffs first rely on Article 11.071(a) of the Texas Code of Criminal Procedure, which

entitles state habeas petitioners to "competent counsel" in death penalty cases, but does not create a

private cause of action or waive sovereign immunity in federal court.  Mot. at 15.[12]  Next, Plaintiffs

rely on 28 U.S.C. §§ 2254(h) and 2255(g), which merely state that the government "may" appoint

counsel in post-conviction proceedings.  Mot. at 14-15.  Finally, Plaintiffs rely on 18 U.S.C. § 3599,

which, although "provid[ing] funding to indigent capital defendants for attorneys and related services,

. . . does not confer jurisdiction on the federal courts to compel state action."  *Beatty v. Lumpkin*, No.

4:09-cv-225, 2022 WL 5417480, at *1 (E.D. Tex. Sept. 16, 2022), *aff'd*, 52 F.4th 632 (5th Cir. 2022);

Mot. at 14.  Contrary to Plaintiffs' contention (Opp. at 29, n.15), the Fifth Circuit's *Beatty* decision

clearly construes Section 3599 as only providing *funding* for counsel, thus foreclosing enforcement

through Section 1983.  *See Beatty*, 52 F. 4th at 636 (contrasting Section 3599 with Section 1983 and

other statutes which "specifically grant causes of action that provide a federal court with jurisdiction

---

[12] Plaintiffs argue that, because Article 11.071(a) creates an entitlement to counsel, "Defendants' arbitrary interference with Plaintiffs' access to counsel [under Article 11.071(a)] violates the Fourteenth Amendment and is thus enforceable under § 1983."  Opp. at 31.  In support of this novel theory, Plaintiffs tellingly cite only to the concurring opinion in *Ex parte Alvarez*, an inapposite Texas Court of Criminal Appeals case holding that ineffective assistance of counsel during capital collateral proceedings cannot form the basis for habeas relief. 468 S.W.3d 543 (Tex. Crim. App. Apr. 29, 2015).  While the concurring judges in *Alvarez* opined in dicta that bad lawyering in state habeas proceedings may be actionable under the Due Process Clause in capital cases because Section 11.071 created an entitlement to "competent counsel" (*id.* at 547-48), nothing in their non-binding opinion implied that prison restrictions on access to counsel would be similarly actionable.

to issue a remedy"); *see also Bowles v. Desantis*, No. 4:19CV319, 2019 WL 10631192, at *3 (N.D. Fla. July 19, 2019) ("By its plain terms, [S]ection 3599 does not place an obligation on the States at all.").

### H. Plaintiffs fail to state a viable retaliation claim.

As already explained, Plaintiffs fail to meet the "adverse act" element required for a viable retaliation claim under the First Amendment. Mot. at 35-37. The unit-wide application of new rules for attorney contact is far too general to constitute an adverse act, and the only specific application of those new rules to Plaintiffs—Cummings's alleged inability to meet with his habeas attorney on one specific date (FAC at ¶ 82)—was *de minimis*. *See Morris v. Powell*, 449 F.3d 682, 685-86 (5th Cir. 2006); *Huff v. Jackson*, No. C-11-149, 2223815, at *5 (S.D. Tex. June 7, 2011) (dismissing inmate's retaliation claim because he alleged "only <u>single incidents</u> in which a defendant allegedly denied a meal, or shower, or other privilege, which punishments are *de minimis* and do not establish an adverse retaliatory act.") (emphasis added). Similarly, neither the alleged use of threatening language to Cummings' attorney (FAC at ¶ 82) nor the alleged presence of eleven guards during Ward's phone call with his attorney (*id.* at ¶ 84) can suffice as adverse acts. *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010) ("'[Plaintiff] has not stated a retaliation claim because he has alleged only a threat, but no retaliatory adverse act.")

Plaintiffs' reliance on *Brown v. Taylor*, 911 F.3d 235 (5th Cir. 2018) and *Jackson v. Cain*, 854 F.2d 1235 (5th Cir. 1989) is misplaced. Opp. at 34-35. While the Fifth Circuit implied in both cases that threats could be evidence of retaliatory motive and causation, it never held that a threat could *by itself* constitute a sufficient adverse act. *Brown*, 911 F.3d at 246; *Jackson*, 864 F.2d at 1239. The alleged adverse acts in *Brown* and *Jackson*, respectively, were the plaintiff's rejection from a sex offender treatment facility—which "led to his subsequent arrest for violating the terms of his commitment order and 7-month confinement in county jails"—and the plaintiff's transfer to another prison, where "the difficulty of his work increased." *Id.* Because Plaintiffs do not allege adverse acts even remotely approaching this level of severity or duration, their retaliation claim must be dismissed.

