IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| **MARK ROBERTSON,** *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 9:23-CV-0023 |
| | § | |
| **BRYAN COLLIER,** *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMEDNATION**

Defendants, through the Office of the Attorney General of Texas, respectfully file these objections to Magistrate Judge Hawthorn's October 8, 2025 Report and Recommendation. D.E. 58.

**I.  STATEMENT OF THE CASE**

Plaintiffs are five TDCJ inmates who were duly convicted of capital offenses. Through this putative class action, Plaintiffs assert various constitutional and statutory challenges to their alleged conditions and restrictions on Polunsky Death Row. Defendants moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.E. 28 ("MTD"). On October 8, 2025, Magistrate Judge Hawthorn issued a Report and Recommendation to grant in part and deny in part Defendants' MTD. D.E. 58 ("R&R"). Specifically, Judge Hawthorn recommended that *all* of Plaintiff's claims should be dismissed *except* for the following: (1) Plaintiffs' official-capacity and individual-capacity Eighth Amendment conditions-of-confinement claims for equitable relief and monetary damages, respectively; and (2) Plaintiffs official-capacity Fourteenth Amendment due process claims for equitable relief . R&R at 14-43.[1] As described below, the Court should overrule Judge Hawthorn's R&R to the extent it recommends retaining these claims.

---

[1] Judge Hawthorn unambiguously concluded that Plaintiffs' individual-capacity Fourteenth Amendment due process claims for damages are barred by Defendants' qualified immunity. R&R at 41-42. Thus, the omission of those claims from his bulleted list of claims recommended for dismissal (*id.* at 43) was clearly mistaken.

1

II. **OBJECTIONS TO MAGISTRATE JUDGE HAWTHORN'S R&R**

    1. **The R&R erred by conflating the objective and subjective components of Plaintiffs' Eighth Amendment claims, lumping disparate conditions together in assessing the objective component, and assuming collective knowledge in assessing the subjective component.**

A prisoner must satisfy a two-part test, consisting of an objective and a subjective component, to state an Eighth Amendment conditions-of-confinement claim. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). First, under the objective component, a prisoner must allege the existence of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities, as when it denies the prisoner some basic human need." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). Second, under the subjective component, a prisoner must establish "that the responsible prison officials acted with deliberate indifference to his conditions of confinement." *Id.*.

The R&R improperly conflated these two components. In considering the *objective* component, the R&R found that "Plaintiff's allegations—collectively—demonstrate that Defendants intended a risk of serious harm or intentionally ignored the risk." R&R at 28. But whether Defendants ignored a risk goes to the *subjective* component. *See Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (deliberate indifference requires that the official "(1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively 'drew the inference' that the risk existed; and (3) disregarded the risk."; and (3) disregarded the risk.") (quotation omitted). In considering the objective component, the Court must assess the specific alleged conditions and ask—independently of Defendants' involvement—whether they are sufficiently "extreme" so as to deny Plaintiffs some basic human need. *Harper*, 174 F.3d at 720; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To the extent the R&R did assess Plaintiffs' alleged conditions on death row objectively, it erred by lumping disparate conditions together to find a violation. As the Fifth Circuit has made clear:

> Conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but **only** when they have a mutually enforcing effect that produces the deprivation of a **single, identifiable human need**.

2

*Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304, (1991)) (emphasis added). The R&R (at 29-30) violates this rule by considering all of Plaintiffs' alleged conditions together despite the fact that these conditions—mold exposure, rotten food, insect infestations, lack of recreation, lack of mattresses, and inadequate medical care—deprive Plaintiffs of different human needs; namely, hygiene, food, sleep, exercise, and medical care.[2] *See, e.g.*, *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (recognizing sleep, food, exercise, and medical attention as distinct human needs); *Payne v. Almanza*, No. 1:18-CV-0175-BL, 2019 WL 1932760, at *6 (N.D. Tex. May 1, 2019) (recognizing hygiene as a distinct human need and clarifying that deprivations of different human needs cannot combine to satisfy the Eighth Amendment's objective component).

