UNITED STATES DISTRICT COURT       EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MARK ROBERTSON,<br>GEORGE CURRY,<br>TONY EGBUNA FORD,<br>RICKEY CUMMINGS, and<br>LUCKY WARD,<br><br>     Plaintiffs,<br><br>*versus*<br><br>BRYAN COLLIER,<br>BOBBY LUMPKIN,<br>DANIEL DICKERSON,<br>CRYSTAL ANTHONY,<br>DOES 1-10, and<br>RONALD IVEY,<br><br>     Defendants. | § § § § § § § § § § § § § § § § § § § | CASE NO.  9:23-CV-00023-MAC |

**MEMORANDUM AND ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals ("Class Members") incarcerated on death row at the Allan B. Polunsky Unit ("Polunsky Death Row Unit" or "Polunsky Unit"), a facility operated by the Texas Department of Criminal Justice, pursuant to 42 U.S.C. § 1983.  Plaintiffs filed their *Original Complaint* on January 26, 2023, in the Southern District of Texas, Houston Division, and it was transferred to the Eastern District of Texas, Lufkin Division, on January 30, 2023.  Dkt. #1, 7.  Plaintiffs filed an *Amended Complaint* against Defendants on May 11, 2023, seeking relief under 18 U.S.C. § 3599, 28 U.S.C. §§ 2202, 2254, and 2255, Article 11.071(a) of the Texas Code of Criminal Procedure, the Texas Constitution, and 42 U.S.C. § 1983.  Dkt. #22.  Defendants filed a *Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1)*

1

*and 12(b)(6)* on July 10, 2023 (Dkt. #29), and Plaintiffs filed a response on August 9, 2023 (Dkt. #32). The court referred the matter to United States Magistrate Judge Zack Hawthorn for consideration and recommended disposition. Judge Hawthorn issued his report recommending dismissal, in part, on October 8, 2025. Dkt. #58. Defendants filed timely objections (Dkt. #62) and the Plaintiffs responded (Dkt. #63). The court considered the objections, conducted a *de novo* review, and finds no reason to depart from the magistrate judge's recommended disposition. Accordingly, the court overrules the objections and adopts the magistrate judge's report and recommendation.

## I.    BACKGROUND

Plaintiffs' *Amended Complaint* alleges:

> Defendants' policy and practice of automatically placing all death row prisoners at the Polunsky Death Row Unit in unsafe and unhygienic conditions of permanent solitary confinement has deprived, and continues to deprive, Plaintiffs and Class Members of their constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the U.S. Constitution. Specifically . . . Defendants' policies and practices are cruel and unusual because they deprive prisoners in the Polunsky Death Row Unit of the minimal civilized measure of life's necessities and inflict unnecessary and wanton pain that has resulted—and, without court intervention, will continue to result—in severe psychological and physical injury to Plaintiffs and Class Members.

Dkt. #22, p. 41. Defendants seek dismissal for, *inter alia,* Plaintiffs' failure to adequately plead any constitutional claims. The magistrate judge recommended that Plaintiffs lack standing to assert claims for injunctive or declaratory relief regarding F-Pod, insects, access-to-counsel, retaliation, showers, and mattresses. He recommended granting the motion to dismiss as to:

- claims brought pursuant to the Texas Constitution;
- Sixth Amendment claims of Right to Counsel; and
- First Amendment claims for Retaliation.

2

The magistrate judge recommended denying dismissal as to Plaintiffs':

- Eighth Amendment "conditions-of-confinement" claims of
    - Permanent Solitary Confinement in Unsafe and Unhygienic Conditions; and
    - Inadequate Access to Medical Care; and
- Fourteenth Amendment Due Process claims.

The magistrate judge also found that Defendants are entitled to qualified immunity on claims of denial of due process in solitary confinement but are not entitled to qualified immunity on claims related to conditions of confinement.

## II.    STANDARD OF REVIEW[1]

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (internal quotation marks omitted). The Supreme Court further defined the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Objections to a magistrate judge's report and recommendation are governed by Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), requiring written objections within 14 days and *de novo* review of properly objected-to portions. Conducting *de novo* review, the court examines the entire record and makes an independent assessment under the law. *See Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017).

---

[1] Neither party objects to the magistrate judge's recommendation that Plaintiffs lack standing to assert claims for injunctive or declaratory relief regarding F-Pod, insects, access-to-counsel, retaliation, showers, and mattresses. Therefore, any challenge to that determination is waived and the court need not address the Rule 12(b)(1) legal standard.