18

**I.  Defendants are entitled to qualified immunity.**

Qualified immunity attaches when a state official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (internal quotation omitted).  While the "clearly established" requirement "do[es] not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question <u>beyond debate</u>." *Id.* (emphasis added).  Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to identify "authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  Because Plaintiffs fail to meet this burden with respect to any of their claims, dismissal of all individual-capacity claims Defendants is required.  *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022).

*First*, it is not "beyond debate" that Defendants' alleged actions violate the Eighth Amendment.  The Fifth Circuit has made clear that "long-term solitary confinement is not per se cruel and unusual," *Hope*, 861 F. App'x at 582, and Plaintiffs cannot point to any authority indicating that any of the specific conditions giving rise to their alleged injuries are sufficiently extreme to satisfy the Eighth Amendment's objective component.  *See* Mot. at 17-24; Section II.D-E, *supra*.  Nor can Plaintiffs point to any authority indicating that supervisory prison officials may be held liable for the adverse effects of prison conditions where those officials were not personally involved in creating the conditions (i.e., medical care, food deprivations) or lacked knowledge of a substantial risk posed by their conditions (i.e., mold exposure, recreation deprivations).  *Id.*  Defendants therefore retain their entitlement to qualified immunity.  *See Thunderhorse*, 2020 WL 3002220, at *2 (Hawthorne, J.) (Collier and other high-level prison officials were entitled to qualified immunity in conditions-of-confinement case where the inmate failed to allege facts evincing personal involvement).

*Second,* it is not "beyond debate" that Defendants' alleged actions violate the Due Process

Clause.  Quite the opposite: the Fifth Circuit has concluded that where, as here, inmates are automatically housed in certain conditions based on their death sentences, the inmates have no liberty interest in avoiding those conditions and are not entitled to due process protections. *Parker*, 642 F.2d 865, 874, n.7.  But even if the Court rejects *Parker*, its holding—plus the holding in *Prieto* and the absence of any other Fifth Circuit or Supreme Court case addressing this unique scenario—would reasonably lead officials to believe that it was constitutionally permissible to house Plaintiffs on Polunsky Death Row without any individualized review.  Moreover, the Fifth Circuit's reasoning in *Does* strongly implies that, even if Plaintiffs had a liberty interest in avoiding their current housing, the process they received during sentencing would be sufficient.  945 F.3d 307, 312-13; *supra* n.11.

*Third*, it is not "beyond debate" that Defendants' alleged actions violate Plaintiffs' right to access counsel.  Courts have found that restrictions on the nature, frequency and privacy of attorney communications comparable to those alleged by Plaintiffs are constitutionally permissible.  Mot. at 35.  By contrast, courts have *not* expanded the Sixth Amendment to provide a right to counsel after the first direct appeal, courts have *not* allowed access-to-counsel claims to succeed without a showing of actual prejudice, and courts have *not* recognized Section 1983 as a vehicle for enforcing a right to counsel under 18 U.S.C. § 3599, 28 U.S.C. §§ 2254-55, or Article 11.071(a) of the Texas Code of Criminal Procedure.  Mot. at 14-15, 33-34; Section II.G., *supra*.

*Finally*, it is not "beyond debate" that Defendants retaliated against Plaintiffs in violation of the First Amendment.  Mot. at 35-37; Section II.H, *supra*.  There is no authority indicating that a threatening statement, the cancellation of one attorney visit, or the presence of guards during a phone call constitute retaliatory adverse acts, and there is plenty of authority suggesting that they cannot.  *Id.*

## III.    CONCLUSION

For the reasons in their Motion and herein, Defendants respectfully request that the Court dismiss all of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

**ANGELA COLMENERO**
Provisional Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for
Civil Litigation

**SHANNA E. MOLINARE**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General
Texas State Bar No. 24126986
Michael.Calb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I, **MICHAEL J. CALB**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing has been served to all attorneys of record by the Electronic Case Filing System of the Eastern District of Texas on August 30, 2023.

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General

21