Instead of lumping all of Plaintiffs' disparate alleged conditions together, the Court must determine whether each alleged condition is sufficiently extreme to satisfy the Eighth Amendment's objective component.[3] As described at length in Defendants' MTD—and at least partially conceded in the R&R—none of Plaintiffs' alleged conditions pass this threshold. *See* MTD at 18-22, 24-25; D.E. 36 ("MTD Rep.") at 6-12; R&R at 30 ("[A]llegations of mold, rotten food, and insect infestations might not rise to the level necessary to state a viable Eighth Amendment Claim if considered individually."); *Umondak v. Ginsel*, 426 F. Appx. 267, 269 (5th Cir. 2011) (allegation that inmate was denied out-of-cell exercise for 25 days could not support Eighth Amendment claim); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir.1999) (finding denial of eight meals over seven month period did not state a claim); *Young v. McCain*, 760 F. App'x 251, 257 (5th Cir. 2019) (affirming dismissal of Eighth Amendment claim premised on denial of "mattress, sheets, and blankets for 60 days").

---

[2] The case cited in the R&R for this "totality of the circumstances" approach specifically limited the approach to conditions which combine to deprive the inmate of a single human need. *Conley v. Tangipahoa Par. Jail*, No. CV 23-860, 2023 WL 9209640, at *6 (E.D. La. Dec. 20, 2023) (quoting *Wilson*, 501 U.S. at 304).

[3] In doing so, the Court should only consider conditions as to which Plaintiffs have standing to sue. For example, the R&R erred by considering insect manifestations and lack of mattresses after holding that Plaintiffs were not injured by (and thus lack standing to challenge) those conditions. *See* R&R at 21-22, 29-30.

At the very *least*, the absence of binding case law holding that any of Plaintiffs' alleged conditions are unconstitutional—coupled with the case law holding that solitary confinement "is not per se cruel and unusual"—means that Defendants are entitled to qualified immunity. *See* MTD at 38-39; MTD Rep. at 19; *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (for a right to be "clearly established," so as to overcome qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate."); *Hope v. Harris*, 861 F. Appx. 571, 582 (5th Cir. 2021); *Hutto v. Finney*, 437 U.S. 678, 686 (1978); *Dillard*, 2022 WL 3045747, at *24 (N.D. Tex. June 17, 2022) (holding that qualified immunity barred Eighth Amendment claim premised on prolonged solitary confinement because there were no alleged extreme hygiene-related deprivations).

Turning to the Eighth Amendment's subjective component, the R&R erred in determining that "Defendants were put on notice [of the risks posed by Plaintiffs' conditions] through the grievance process and multiple requests for medical treatment." R&R at 31-33. None of the officials actually responsible for responding to Plaintiffs' grievances or medical requests have been sued, and Defendants cannot be held vicariously liable for those unnamed officials' actions or inactions. *See* MTD at 23-26; MTD Rep. at 8-12; *Thunderhorse v. Collier*, No. 9:17-cv-196, 2020 WL 3002220, at *2 (E.D. Tex. Feb. 20, 2020) (Hawthorne, J.) (holding that Collier and other high-level prison officials were entitled to qualified immunity in conditions-of-confinement case where the inmate failed to allege facts evincing personal involvement). Moreover, the R&R (at 40) fails to undertake the required defendant-by-defendant analysis for determining qualified immunity. *See Lopez v. Ramirez*, No. 23-40461, 2024 WL 1168048, at *1 (5th Cir. Mar. 15, 2024) ("[A] district court errs by failing to consider each officer's assertion of qualified immunity individually and by instead considering the officers' actions together."); *Sanders v. Gibson*, No. 23-11196, 2025 WL 1029440, at *3 (5th Cir. Apr. 7, 2025) (reversing and remanding order denying motion to dismiss because it "did not provide an individualized analysis as to each defendant's entitlement to qualified immunity.").

2.  **The R&R erred in finding that Defendants have a liberty interest in avoiding their current housing and are being denied sufficient process.**

To state a Fourteenth Amendment due process claim, Plaintiffs must establish that (1) they were deprived of a property or liberty interest, and (2) such deprivation took place without sufficient procedural safeguards. *See Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). The R&R erred in finding that Plaintiffs have met either requirement.

In *Parker v. Cook*—a case cited nowhere in the R&R—the Fifth Circuit held that death row inmates have no liberty interest in avoiding their conditions of confinement when the state has a blanket policy of automatically and indefinitely housing *all* death row inmates in those conditions. 642 F.2d 865, 874, n.7 (5th Cir. 1981). Since then, other circuits have reached the same conclusion: inmates housed on death row automatically on the basis of their sentence have no liberty interest in avoiding the conditions on death row and may be housed in those conditions without individualized review. *See, e.g.*, *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) ("[I]n light of [state policy], which expressly mandated his confinement [on death row], appellant had no basis to claim to be the beneficiary of any state-created liberty interest."); *Prieto v. Clarke*, 780 F.3d 245, 252-55 (4th Cir. 2015) (death row inmate could be housed in solitary confinement without due process where policy foreclosed other housing).