### III.     <u>OBJECTIONS</u>

Defendants object to the magistrate judge's recommendation to retain claims on (1) Plaintiffs' official capacity and individual capacity Eighth Amendment conditions-of-confinement claims for equitable relief and monetary damages, respectively; and (2) Plaintiffs' official-capacity Fourteenth Amendment due process claims for equitable relief.[2]

#### A. Eighth Amendment Claims

The Eighth Amendment requires prison officials to provide "humane conditions of confinement" with due regard for inmate health and safety. *Valentine v. Collier*, 978 F.3d 154, 162-63 (5th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 837 (1994)). To show a violation of the Eighth Amendment, the plaintiff must prove: (1) objective exposure to a substantial risk of serious harm; and (2) that prison officials acted or failed to act with deliberate indifference to that risk, which resulted in extreme deprivation of the minimal civilized measure of life's necessities. *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017); *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). "*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted); *see e.g.*, *Foulds v. Corley*, 833 F.2d 52 (5th Cir. 1987) (inmate forced to sleep on floor with rats crawling over him alleged a viable cause of action); *Bienvenu v. Beauregard Par. Police Jury*, 705 F.2d 1457 (5th Cir. 1983) (allegations of a cold, rainy, roach-infested jail cell with inoperative toilet facilities stated a cause of action);

---

[2] Neither party objected to the magistrate judge's recommendation to dismiss all other claims.

*Amos v. Cain*, No. 4:20-CV-7-DMB-JMV, 2021 WL 1080518, at \*14 (N.D. Miss. 2021) ("A leak, without more, does not deprive an inmate of life's necessities. However, the Eighth Amendment may be implicated when the leak conspires with other conditions (such as exposed electrical wires or raw sewage) to place the safety of inmates at risk.") (citation omitted); *see generally Rhodes v. Chapman,* 452 U.S. 337 (1981) (conditions of confinement evaluated under contemporary standards of decency). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305.

Plaintiffs allege that the indefinite and automatic placement of death row inmates in restrictive housing—coupled with unsanitary, unsafe, and inhumane conditions and inadequate medical care—violates the Eighth Amendment. Dkt. #22, p. 35-36. The magistrate judge found the allegations, when considered collectively, satisfy Plaintiffs' burden to adequately plead an Eighth Amendment violation. Defendants object that the magistrate judge improperly conflates the objective and subjective components of the Eighth Amendment claims, lumps disparate conditions together in assessing the objective component, and improperly assumes collective knowledge in assessing the subjective component.[3] Plaintiffs respond that the magistrate judge clearly applied the two-prong analysis (objective *and* subjective) and the standards prescribed in *Wilson* to find that indefinite solitary confinement coupled with the "multitude of unsafe and unhygienic conditions" and lack of medical care deprive Plaintiffs of their basic human needs.

---

[3] Defendants offer no authority to rebut Plaintiffs' allegations of the conditions of confinement. Instead, they simply assert that these conditions do not rise to the necessary level for an Eighth Amendment violation.

### 1. Objective Component

With respect to the first prong, a plaintiff must allege an objective exposure to a substantial risk of serious harm—that he incurred a serious deprivation of a basic human need and the conditions were objectively sufficiently serious or extreme. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Gobert*, 463 F.3d at 345. The deprivation must involve basic human needs such as food, clothing, medical care, and safe and sanitary living conditions—and must deny the inmate of the minimal civilized measure of life's necessities. *Hope v. Harris*, 861 F. App'x 571, 582 (5th Cir. 2021); *Rhodes*, 452 U.S. at 347-49. The conditions are measured against the standards of decency that mark the progress of a maturing society. *Rhodes* at 346-48.

Defendants argue that the magistrate judge erred when he "lumped disparate conditions together to find a violation."[4] Dkt. #62, p. 3 ("The R&R (at 29-30) [improperly considered] all of Plaintiffs' alleged conditions together despite the fact that these conditions—mold exposure, rotten food, insect infestations, lack of recreation, lack of mattresses, and inadequate medical care—deprive Plaintiffs of different human needs; namely, hygiene, food, sleep, exercise, and medical care."). Defendants further contend that the court must determine "whether each alleged condition is sufficiently extreme to satisfy the Eighth Amendment's objective component." Dkt. #62, p. 3.