In *Prieto*, the most recent appellate case to squarely consider this scenario, the Fourth Circuit underwent a two-step analysis to determine whether the death row inmate had a liberty interest in his conditions of confinement. First, it asked the "threshold question" of whether a liberty interest in avoiding death row conditions "arise[s] from state policies or regulations." 780 F.3d at 248 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005)). Second, it asked whether the confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). Plaintiffs and Judge Hawthorn object to the first step of this analysis, arguing that it is precluded by *Sandin*. D.E. 32 at 21-22; R&R at 33 n.11. Defendants disagree, but this Court need not take a side in that debate to adopt *Prieto*'s conclusion.

5

Applying the *Sandin* test—which both Plaintiffs and Judge Hawthorn insist is the only relevant inquiry (*id.*)—the Fourth Circuit ruled that an inmate's conditions on death row cannot constitute an "atypical and significant hardship" when exposure to those conditions is automatic based on his sentence:

> When determining the baseline for atypicality, a court must consider whether the confinement conditions are imposed on a prisoner because of his conviction and sentence. For conditions dictated by a prisoner's conviction and sentence are the conditions constituting the 'ordinary incidents of prison life' for that prisoner. . . . [An inmate] can only be deprived of that to which he is entitled. In determining whether a deprivation imposes a significant or atypical hardship on him, the court must use as its benchmark the incidents of prison life to which he is entitled. Virginia imposes death row confinement on capital offenders because of the crime they have committed and the sentence they have received. That confinement is the expected—indeed mandated—confinement condition flowing from the conviction and sentence.

*Prieto*, 780 F.3d at 253-54 (quoting *Sandin*, 515 U.S. at 484).

According to the Plaintiffs and Judge Hawthorn, the Court should disregard *Prieto*'s application of the *Sandin* test and instead simply determine, as the Supreme Court and Fifth Circuit determined in *Wilkinson* and *Wilkerson*, respectfully, that their conditions "pose an 'atypical and significant hardship under any possible baseline.'" D.E. 32 at 23-24 (quoting *Wilkinson*, 545 U.S. at 223); *Wilkerson v. Goodwin*, 774 F.3d 845, 854 (5th Cir. 2015); R&R at 34-36. But neither *Wilkinson* nor *Wilkerson* involved a discrete class of inmates challenging conditions imposed *automatically* as the result of their sentences. Rather, they only considered whether due process was required to subject inmates to conditions that were discretionary and unassociated with a particular sentence. *Wilkinson*, 545 U.S. at 216; *Wilkerson*, 774 F.3d at 848-99. Nothing in their holdings implies that similar conditions pose an atypical and significant hardship compared to the ordinary incidents of prison life where—as in *Parker*, *Prieto*, and here—the inmates were automatically housed on death row because of their sentences and had no possibility of avoiding those conditions. *See Rezaq v. Nalley*, 677 F.3d 1001, 1013 (10th Cir. 2012) ("The ordinary incidents of prison life will differ depending on a particular inmate's conviction.")

By Plaintiffs' own account, it has been TDCJ's "blanket policy" for over 20 years to "automatically" and "indefinitely" place all male inmates with death sentences on Polunsky Death

Row. Am. Compl. at ¶¶ 2, 8, 86-87 92-93. Plaintiffs cite no exceptions to that policy, and indeed filed this lawsuit to reverse that policy. *Id.* Thus, the appropriate benchmark for the atypicality of Plaintiffs' conditions on Polunsky Death Row is the conditions of other inmates on Polunsky Death Row. *See Prieto*, 780 F.3d at 254; *Incumaa v. Stirling*, 791 F.3d 517, 529 (5th Cir. 2015). And since Plaintiffs do not allege that their conditions are *worse* than those of other inmates on Polunsky Death Row, their conditions cannot constitute an "atypical" hardship giving rise to a liberty interest.