---

[4] Defendants allege that the court should only consider conditions to which Plaintiffs have standing to sue (not insect infestations and lack of mattresses). They misstate the magistrate judge's findings. The magistrate judge found that Plaintiffs lack standing to sue for injunctive and/or declaratory relief for conditions in F-Pod, insects, access-to-counsel, retaliation, showers, and mattresses. At this stage in the litigation, these conditions are still relevant to the Eighth Amendment conditions-of-confinement claims for compensatory relief. Moreover, Defendants offer no legal authority why these conditions should not be considered collectively in consideration of Plaintiffs' Eighth Amendment claims as the magistrate judge stated in footnote 5 of his report. Accordingly, the magistrate judge's consideration of these conditions was proper.

Defendants are correct that an amorphous complaint of poor "overall conditions" is insufficient and that the objective inquiry requires deprivation so severe that it results in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Taylor v. Riojas*, 592 U.S. 7, 9 (2020) (recognizing Eighth Amendment violation where inmate was confined for four days in a feces-covered cell and moved to a frigid cell without a bed or working drain, forcing him to sleep in sewage). Defendants' objection mischaracterizes the magistrate judge's findings. The magistrate judge expressly acknowledged that certain alleged conditions, standing alone, might not independently violate the Eighth Amendment. Dkt. #58, p. 30 ("[U]nsavory allegations of mold, rotten food, and insect infestations might not rise to the level necessary to state a viable Eighth Amendment Claim if considered individually."). He nevertheless recognized that indefinite solitary confinement, lack of recreation, and inadequate medical care—when considered *with* the allegations of unhygienic exposure to mold and insects, rotten food, and lack of showers and mattresses—deny the Plaintiffs of safe, humane, and sanitary living conditions.[5]

---

[5] Defendants argue Plaintiffs did not allege unhygienic conditions. Dkt. #22, p. 29 ("Because Plaintiffs allege no such extreme deprivations of hygiene . . . ."). The court disagrees. Plaintiffs devote six pages of the *Amended Complaint* to a section entitled "Permanent Solitary Confinement in Unsafe and **Unhygienic** Conditions" (Dkt. #22, p. 17-21) (emphasis added) and describe the conditions as "unhygienic" sixteen times. *Id*. at p. 9, 11-16 (alleging that Plaintiffs' detention in **unhygienic** conditions of solitary confinement, along with the denial of access to medical care, both caused and exacerbated their health issues); p. 11 ("Prisoners in the Polunsky Death Row Unit are confined to tiny, **unhygienic** cells—often infested with black mold, cockroaches, and other vermin—for all but a few hours per week."); p. 15, 16 (describing Defendants' authorization of **unhygienic** conditions of confinement); p. 41 ("Defendants' policy and practice of automatically placing all death row prisoners at the Polunsky Death Row Unit in unsafe and **unhygienic** conditions of permanent solitary confinement has deprived, and continues to deprive, Plaintiffs and Class Members of their constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the U.S. Constitution."); p. 41 ("The unsafe and **unhygienic** conditions of the Polunsky Death Row Unit are evident to Defendants and to any reasonable person."); p. 43 ("[T]he serious physical and psychological deterioration that Plaintiffs and Class Members in this case have suffered due to their lengthy incarcerations in unsafe and **unhygienic** conditions."); p. 45 ("[P]risoners in the Polunsky Death Row Unit spend 22 to 24 hours of their day in **unhygienic** cells infested with black mold, cockroaches, and other vermin."); p. 56 ("Defendants' imposition of permanent solitary confinement in unsafe and **unhygienic** conditions.") (emphasis added).