Notably, while *Parker* predated *Sandin* and thus did not explicitly apply the "atypicality" analysis, there is no reason to believe that the Fifth Circuit's reasoning or conclusion would be altered if *Parker* were decided today. In holding that Florida death row inmates had no liberty interest in avoiding solitary confinement, the *Parker* court found dispositive that "death row inmates are never placed in the general population or given an *expectation* of being placed in the general population." *Parker*, 642 F.2d at 874 n.7 (emphasis added). This reasoning is entirely consistent with *Sandin*, which held that prison conditions are not "atypical" so long as they remain "within the range of confinement to be normally *expected* for one serving [a particular sentence]." *Sandin*, 515 U.S. at 486-88; *see also Prieto*, 780 F.3d at 254 (holding that solitary confinement could not be "atypical" if it was "the *expected*—and indeed mandated—confinement flowing from the conviction and sentence") (emphasis added). Therefore, the Court has no reason to disturb the precedent set in *Parker* and should find— in line with that precedent, *Sandin*, and *Prieto*—that Plaintiffs may be housed on Polunsky Death Row without any due process protections because they have no liberty interest in being housed elsewhere.

Even if the Court disregards this weight of authority and finds that Plaintiffs have a liberty interest in avoiding their current housing, it should still dismiss Plaintiffs' due process claims because Plaintiffs were provided adequate procedural safeguards at their criminal sentencing. *See* MTD at 30-33 (explaining Texas's capital sentencing scheme and the myriad procedural protections it affords). In order for Plaintiffs' sentencing to suffice as due process for their housing on Polunsky Death Row, all

7

that matters is that (1) Plaintiffs received constitutionally adequate procedural safeguards during sentencing, and (2) their housing flowed automatically from their criminal sentences. *See Does 1-7 v. Abbott*, 945 F.3d 307, 312-13 (5th Cir. 2015).[4] Because Plaintiffs do not deny either of these points, the Court should find that no additional process is required.

The R&R ignores this argument entirely, instead conducting a cursory application of the *Matthews* factors to determine that the process afforded is insufficient. R&R at 36-38 (citing *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). But these factors—private interest, risk of erroneous deprivation, and public interest—cannot be assessed in a vacuum without taking into account that Plaintiffs' received ample process during sentencing, and that their current conditions "turn on [their] conviction alone." *Does*, 945 F.3d at 312 (quotation omitted). First, as discussed above, Plaintiffs have no private interest in avoiding their current housing because *all* male capital offenders are automatically housed on Polunsky Death Row.[5] Second, there is no risk of erroneous deprivation by denying Plaintiffs of individualized classification reviews because their future dangerousness was already assessed during sentencing. Finally, requiring TDCJ to conduct individualized classification reviews would be contrary to the State's interest in avoiding relitigating questions already decided by Plaintiffs' criminal juries—not to mention the extra time and money required to periodically review each inmate's file.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court overrule Magistrate Judge Hawthorn's R&R the extent it recommends denying Defendants' MTD in part and dismiss Plaintiffs' Amended Complaint in its entirety.

---

[4] In *Does*, the Fifth Circuit held that sex offenders could be required to register (and could be subjected to all associated restrictions) without additional due process because they had received adequate process during their criminal trials and the registration requirement flowed automatically from their conviction. 945 F.3d at 312-13. Although the context is different, the reasoning is identical and should be applied here.

[5] The R&R (at 37) notes that Plaintiffs' alleged conditions violate TDCJ's written death row policy, but violation of prison policy does not equate to a constitutional violation. *See Moreno v. Bunton*, 193 F.3d 518 (5th Cir. 1999).

8

Respectfully submitted,

| | |
|---|---|
| **KEN PAXTON**<br>Attorney General of Teas | */s/ Michael J. Calb*<br>**MICHAEL J. CALB**<br>Assistant Attorney General |
| **BRENT WEBSTER**<br>First Assistant Attorney General | Attorney-In-Charge<br>Texas State Bar No. 24126986<br>Michael.Calb@oag.texas.gov |
| **RALPH MOLINA**<br>Deputy First Assistant Attorney General | Law Enforcement Defense Division<br>Office of the Attorney General |
| **AUSTIN KINGHORN**<br>Deputy Attorney General for Civil Litigation | P.O. Box 12548<br>Austin, Texas 78711-2548<br>(512) 463-2080 |
| **BRIANA M. WEBB**<br>Chief, Law Enforcement Defense Division | **COUNSEL FOR DEFENDANTS** |

## CERTIFICATE OF SERVICE

I, **MICHAEL J. CALB**, Assistant Attorney General of Texas, certify that a true copy of the foregoing has been served to all parties of record by the Electronic Case Files System of the Eastern District of Texas on November 13, 2025.

*/s/ Michael J. Calb*
**MICHAEL J. CALB**
Assistant Attorney General