This approach is consistent with the Supreme Court's guidance in *Wilson*, which provides that conditions of confinement may violate the Eighth Amendment "alone or in combination" when they have a "mutually enforcing effect" that deprives inmates of a single, identifiable human need. *Wilson*, 501 U.S. at 304 ("*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets."); *Hutto v. Finney*, 437 U.S. 678 (1978) (considering the inmate's diet, overcrowded cells, rampant violence, vandalized cells, and lack of professionalism on part of maximum security personnel to determine viability of Eighth Amendment claim); *see also Elder v. Bass*, No. 24-30653, 2025 WL 2219005, at *2 (5th Cir. Aug. 5, 2025) (applying "totality of the circumstances" to determine that plaintiffs satisfied the objective prong of a conditions-of-confinement claim); *Robertson v. Bass*, No. 24-30395, 2025 WL 416994, at *5 (5th Cir. Feb. 6, 2025) (remanding where district court erred in dismissing suit without permitting plaintiff to develop facts related to alleged deprivation of a functioning sewage system and exposure to biohazardous waste); *Burnette v. Bureau of Prisons*, 277 F. App'x 329, 331 (5th Cir. 2007) (per curiam) (properly pled Eighth Amendment claim where plaintiffs were "forced to share a trash bag as a toilet with an inmate who was mentally unstable" and who could not avoid "the smell or leaking of the bagged sewerage in his indoor cell because [Bureau of Prison] officials refused to allow the cell-mates to remove the bagged sewage and sealed the cell door with tape"); *Bienvenu*, 705 F.2d at 1460 (plaintiff stated an Eighth Amendment claim when he alleged that "the defendant party intentionally subjected him to a cold, rainy, roach-infested facility and furnished him with inoperative, scum-encrusted washing and toilet facilities" for two

weeks); *Patterson v. MacDougall*, 506 F.2d 1, 3 (5th Cir. 1975) (denying dismissal of Eighth Amendment claims where Plaintiffs alleged their place of confinement was infested with vermin, lacked beds and adequate lighting, and toilet facilities smeared with human waste); *Jackson v. Akwitti*, No. 1:23-CV-00093-BU, 2025 WL 3759284, at \*4 (N.D. Tex. Nov. 24, 2025), *R&R adopted*, No. 1:23-CV-00093-H, 2025 WL 3757773 (N.D. Tex. Dec. 29, 2025) (court considered plaintiff's combined conditions—"rats, urine-smelling mattress, no bunk or cot, overcrowding, backed up plumbing"—and determined they had a mutually enforcing effect of objectively depriving plaintiff of the basic human need of safe and sanitary living conditions).

Although the magistrate judge could have more precisely connected the violative condition(s) to the corresponding basic human need(s) it offends, the court concludes that he was correct to consider the totality of living conditions in the context of Plaintiffs' indefinite, permanent, solitary confinement in unhygienic conditions and lack of medical care. *See, e.g., Boyd v. Anderson*, 265 F. Supp. 2d 952 (N.D. Ind. 2003) (denying dismissal as premature where plaintiffs alleged they were detained in very small, filthy cells; were denied out-of-cell recreation; were deprived of personal hygiene items; were provided inadequate ventilation and an inadequate fire safety and smoke detection system; and were given unsanitary food). The court agrees that the alleged conditions, taken together, satisfy the objective component of an Eighth Amendment claim because they deprive Plaintiffs of basic human needs, including safe and sanitary living conditions and adequate medical care.

### 2. *Subjective Component (Deliberate Indifference)*

The magistrate judge concluded that Plaintiffs adequately pled the subjective prong of deliberate indifference by alleging that Defendants knew of and disregarded a substantial risk of serious harm. *See Farmer*, 511 U.S. at 837; *Hope,* 861 F. App'x at 583; *Cleveland v. Bell*, 938

F.3d 672, 676 (5th Cir. 2019).   Specifically, the magistrate judge referenced allegations that

Defendants failed to provide safe and hygienic conditions and medical care, which they knew

would cause harm:

> [Plaintiffs allege] that unhygienic, unsafe, and extreme conditions at the Unit negatively impact their overall health, and were so obvious and pervasive, that the Defendants were aware that the conditions violated their Eighth Amendment rights.   Plaintiffs allege that the Defendants were put on notice through the grievance process and multiple requests for medical treatment that were denied or ignored and despite this knowledge, Defendants failed to amend their practices or address the conditions of extreme social and sensory deprivation.   Defendants' pattern of denying routine and prescribed medical care—aggravated by the conditions at the Polunsky Death Row unit—satisfies Plaintiffs' burden to adequately allege that the Defendants were deliberately indifferent to their serious medical needs.

Dkt. #58, p. 32.   In reaching this conclusion, the magistrate judge credited Plaintiffs' allegations

of unsanitary conditions and specific instances of inadequate medical care—including withheld

medication, delayed treatment for a broken leg, and ignored requests for mental health

treatment—to find that Defendants acted with deliberate indifference by denying or ignoring

Plaintiffs' complaints, grievances, and requests for medical care.   Defendants object to this

finding, asserting that they lacked notice of the alleged risks and that "[n]one of the officials

actual responsible for responding to Plaintiffs' grievances or medical requests have been sued,

and Defendants cannot be held vicariously liable for the unnamed officials' actions or inactions."

Dkt. #62, p. 4.

Contrary to Defendants' argument, Plaintiffs allege that they submitted grievances and

complaints describing unsanitary conditions and unmet medical needs, including withheld

medication and requests for treatment that were refused, denied, or ignored.   They also allege the

unsafe and hygienic conditions were pervasive and obvious—such that a reasonable official

would have been aware of the substantial risk of serious harm, but Defendants nonetheless

disregarded it in deliberate indifference to Plaintiffs' health and safety.   *See* Dkt. #22, p. 35, 109-

10) ("The unsafe and unhygienic conditions of the Polunsky Death Row Unit are evident to Defendants and to any reasonable person.  Defendants have also been made aware of such conditions through administrative grievances, written complaints, letters, national media attention, and discussions with Plaintiffs, Class Members, and others.")

Accepting Plaintiffs' factual assertions as true, the court concludes that Plaintiffs allege objective exposure to a substantial risk of harm and deliberate indifference by Defendants. Accordingly, the court **OVERRULES** Defendants' objections and **ADOPTS** the magistrate judge's recommendation to deny dismissal of Plaintiffs' Eighth Amendment claims.

### B.  Fourteenth Amendment Claims

To invoke the procedural protections of the Fourteenth Amendment's Due Process Clause, Plaintiffs must establish two elements: first, that they were deprived of a protected liberty or property interest; and second, that the procedures employed by the State were constitutionally inadequate.  *Swarthout v. Cook*, 562 U.S. 216, 219 (2011) (per curiam); *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014).  Defendants object that the magistrate judge erred in finding that Plaintiffs[6] have a liberty interest in avoiding their current housing and are being denied sufficient process.  Instead, Defendants suggest that Plaintiffs may be housed in indefinite, solitary confinement without due process protections because they have no liberty interest in being housed elsewhere, or alternatively, Plaintiffs were afforded due process at

---

[6]  In their objections, Defendants state "The R&R erred in finding that *Defendants* have a liberty interest in avoiding their current housing and are being denied sufficient process."  Dkt. #62, p. 5 (emphasis added).  The court acknowledges this was a typographical error.

11

sentencing.[7] Plaintiffs respond with legal authority recognizing a liberty interest in avoiding indefinite solitary confinement, and argue that the magistrate judge properly considered both the duration and the conditions of confinement in evaluating the merits of Plaintiffs' claim.

### 1. *Protected Liberty Interest*

In determining whether a liberty interest exists, the proper inquiry focuses on whether the challenged confinement imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Many courts recognize inmates' due process right to avoid solitary confinement as clearly established. *Williams v. Sec'y Penn. Dep't of Corr.*, 848 F.3d 549, 569-572 (3d Cir. 2017) (collecting cases) ("It is now clear that the deprivations of protracted solitary confinement so exceed the typical deprivations of imprisonment as to be the kind of atypical, significant deprivation . . . which [can] create a liberty interest.") (internal citations omitted).

The Fifth Circuit requires consideration of the severity and duration of solitary confinement. *See LaVergne v. Stutes*, 82 F.4th 433 (5th Cir. 2023) (prisoner's nearly five years in solitary confinement were not sufficiently severe to violate his due process rights); *compare with Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (finding the following sufficiently severe: a "supermax facility" where placement was indefinite, almost all contact was prohibited, and placement disqualified the prisoner for parole consideration); *Wilkerson*, 774 F.3d at 855 (thirty-nine-year confinement in solitary confinement was sufficient); and *Bailey v. Fisher*, 647 F.

---

[7] Defendants also object to the magistrate judge's failure to reference *dicta* from *Parker v. Cook*, 642 F.2d 865, n.7 (5th Cir. 1981), which they contend held that "death row inmates have no liberty interest in avoiding their conditions of confinement when the state has a blanket policy of automatically and indefinitely housing all death row inmates in those conditions." Their reliance is unavailing because as the Plaintiffs correctly note, *Parker* is distinguishable. First, it addressed a Florida statute requiring all death row inmates be held in administrative segregation, in contrast to Texas law that lacks that requirement. Second, *Parker* was decided before *Wilkerson,* 774 F.3d 845, and *Wilkinson v. Austin,* 545 U.S. 209 (2005), which unequivocally confirmed that the relevant inquiry centers on the extreme nature of the hardship that a prisoner experiences, not on the particular statutory language.

App'x 472, 474-75 (5th Cir. 2016) (prisoner kept twenty-three to twenty-four hours per day in a cell with solid steel door and minimum visitation was sufficient).

As the magistrate judge noted, the Supreme Court's decisions in *Sandin* and *Wilkinson* provide the governing framework for assessing whether conditions of confinement constitute an "atypical and significant" hardship. Consistent with this precedent, the magistrate judge compared both the duration and alleged conditions of solitary confinement to Fifth Circuit cases where the court identified a liberty interest. Dkt. #58, p. 34-35 (citing *Hope*, 861 F. App'x at 571; *Bailey*, 647 F. App'x at 472; *Wilkerson*, 774 F.3d 845; *Hernandez*, 522 F.3d at 556).[8] Applying this standard, the magistrate judge considered the severity and duration of confinement to determine that Plaintiffs allege a liberty interest (conditions of which result in constant social and sensory deprivation, which in this case ranges from 5 to 26 years) without meaningful review. Dkt. #58, p. 35.

### 2. *Defendants' Procedures were Constitutionally Inadequate*

The magistrate judge concluded that the Defendants' alleged policy and procedures are constitutionally inadequate under their Fourteenth Amendment right to due process because the Plaintiffs lack any meaningful mechanism to contest their indefinite, solitary confinement at the Polunsky Unit. Defendants largely disregard this conclusion and instead contend that Plaintiffs received due process at sentencing. This argument fails, however, because a death sentence in Texas does not mandate indefinite, solitary confinement. Rather, official TDCJ policy requires that all male capital offenders be housed on Polunsy Death Row and governed by the Defendants' "Death Row Plan." As the magistrate judge recognized, the "Death Row Plan"

---

[8] Although the Supreme Court has not directly ruled on the constitutionality of indefinite solitary confinement, the dangers posed by such conditions are well documented, and the cases relied on by the magistrate judge support his conclusion. *See e.g., Ruiz v. Texas*, 137 S. Ct. 1246, 1424 (2017) (Breyer, J. dissenting); *Davis v. Ayala*, 576 U.S. 289 (2015) (Kennedy, J., concurring) and *Glossip v. Gross*, 576 U.S. 863, 926 (2015) (Breyer, J., dissenting).

governs recreation time, work status, and other conditions on death row and requires that all death row prisoners be classified based on their behavior and need for supervision.  Plaintiffs allege, however, that in practice the Defendants prohibit any meaningful differentiation or review and instead impose indefinite solitary confinement for all death row inmates.[9]  The process afforded at sentencing does not address the later, indefinite imposition of solitary confinement or provide a constitutionally sufficient substitute for ongoing procedural protections.

Therefore, the magistrate judge correctly determined that Plaintiffs pled a Fourteenth Amendment due process claim.  Defendants' objections are therefore **OVERRULED**, and the court **ADOPTS** the magistrate judge's recommendation as to Plaintiffs' Fourteenth Amendment claims.

### C.  Defendants object to the magistrate judge's finding that they are not entitled to qualified immunity on individual claims related to conditions in solitary confinement or medical care.[10]

Defendants' *Motion to Dismiss* seeks the application of qualified immunity on the individual Eighth Amendment claims because (1) Plaintiffs have not alleged a constitutional violation, and (2) even if the court disagrees, Defendants are still entitled to qualified immunity because their actions were (and are) objectively reasonable in light of clearly established law. Dkt. #29, p. 48.  The magistrate judge applied this two-step analysis and found that "Plaintiffs' allegations regarding conditions in solitary confinement [and lack of medical care] sufficiently establish that they were deprived of certain minimal civilized measures of life's necessities," and that "this right was clearly established at the time Plaintiffs were subjected to these conditions.

---

[9]  Additionally, the male inmates sentenced prior to their transfer to the Polunsky Unit were initially housed in non-solitary conditions.  Defendants later reversed this policy without affording Plaintiffs any opportunity to contest their placement or continued confinement.

[10]  Neither party objected to the magistrate judge's finding that Defendants are entitled to qualified immunity with respect to Plaintiffs' Due Process claims.

As a result, Defendants have not established a right to qualified immunity" on "claims related to: conditions in solitary confinement or medical care." Dkt. #58, p. 40, 42.

Defendants object, claiming that "[a]t the very least, the absence of binding case law holding that any of Plaintiffs' alleged conditions are unconstitutional—coupled with the case law holding that solitary confinement 'is not per se cruel and unusual'—means that Defendants are entitled to qualified immunity, and that the magistrate judge failed to undertake the required defendant-by-defendant analysis for determining qualified immunity." Dkt. #62, p. 4 (citing Dkt. #29 at 38-39). Defendants' argument that their alleged actions do not rise to the level of a constitutional violation fails for the reasons discussed in Section III(A), *supra.*

Defendants' objection that the magistrate judge failed to engage in a defendant-by-defendant analysis warrants closer examination. Defendants are correct that Plaintiffs must allege specific facts that describe the Defendants' "personal involvement" in violating their clearly established federal right. *Sanders v. Gibson*, No. 23-11196, 2025 WL 1029440, at *2 (5th Cir. 2025); *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983); *Covarrubias v. Brannan*, No. 6:23-CV-404-JDK-KNM, 2025 WL 2945596, at *1 (E.D. Tex. Oct. 17, 2025) ("Plaintiff must plead specific facts that both allow the court to draw the reasonable inference that each Defendant is liable for the harm alleged, and that defeat a qualified immunity defense with equal specificity."). In the "Qualified Immunity Defense" section of his report (Dkt. #58, p. 40), the magistrate judge seemingly skips his obligation to address Defendants' personal involvement or engage in a defendant-by-defendant analysis. However, the reason the magistrate judge glances over this consideration is because Defendants failed to raise it in their *Motion to Dismiss*. *See* Dkt. #29, p. 48 (arguing that qualified immunity attaches to Plaintiffs' confinement-of-conditions claim because of their failure to adequately plead a constitutional violation but not addressing

15

inadequate pleading as to personal involvement). Defendants did not seek dismissal on the basis that Plaintiffs allege insufficient facts to demonstrate "personal involvement," and they cannot do so now. *Brown v. City of Cent.*, No. 23-30146, 2024 WL 546340, at *7 (5th Cir. 2024) ("[I]ssues raised for the first time in an objection to a report and recommendation," but not raised in a response to a motion which is the subject of the report and recommendation, are "not properly before the district court.").

Defendants object that the magistrate judge failed to conduct a defendant-by-defendant analysis in determining whether qualified immunity attaches. This argument relies on an issue not raised in their *Motion to Dismiss*, therefore, the court declines to consider it and **OVERRULES** the objection on that basis.

Nevertheless, Defendants' objection fails on the merits. Defendants rely on the Fifth Circuit's unpublished holding in *Lopez v. Ramirez*, No. 23-40461, 2024 WL 1168048, at *2 (5th Cir. 2024), which remanded a district court's denial of dismissal for—what they allege—is a "failure to undertake the required defendant-by-defendant analysis." Dkt. # 62, p. 4. Defendants overlook footnote seven, which cites *Davis v. Bayless*, 70 F.3d 367, 376 (5th Cir. 1995), explaining that while Rule 12 does not require findings of fact or conclusions of law, a district court must nevertheless articulate its reasoning with sufficient clarity to permit appellate review. *Id.* The court in *Lopez* remanded due to the district court's failure to articulate *any* analysis supporting its denial of the motion to dismiss, which prevented effective appellate review. Here, the magistrate judge examined the pleadings and determined that Plaintiffs alleged facts sufficient to demonstrate (1) that the Defendants violated a constitutional right, and (2) that the violated right was "clearly established" at the time of Defendants' alleged actions. Thus, his recommendation to deny Defendants qualified immunity at this stage is correct. *See Nevarez v.*

*Coleman*, No. CV 21-1855, 2022 WL 2528237, at *5 (E.D. La. 2022) ("At the motion-to-dismiss stage, the Court looks to 'defendant's conduct as alleged in the complaint' to determine whether a defendant is entitled to qualified immunity." (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Defendants may reassert qualified immunity on a defendant-by-defendant basis at summary judgment.

### IV.   ORDER

After a *de novo* review, the court determines that the magistrate judge's report is correct and Defendants' objections are without merit. Accordingly, the court

**OVERRULES** the Defendants' objections (Dkt. #62);

**ADOPTS** the magistrate judges' *Report and Recommendation* (Dkt. #58); and

**GRANTS** Defendants' *Motion to Dismiss* (Dkt. #29), in part, in accordance with the magistrate judge's recommendation.

SIGNED at Beaumont, Texas, this 24th day of February, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

17